## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FINRA PENSION/401(k) PLAN COMMITTEE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:23-cv-2336-RDB |
| NAPOLEON ROOSEVELT LIGHTNING, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS NAPOLEON LIGHTNING, TYRENE HUFF, AND LENORA FRAZIER'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES……………………………………………………………………ii

EXHIBIT INDEX………………………………………………………………………....iii

    I.      INTRODUCTION……………………………………………………………1

    II.    STATEMENT OF FACTS TO WHICH THERE IS NO GENUINE DISPUTE ...……3

          A.  THE PARTIES……………………………………………………………3

          B.  THE PLAN…………………………………………………………..4

          C.  THE DISPUTE INCLUDING THE NIECES' AND NEPHEWS' APPEAL ……10

          D.  THE CASE/PROCEDURAL HISTORY…………………………………....13

    III.   STANDARD…………………………………………………………14

    IV.   ANALYSIS…..………………………………………………………16

    V.    CONCLUSION…………………………………………………………26

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 56……………………………………………………………………………14

**Cases:**

*Booth v. Wal-Mart Stores, Inc.*
  201 F.3d 335, 342-344 (4th Cir., 2000)……………………………………………15, 16, 17, 18

*Garner v. Cent. State*
  31 F. 4th 854 (4th Cir., 2022)……………………………………………….……………..25

*Harrison v. Wells Fargo Bank*
  N.A., 773 F. 3d 15 (4th Cir., 2014)…..…….…………………………………………………25

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*
  555 U.S. 285, 302, 304 (2009)……………………………………………....………18, 19

*McKoy v. Int'l Paper Co.*
  488 F. 3d 221, 223 (4th Cir., 2007)…..………………………………………………….24

*Plotnick v. Comput. Scis. Corp. Deferred Comp. Plan*
  875 F.3d 160, 165, 166 (4th Cir., 2017)…………………………….………...………14, 15

*Silverstone v. Reliance Std. Life Ins. Co.*
  795 Fed. Appx. 211, 212 (4th Cir., 2020)………………………………….……… 16, 17

*Tester v. Reliance Std. Life Ins. Co.*
  228 F.3d 372, 375 (4th Cir., 2000)……………………...…………………………………14

## EXHIBIT INDEX

| Exhibit | Description | Page |
|---------|-------------|------|
| 1 | FINRA Employees Retirement Plan | 3, 4, 5, 6, 18 |
| 2 | Response by Defendants Tankankika (sic) Lightning et al. to Request for Admissions Propounded by Defendants Napoleon Roosevelt Lightning, et al. | 3, 4, 7, 9, 10, 11, 12, 13 |
| 3 | Beneficiary Designation form dated February 10, 2019 | 5, 8 |
| 4 | April 2, 2018 Durable Financial Power of Attorney | 7 |
| 5 | Beneficiary Designation form dated June 6, 2022 | 9 |
| 6 | November 30, 2022 letter from Plaintiff to Tanja | 10, 11 |
| 7 | January 11, 2023 facsimile from Tanja to Plaintiff | 11 |
| 8 | March 29, 2023 letter from Plaintiff to Tanja | 12 |
| 9 | May 25, 2023 Appeal letter | 12 |
| 10 | July 28, 2023 letter | 12, 20, 24 |
| 11 | July 29, 2023 email from Tanja to Cavallaro | 13 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FINRA PENSION/401(k) PLAN COMMITTEE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:23-cv-2336-RDB |
| NAPOLEON ROOSEVELT LIGHTNING, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

### DEFENDANTS NAPOLEON LIGHTNING, TYRENE HUFF, AND LENORA FRAZIER'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendants Napoleon Roosevelt Lightning ("**Napoleon R.**"), Tyrene Huff ("**Tyrene**"), and Lenora Frazier ("**Lenora**" and collectively with Napoleon R. and Tyrene, "**Siblings**" or individually "**Sibling**") through undersigned counsel, hereby move this Court for the entry of summary judgment and in support thereof states:

### I.    Introduction

Plaintiff FINRA Pension/401(k) Plan Committee ("**Plaintiff**") administers the FINRA Employees Retirement Plan ("**Plan**"), a retirement plan for employees of the Financial Industry Regulatory Authority ("**FINRA**"), pursuant to 29 U.S.C. § 1001 *et seq.*, the Employee Retirement Income Security Act of 1974 ("**ERISA**"). The Plan provides Death Benefits to survivors of a Plan participant if the survivor is properly identified in a Beneficiary Designation Form completed in compliance with Plaintiff's policies and procedures, and if the participant is fully vested and has not received any benefits from the Plan prior to death.

This case concerns the Death Benefits of a Plan participant named Anita Lightning ("**Anita**"), a FINRA retiree who died in 2022 with a fully vested pension from which she made no deductions. At the time of her death, the Death Benefit from Anita's pension was worth more than $698,000 (excluding interest).

The issue to resolve is whether Plaintiff should distribute the  Death Benefits from Anita's pension to (a) the Siblings pursuant to a 2019 Beneficiary Designation Form ("**2019 Designation Form**") Anita executed and submitted; or (b) the Siblings and Anita's nieces and nephews, Defendants (1) Tanjanickia Lightning ("**Tanja**"), (2) X'Zavier Lightning ("**X'Zavier**"), (3) Paige Phillips ("**Paige**"), (4) Tyler Huff ("**Tyler**"), (5) Sidney Lightning ("**Sidney**"), (6) Napoleon Lloyd Lightning (**"Napoleon L."**), and (7) Sherry Lightning ("**Sherry**" and with Tanja, X'Zavier, Paige, Sidney, Napoleon L., and Tyler, the "**Nieces and Nephews**") pursuant to a 2022 Beneficiary Designation Form ("**2022 Designation Form**") Tanja executed and purportedly submitted to Plaintiff on Anita's behalf.  Following Anita's death in 2022, Tanja submitted the 2022 Designation Form to Plaintiff to claim the benefits, but Plaintiff denied the claim.  Plainitff determined that the 2022 Designation Form was invalid as it was not executed by Anita or pursuant to written legal authority designating another to act on her behalf as required by Plaintiff's policies and practice.  Plaintiff determined that the Siblings were entitled to the Death Benefits pursuant to the 2019 Designation Form.  The Nieces and Nephews appealed the decision without success.

For the reasons explained herein, this Court should grant summary judgment.  All record evidence shows that Plaintiff acted reasonably in rejecting the 2022 Designation Form and the Nieces' and Nephews' claim.  Accordingly, this Court should determine, as Plaintiff first did in December 2022, that the Siblings are entitled to 100% of the Death Benefit from Anita's pension per the 2019 Designation Form.

**II.     Statement of Facts to Which There Is No Genuine Dispute**

**A.     The Parties**

1.      Plaintiff is the administrator of the Plan and a fiduciary as those terms are defined by ERISA. <u>See</u> Ex. 1 (Plan), § 11.1, p. 50 ("The Named Fiduciary and Administrator, as those terms are defined under ERISA, of this Plan shall be the Committee, but not the members of the Committee as individuals."); <u>see also</u> Answer to Complaint for Interpleader ("Nieces' and Nephews' Answer"), Dkt. 14, p. 1, ¶¶ 1 and 2; Ex. 2 (Response by Defendants Tankankika (sic) Lightning et al. to Request for Admissions Propounded by Defendants Napoleon Roosevelt Lightning, et al. ("Nieces' and Nephews' Responses to RFA"), pp. 2-3, Nos. 4-5.  Ex. 1 is a true and correct copy of the Plan.[1]

2.      The Plan is a pension plan covered by ERISA and administered at FINRA's office in Rockville, MD, located at 9509 Key West Ave., Rockville, MD.

3.      Napoleon R. is a resident of Pennsylvania and Anita's brother.

4.      Tyrene is a resident of Georgia and Anita's sister.

5.      Lenora is a resident of California and Anita's sister.

6.      Tanja is a resident of Maryland and Anita's niece.

7.      Sherry is a resident of Illinois and Anita's niece.

8.      Tyler is a resident of Georgia and Anita's nephew.

9.      Paige is a resident of Pennsylvania and Anita's niece.

10.      X'Zavier is a resident of Maryland and Anita's nephew.

---

[1]      The Nieces and Nephews refused to admit that the copy of the Plan attached to the Requests for Admission was a true and correct copy of the Plan, <u>see</u> Ex. 2, p. 2, Nos. 6-7, even though they previously admitted the authenticity of the Plan in their Answer.  <u>See</u> Dkt. 14, p. 1, ¶2.  The Siblings suggest that the Plan and its contents are not genuinely disputed by any party.

11.     Napoleon L. is a resident of Pennsylvania and Anita's nephew.

12.     Sidney is a resident of Pennsylvania and Anita's niece. [2]

**B.     The Plan[3]**

13.     The Plan provides certain retirement benefits for eligible Participants who retire from

employment with FINRA.  Participants who retire before the age of 65 have the option of receiving

benefits immediately or deferring those benefits until they reach the age of 65. Ex. 1; Ex. 2, p. 2,

No. 12.

14.     The Plan provides that if "a [formerly employed vested] Participant should die before the

commencement of his retirement benefits, the Beneficiary of such a Participant shall receive

benefits (in the form provided under Section 6.02) equal to one hundred percent (100%) of the

Actuarial Equivalent of the deceased Participant's monthly retirement benefit determined as of the

date of his death." See Ex. 1, § 6.01.  Specifically, the Plan states:

> Upon the death of any Participant who is an employee of the Employer, or a
> formerly employed Participant who is vested and who has not received any
> portion of his vested interest, the following paragraph of this Section 6.01 shall
> apply.
>
> Except as otherwise provided in Article VIII, if such a Participant should die
> prior to the commencement of his retirement benefits, the Beneficiary of such
> a Participant shall receive benefits (in the fom1 provided under Section 6.02)
> equal to one hundred percent (100%) of the Actuarial Equivalent of the
> deceased Participant's monthly retirement benefit determined as of the date of
> his death. For this purpose, the monthly retirement benefit shall be

---

[2]     See FINRA Pension/401(k) Plan Committee v. Napoleon Lightning, et al., United States
District Court for Maryland, Case No. 1:23-cv-2336, Complaint, Dkt. 1, pp. 2-3, ¶¶3-14; see also
Nieces' and Nephews' Answer, pp. 1-2, ¶¶ 3-14.

[3]     Germane portions and references to the Plan are taken from the Complaint Plaintiff filed
which included the Plan, less attachments, and tables.  See FINRA Pension/401(k) Plan Committee
v. Napoleon Lightning, et al., Case No. 1:23-cv-2336, Dkt. 1, pp. 4-6, ¶¶19-27.  The Nieces and
Nephews admitted the allegations of paragraphs ¶¶19-24, and 27 of the Complaint, though they
qualified their admission to the allegation in ¶ 27 regarding the discretion afforded Plaintiff.  See
Id., Dkt. 14, pp. 2-3, ¶¶ 19-27.  The contents of the Plan have been and are undisputed.

> determined (a) without regard to <u>Section 5.06</u> (other than the first sentence) or Article VIJI, (b) without regard to the requirements under this Plan with respect to vesting, (c) in the case of any Participant who is employed on the date of death, as if the Participant had, on the date of death, had a Termination of Employment for a reason other than death, (d) as if the Participant had elected for such monthly retirement benefit to commence on the date of death, and (e) to the extent that the Participant would have been eligible to c1ect benefits under either <u>Section 5.03</u> or <u>5.04</u>, as if the Participant had made the election that maximized his monthly retirement benefit.
>
> If a Participant should die on or after the commencement of his retirement benefits, no death benefit shall be paid unless the Participant had a method of payment in force which calls for survivor benefits and, if so, the survivor benefits under the method of payment shall be the death benefit.

<u>Id.</u>

15.     The Plan further provides that the above Death Benefits are paid to the Beneficiaries whom the Participant designates on the "form and medium prescribed by the Committee." Ex. 1, § 1.06 (Beneficiary). In the absence of an effective designation, or if all designated persons predecease the Participant, the Beneficiary is the Participant's surviving spouse or domestic partner; if none exist, the Beneficiary is the Participant's estate.  <u>See</u> <u>Id.</u>

16.     The Beneficiary Designation form allows for Participants to designate as many Beneficiaries as the Participant wishes and to designate "contingent beneficiaries" who will only receive benefits in the event the Beneficiaries are not living at the time of distribution.

17.     The Beneficiary Designation form states at the top:

> Use this form to designate your beneficiary(ies) for the FINRA Employees Retirement Plan. Any benefit payable will be split equally among the beneficiaries listed. <u>Once you make your beneficiary designation, you must sign and date this form in the Participant Signature section</u>. If you are married and designate someone other than solely your spouse, your spouse must sign the Consent of Spouse section in the presence of a Notary Public. If you need more space, make a copy of this Beneficiary Designation section, complete it, and attach it to this form.

Exhibit 3 (2019 Designation Form) (<u>emphasis added</u>).

18.     Above the signature block, the form states:

My signature below certifies that:

I have elected the beneficiary designation(s) specified on this form for the Preretirement Survivor Annuity under the FINRA Employees Retirement Plan.

I understand I have a right to designate a beneficiary other than my spouse, if applicable, and my spouse has the right to consent or not to such designation.

I understand I may redesignate my spouse, if applicable, as my beneficiary or with my spouse's consent, change my beneficiary.

Id.

19.     Consistent with the language on the Beneficiary Designation form, the Committee had adopted an administrative procedure requiring all Beneficiary Designation forms be signed by either: (i) the Participant; or (ii) another individual who has been authorized in writing by the Participant to complete the Beneficiary Designation form on such participant's behalf.

20.     The Committee has established the FINRA Pension Center to provide administrative support for the Plan and its Participants.

21.     The Plan provides the Committee with complete discretion to decide questions regarding the operation of the Plan:

With respect to the powers and duties of the Committee under this Plan, the Committee shall, to the maximum extent permitted by law, have complete discretion and to the maximum extent permitted by law, its decisions shall be binding, final, and conclusive upon all parties. In this connection, the Committee shall have the power to decide any question which may arise as to the operation of the Plan (including without limitation the power to find facts), as to Employee and Participant coverage, as to eligibility for benefits under the Plan, and as to any matter whatsoever which may arise in connection with this Plan. The Committee, however, shall exercise its discretion in a nondiscriminatory manner and in a manner consistent with the terms of the Plan and with applicable law.

Ex. 1, pp. 52-53, § 11.10.

22.     Anita was a former employee of FINRA and a Participant in the Plan. See Ex. 2, No. 21. Effective April 2, 2018, Anita appointed Tyrene as her attorney-in-fact under a Durable Financial Power of Attorney.  Ex. 4 (April 2, 2018 Durable Financial Power of Attorney ("**2018 DPA**")). While Anita may have executed other limited powers-of-attorney, it is believed that this Durable Financial Power of Attorney is the only such document Anita executed.  While the 2018 DPA authorizes Tyrene to make certain decisions concerning retirement plans, it does not expressly give her (or anyone else) the authority to make decisions concerning beneficiary designations.  Id.

23.     Anita retired from employment with FINRA on December 31, 2018. At the time of her retirement, Anita had a fully vested interest in her retirement benefits and was less than 65 years old.  See also Ex. 2, p. 4, No. 21-24.

24.     Shortly after her retirement, on January 8, 2019, the FINRA Pension Center received a call from Anita, in which Anita indicated she wanted to defer the start of her retirement benefits. During the call, Anita requested a Beneficiary Designation form, which was subsequently provided to her.

25.     In February 2019, the FINRA Pension Center received a Beneficiary Designation form from Anita dated February 10, 2019, the 2019 Designation Form, which designated each of the Siblings as 33% Beneficiaries, and three of the Nieces/Nephews (Tanja, Sherry,  and Tyler) as contingent beneficiaries:

| Primary Beneficiary Name | Social Security Number | Relationship | Percentage |
|---|---|---|---|
| 1. Tyrene Huff | | sister | 33.33 % |
| 2. Lenora B. Frazier | | sister | 33.33 % |
| 3. Napoleon R. Lightning | | brother | 33.33 % |
| 4. | | | |

| Contingent Beneficiary Name | | Relationship | Percentage |
|---|---|---|---|
| 1. Tamjanickia C. Lightning | | niece | 33.33 % |
| 2. Sherry Phillips | | niece | 33.33 % |
| 3. Tyler Huff | | niece | 33.33 % |
| 4. | | | |

Ex. 3.

26.     Anita signed the 2019 Designation Form.   Id.

27.     In November 2021, Anita called the FINRA Pension Center and requested paperwork to begin receiving her retirement benefit.  However, on February 2, 2022, Anita again called the FINRA Pension Center and indicated she no longer wished to go forward with commencing her retirement benefits and instead wished to continue deferring those benefits.

28.     The following day, on February 3, 2022, Anita called again and indicated she wanted to designate beneficiaries, apparently initially believing she had not already done so.   The representative with whom she spoke informed Anita of the three primary beneficiaries and three contingent beneficiaries already named on the 2019 Designation Form. Anita responded that she would like to make changes and requested a new Beneficiary Designation form be provided to her. A blank Beneficiary Designation form was thereafter sent to her.

29.     On May 20, 2022, Anita requested another blank Beneficiary Designation form. Another blank Beneficiary Designation form was thereafter sent to her.[4]

30.     In June 2022, the FINRA Pension Center received a completed Beneficiary Designation form dated June 6, 2022, the 2022 Designation Form. Exhibit 5 (2022 Designation Form); Ex. 2, p. 5, Nos. 26-27.  The 2022 Designation Form listed all ten (10) of the Defendants, including each of the Siblings and each of the Nieces/Nephews as primary beneficiaries of the Death Benefits. The form indicated that each one of the beneficiaries was to receive an equal 10% share of the benefits:

| Primary Beneficiary Name | Social Security Number | Relationship | Percentage |
| --- | --- | --- | --- |
| 1. Tanjanickia C. Lightning | | Niece | 10% |
| 2. Sherry C. Phillips | | Niece | 10% |
| 3. Tyler B. Huff | | Niece | 10% |
| 4. Paige A. Phillips | | Niece | 10% |

| Primary Beneficiary Name | Social Security Number | Relationship | Percentage |
| --- | --- | --- | --- |
| 1. X'zavier L. Lightning | | Nephew | 10% |
| 2. Napoleon L. Lightning | | Nephew | 10% |
| 3. Sidney L. Lightning | | Niece | 10% |
| 4. Napoleon R. Lightning | | Brother | 10% |

| Primary Beneficiary Name | Social Security Number | Relationship | Percentage |
| --- | --- | --- | --- |
| 1. Tyrene L. Huff | | Sister | 10% |
| 2. Lenora B. Frazier | | Sister | 10% |
| 3. | | | |
| 4. | | | |

Ex. 5.

---

[4]     The statements of ¶¶ 25-29 herein mirror those in the Complaint at ¶¶ 29-37.  The Nieces and Nephews admitted the allegations in their Answer.  See Dkt. 14, p.3, ¶¶ 29-37.

31.    The 2022 Designation Form appeared to have a different signature than the 2019 Designation Form, and the signature did not contain Anita's entire last name, but rather only the initial "L.":

Id.

32.    The signature did not look like Anita's because it was not Anita's, but rather Tanja's who in June 2022, tried to change the beneficiary designation on the 2022 Designation Form, but lacked the written authority to do so.  Ex. 2, pp. 4 and 5, Nos. 19 and 31.[5]

      **C.    The Dispute Including the Nieces' and Nephews' Appeal.**

33.    Anita died on September 10, 2022. Ex. 2, p. 6, No. 33.  Since, at the time of her death, Anita had not collected any of the retirement portion of her plan, Anita's beneficiaries were entitled to the Plan's death benefits.

---

[5]    In discovery, Tanja was asked to admit or deny that she "signed Anita's name to the June 6, 2022 Beneficiary Designation form."  Tanja admitted doing so, though contends, without proof, that her signature was at Anita's "request and direction."  Ex. 2, p. 5, No. 28.  No other evidence was produced in discovery to support the contention that Anita requested Tanja take any action though Tanja admits that Anita was never adjudicated incompetent or in need of a guardian or conservator before her death.  Id., No. 32.  Additionally, Tanja was expressly asked to admit that when she:

    Submitted the June 6, 2022 Beneficiary Designation form at Exhibit 6 to the FINRA Pension Center in connection with Anita's Plan, you attempted to change the beneficiary designation for Anita.

Tanja, however, did not respond to that Request.  Ex. 2, p. 5, No. 30.  The Request should be deemed admitted.

34.     On September 14, 2022, Tanja called the FINRA Pension Center seeking to claim a portion of the death benefits.  During that call, she admitted that Anita did not personally sign the June 6, 2022 Designation Form, but that Tanja signed it.  Ex. 2, p. 6, No. 34-36.

35.     On November 30, 2022, Plaintiff informed Tanja that the 2019 Beneficiary Designation Form was being honored and that distributions would be made according to that form.  Ex. 6 (November 30, 2022 letter from Plaintiff to Tanja).  Because the 2022 Designation Form was not signed by Anita or someone with written authorization to sign on her behalf, by December 5, 2022, each of the Nieces/Nephews was notified that they were not eligible for any distribution of the Death Benefits.

36.     On January 11, 2023, Tanja asked for reconsideration of Plaintiff's decision. See Exhibit 7 (January 11, 2023 facsimile from Tanja to Plaintiff); Ex. 2, p. 7, Nos. 40-41. In her letter, Tanja again acknowledged that she, and not Anita, had signed the 2022 Designation Form but she contended that she did so at Anita's verbal request. Ex. 7 ("Aside from this, I Tanjanickia Lightning, will attest to the fact that I was given verbal authorization to complete and sign the signature of my aunt Anita Lightning to the beneficiary document on file from June 2022 with 4 witnesses present."); see also Ex. 2, p. 7, No. 42.  Tanja's claim also contained statements from witnesses who corroborated that Anita asked Tanja to sign on her behalf. See Id.

37.     On January 13, 2023, each Sibling timely returned completed commencement election forms to receive their 33% share of the Death Benefits pursuant to the 2019 Designation Form.

38.     Because the Siblings timely returned the commencement election forms, the total value of the Death Benefits is  $698,410.20.[6]

---

[6]     This is the actuarial value of the death benefits as of December 1, 2022.  The beneficiaries are entitled to interest from that date.

39.    On March 29, 2023, Tanja's January 2023 claim for a portion of the Death Benefits was denied under the Plan's ERISA claims administration procedures, via a letter from FINRA Director of Benefits, Tony Cavallaro ("**Cavallaro**"). <u>See</u> Exhibit 8 (March 29, 2023 letter from Plaintiff to Tanja); Ex. 2, p. 7, Nos. 43-44. In pertinent part, the denial letter stated:

> Concerning the 2022 Beneficiary Designation Form, you have explained that you signed such Form under explicit verbal authority and direction by Ms. Lightning, and you have provided several corroborating witnesses to this fact. Unfortunately, however, the Plan's Beneficiary Designation Form instructions explicitly provide that it is the Plan participant who must sign the Form. Moreover, the Plan's historic operations and practices have been to require participant signatures on required forms, subject to written delegation of such authority by the participant, such as through a bona fide power of attorney that would apply to Plan benefits. Legally, while an individual's authority for matters such as beneficiary designation can be delegated to another individual through a written instrument, such as a durable power of attorney for financial matters, we have not received any evidence that Ms. Lightning delegated to you, through a written instrument, power of attorney or otherwise, the authority to act and sign for her with respect to her Plan benefits.

<u>Id</u>.

40.    On May 25, 2023, under the Plan's ERISA claims administration procedures, Tanja filed an appeal of the denial of benefits to Plaintiff on behalf of the Nieces and Nephews. <u>See</u> Exhibit 9 (May 25, 2023 Appeal letter); Ex. 2, p. 7, No. 45-46.

41.    On July 28, 2023, Plaintiff denied the appeal under the Plan's ERISA claims administration procedures, by a letter addressed to Tanja and the other Nieces and Nephews. <u>See</u> Exhibit 10 (July 28, 2023 letter). Exercising its "sole and absolute discretion and authority to construe and interpret the Plan's terms and to determine all questions concerning benefit entitlements," the Committee determined:

- That the 2022 Beneficiary Designation Form is not a valid, effective, or governing instrument under the Plan because there is no evidence that it was signed pursuant to a written delegation of authority executed by Ms. Lightning, in accordance with the terms of the Plan and the Plan's reasonable and uniform administrative procedures;

- That the 2019 Beneficiary Designation Form was validly executed, in accordance with the terms of the Plan and the Plan's reasonable and uniform administrative procedures;

- That the 2019 Beneficiary Designation Form was not superseded by the 2022 Beneficiary Designation Form or otherwise, and thus remains the valid, effective, and governing instrument under the Plan for the distribution of Ms. Lightning's death benefits under the Plan, in accordance with the terms of the Plan, the Plan's reasonable and uniform administrative procedures and applicable law; and

- That the benefits payable under the Plan as a result of Ms. Lightning's death should be paid in accordance with the terms of the Plan, and with the 2019 Beneficiary Designation Form, as follows:

  - One-third (33.33%) to Tyrene Huff;
  - One-third (33.33%) to Lenora B. Frazier; and
  - One-third (33.33%) to Napoleon R. Lightning.

Id.

42.    Upon receipt of the appeal denial letter, Tanja sent an email to Cavallaro indicating that the Nieces and Nephews intend to continue to contest the Committee's denial of their claimed benefits and stating, among other things, "the [a]ffected beneficiaries and I are prepared to move forward with the civil case." Ex. 11 (July 29, 2023 email from Tanja to Cavallaro); Ex. 2, p. 8, Nos. 48-49.

**D.    The Case/Procedural History**

43.    Plaintiff filed suit on August 25, 2023.  Dkt. 1.

44.    On October 19, 2023, the Siblings filed their Answer to the Complaint.  Dkt. 7.

45.    The Nieces and Nephews answered the Complaint on November 20, 2023.  Dkt. 14.

46.    On November 20, 203, the court entered a Scheduling Order.  Dkt.  17.

47.    Discovery was conducted by the Siblings; the Nieces and Nephews conducted no discovery. Discovery is now closed.

### III. Standard

The Siblings bring their Motion under Fed. R. Civ. P. 56.  They presume the Court knows

the standards governing Motions for Summary Judgement and will not repeat them herein.

As this case addresses whether an ERISA Plan administrator properly denied benefits

under an ERISA Plan to the Nieces and Nephew, the standard of review is as follows:

> In cases involving the denial of benefits under an ERISA plan, a reviewing court
> must review the denial *de novo* unless the terms of the plan give the administrator or
> fiduciary discretionary authority to determine eligibility for benefits or to construe
> the terms of the plan. See *Quesinberry v. Life Insurance Company of North America*,
> 987 F.2d 1017, 1021 (4th Cir. 1993); *Firestone Tire and Rubber Co. v. Bruch*, 489
> U.S. 101, 107, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989). The district court reviewed
> Reliance's denial of benefits *de novo*, and Reliance did not challenge this standard
> on appeal. Therefore, we apply the same standard as the district court and review
> Reliance's denial *de novo*.
>
> In reviewing the terms of an ERISA plan, we are mindful that ERISA plans are
> contractual documents, and "established principles of contract and trust law" govern
> their interpretation. See *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir.
> 1996). As with other contractual provisions, we construe the plan's terms without
> deferring to either party's interpretation. See *Firestone Tire*, 489 U.S. at
> 112; *Wheeler v. Dynamic Eng'g Inc.*, 62 F.3d 634, 638 (4th Cir. 1995) (stating that
> an ERISA plan should be interpreted "under ordinary principles of contract
> law"). Furthermore, "where a term is ambiguous, we must construe it against the
> drafter, and in accordance with the reasonable expectations of the insured." *Bailey
> v. Blue Cross & Blue Shield of Virginia*, 67 F.3d 53, 57 (4th Cir.
> 1995) (quoting *Wheeler*, 62 F.3d at 638).

Tester v. Reliance Std. Life Ins. Co., 228 F.3d 372, 375 (4th Cir., 2000).

Where a Plan gives discretion to the administrator or fiduciary to carry out an interpretive

task, the Court defers to that administrator's or fiduciary's interpretation on that issue – the "abuse

of discretion" standard applies.  See Plotnick v. Comput. Scis. Corp. Deferred Comp. Plan, 875

F.3d 160, 165 (4th Cir. 2017).  Further:

> Because the Plan granted its administrators full discretion to interpret the Plan, the
> district court reasoned that, under *Firestone*, an abuse-of-discretion standard would
> apply. Meanwhile, under a contract-based approach, the district court would
> evaluate the administrators' determination by analyzing "whether the exercise of

discretion was done in good faith, the touchstone of which is reasonableness." *Plotnick*, 182 F. Supp. 3d at 597. Furthermore, the district court noted that courts in this circuit applying *Firestone*'s abuse-of-discretion standard will not disturb discretionary decisions if they are "reasonable." *See id.* at 598 (quoting *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000)). Thus, under *either* an abuse-of-discretion or a contract-based standard, a "reasonable" exercise of discretion would stand, essentially closing any rhetorical distance between the two competing standards of review.

The district court thus proceeded in its analysis without determining whether *Firestone* or contract-based principles would apply, asking instead simply: "Was the administrator's determination to deny plaintiffs' claims for benefits on the ground that the 2012 Amendment is valid a reasonable interpretation of the Plan?" *Id.* From here, the district court analyzed the reasonableness of the Plan administrator's interpretation under this circuit's eight *Booth* factors. *Id.* (citing *Helton v. AT&T*, 709 F.3d 343, 353 (4th Cir. 2013)). The district court held that under *any* standard of review, "CSC correctly interpreted the Plan as permitting the 2012 Amendment, and CSC's denial of plaintiffs' claims for benefits was therefore appropriate." *Id.* at 600.

Plotnick v. Comput. Scis. Corp. Deferred Comp. Plan, 875 F.3d 160, 166 (4th Cir., 2017) (footnotes omitted).

The criteria for determining reasonableness were established in Booth v. Wal-Mart Stores,

Inc., 201 F. 3d 335 (4th Cir., 2000) as follows:

In determining whether a fiduciary's exercise of discretion is reasonable, numerous factors have been identified as relevant, both in the cases applying ERISA and in principles of trust law. In *Firestone*, for example, the Supreme Court indicated that the fact that a fiduciary operates under a conflict of interest *must* be weighed in determining whether there is an abuse of discretion. *See Firestone*, 489 U.S. at 115; *accord Doe v. Group Hospitalization & Med. Services*, 3 F.3d 80, 85 (4th Cir. 1993). In *de Nobel* we identified five factors that had previously been considered in our opinions: (1) whether the administrator's interpretation is consistent with the goals of the plan; (2) whether it might render some language in the plan documents meaningless or internally inconsistent; (3) whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA; (4) whether the provisions at issue have been applied consistently; and (5) whether the fiduciary's interpretation is contrary to the clear language of the plan. *See* 885 F.2d at 1188. We have also recognized that the adequacy of the record before the fiduciary is a factor to be considered. *See Bernstein*, 70 F.3d at 788. Drawing on principles of trust law, as instructed by *Firestone* and as articulated in the Restatement (Second) of Trusts § 187, on which *Firestone* relied, we identified five other factors, which were somewhat different from, but not inconsistent with, those listed in *de Nobel*: (1) the scope of the discretion conferred; (2) the purpose of the

15

plan provision in which discretion is granted; (3) any external standard relevant to the exercise of that discretion; (4) the administrator's motives; and (5) any conflict of interest under which the administrator operates in making its decision. *See Haley*, 77 F.3d at 89; *see also Ellis*, 126 F.3d at 233. Another important factor is furnished by the Restatement, which notes that the integrity of the fiduciary's decisionmaking (sic) process may also be considered. *See* Restatement (Second) of Trusts § 187, cmts. e-h (1959).

Combining these various criteria for determining the reasonableness of a fiduciary's discretionary decision, we conclude that a court may consider, but is not limited to, such factors as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking (sic) process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.  With these principles in hand, we now turn to the Plan before us and the decision by the Plan's administrator to deny benefits.

Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 342-343 (4th Cir., 2000)(footnote omitted).

Finally:

"Judicial review of an ERISA administrator's decision for abuse of discretion requires us primarily to determine whether the decision was reasonable, a determination that is informed by" the nonexhaustive list of factors we set forth in *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000). *Griffin v. Hartford Life & Accident Ins. Co.*, 898 F.3d 371, 381 (4th Cir. 2018). Ultimately, though, "to be held reasonable, the administrator's decision must result from a deliberate, principled reasoning process and be supported by substantial evidence." *Id.* (brackets and internal quotation marks omitted). "[W]e will not disturb a plan administrator's decision if the decision is reasonable, even if we would have come to a contrary conclusion independently." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010).

Silverstone v. Reliance Std. Life Ins. Co., 795 Fed. Appx. 211, 212 (4th Cir., 2020).

## IV.   Analysis

No genuine dispute of fact exists and summary judgment is proper.  It is undisputed that the Plan affords Plaintiff wide discretion to interpret the Plan and decide claims and all evidence demonstrates that Plaintiff reasonably interpreted the Plan and properly denied the Nieces' and

Nephews' claim to Death Benefits on Anita's pension account.  The 2022 Designation Form that Tanja submitted to Plaintiff to claim benefits did not comply with the Plan or Plaintiff's procedures and the 2019 Designation Form should control.

The Plan's language largely mirrors the language of the plan that the Court reviewed in Booth and found acceptable.  See *Supra*, ¶21; see also Booth, *supra*, 201 F.3rd at 343.  Concerning that language – broad language affording wide discretion – the Court stated:

> From this contractual language, it might be argued that the Plan is attempting to limit courts in their review to the narrowest of circumstances, i.e., whether the administrator acted in bad faith. Moreover, the Plan purports to return judicial review to the pre-*Firestone/de Nobel* standard of "arbitrary and capricious." But to interpret the Plan in this manner would impinge on the proper role of courts in enforcing contracts and establishing principles of judicial review. Both *Firestone* and *de Nobel* articulate standards of judicial review of discretionary decisions by fiduciaries in the context of ERISA and its purposes. While the ERISA jurisprudence recognizes that parties have broad authority through contractual language to agree on the scope of benefits and the procedures to follow in applying for them, we do not understand ERISA to allow a plan to alter the established standard of judicial review of discretionary decisions for reasonableness.

> Taking into account the entire Plan before us, however, we do not interpret the Plan's language to authorize discretionary decisions that would violate established principles of reasonableness. The Plan thoroughly delineates benefits to which its beneficiaries are entitled, and it carefully details benefit eligibility requirements. It would be incongruous to interpret the Plan documents before us as additionally conferring such broad discretion on its administrator as to sanction determinations that would not withstand analysis using the reasonableness factors that have been recognized by *Firestone* and its progeny in the Fourth Circuit. The Plan does not authorize its administrator to make determinations that are contrary to the plain language of the Plan; that frustrate the purposes and goals of the Plan; that are inconsistent with other provisions or earlier interpretations of the Plan; that are rendered under arbitrary or uninformed decisionmaking processes; that are inconsistent with the procedural and substantive requirements of ERISA; or that are made in furtherance of an interest that conflicts with that of the Plan beneficiaries.

> Accordingly, we conclude that the Plan in this case provides its administrator with discretion to interpret Plan language and to grant or deny benefits in accordance with these interpretations, but we will enforce the administrator's decisions only if they are reasonable, applying the factors that we have

previously identified. In addition, we conclude that the Administrative Committee in interpreting the Plan's preexisting-condition provision and in denying in part Booth's claim for benefits acted within the scope of discretion conferred by the Plan documents.

Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 343-344 (4th Cir., 2000).

Thus, per the Booth factors, the Plan affords wide discretion to Plaintiff to decide whether Designation Forms are valid and who, if anyone, designated by a Plan Participant as a beneficiary receives Death Benefits under the Plan. Ex. 1, pp. 52-53, §11.10. As was the case in Booth, the Plan does not authorize Plaintiff to undertake or sanction discretionary decisions that would violate principles of reasonableness or that are contrary to the Plan. Id. The Plan delineates benefits that Participants and beneficiaries are entitled to receive and details eligibility. See e.g., Ex. 1, § 6.01. The Plan was amended and restated, effective January 1, 2016. Ex. 1, p. 1. The Plan states: "The Plan is intended to qualify under section 401(a) of the Code and to comply with the provisions of ERISA and any other applicable laws and regulations; the provisions of the Plan shall be construed to effectuate such intent." Id., p. 56, § 12.12. Per the "plan documents rule" the Designation Forms are considered part of the Plan and therefore rightly subject to review and consideration by the administrator. See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 302 (2009).[7] The Designation Forms plainly state that it is to be signed by "you", the participant. Exs.

---

[7]      Kennedy is instructive. In that case, the husband plan participant was to change beneficiary designations under a QDRO but did not; the plan afforded the ex-wife a way to disclaim her interest upon her husband's death, but she did not follow the Plan. The Supreme Court said that the plan administrator did exactly what the law required – review the documents to see who was named as the beneficiary. Id., at 303-4. The Court stated:

It is no answer, as the Estate argues, that William's beneficiary-designation form should not control because it is not one of the "documents and instruments governing the plan" under § 1104(a)(1)(D) and was not treated as a plan document by the plan administrator. That is beside the point. It is uncontested that the SIP and the summary plan description are "documents and instruments governing the plan." See Curtiss-Wright Corp., 514 U.S., at 84, 115 S. Ct. 1223, 131 L. Ed. 2d 94

3 & 4. Nothing in the Plan authorizes the administrator to make decisions that frustrate the Plan's purpose and goal to comply with all ERISA's provisions or substantive decision-making under ERISA.  The Plan expressly states that Plaintiff is a fiduciary; nothing suggests that Plaintiff can or was operating under any conflict.

Given Plaintiff's discretion under the Plan, the sole question before this Court is whether Plaintiff reasonably used that discretion when following Anita's death, it evaluated the Nieces' and Nephews' claim to Death Benefits based upon the 2022 Designation Form that Tanja prepared and submitted and rejected the claim in favor of the 2019 Designation Form.   The answer is unequivocally "yes."

No evidence demonstrates anything suggesting unreasonableness in Plaintiff's review. Indeed, the record evidence demonstrates the contrary, namely: that Anita was a Plan participant who never received any benefits from the Plan in her lifetime; a Beneficiary Form was submitted in 2019 which identified the Siblings as the equal Primary Beneficiaries; Anita called Plaintiff about securing a new Designation Form, but did not change the Primary Beneficiaries under the Plan; according to Tanja, Anita was in poor physical health, but never required a guardian or conservator; Anita never designated Tanja as her attorney-in-fact under a duly executed Power of Attorney; in 2022, Tanja prepared and filed a new Designation Form in June 2022 which she submitted to Plaintiff; the 2022 Designation Form altered the distribution percentages for primary

---

(explaining that 29 U.S.C. §§ 1024(b)(2) and (b)(4) require a plan administrator to make available the "governing plan documents"). Those documents provide that the plan administrator will pay benefits to a participant's designated beneficiary, with designations and changes to be made in a particular way. William's designation of Liv as his beneficiary was made in the way required; Liv's waiver was not.

Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 304 (2009).  Likewise, here, the Nieces and Nephews cannot argue the designations are not part of the Plan and subject to review by the Plaintiff.

beneficiaries and added the Nieces and Nephews as the Primary Beneficiaries for any Death Benefits; and Anita did not sign the 2022 Designation Form changing the Primary Beneficiaries or authorize Tanja in writing to do so, and Tanja admitted as much.  Upon Anita's death in September 2022, Tanja made a claim for the benefits through Plaintiff, but Plaintiff denied the claim per the plain language of the Designation Form which required that the Designation Form be signed by "you", the participant or her agent.  The Nieces and Nephews appealed Plaintiff's decision, but the appeal was denied.

Putting aside that Plaintiff considered and reviewed the claim and two appeal efforts, the deliberative process Plaintiff used in determining the Nieces' and Nephews' eligibility for benefits was fulsome and fair.  It is most clearly expressed in the July 28, 2023 letter from Plaintiff to Lightning.  See Ex. 10.  In that letter, Plaintiff explained that Plaintiff used a "de novo" standard and reviewed everything anew upon appeal.  It reviewed the Plan and the documents and information provided to the Nieces and Nephews.  Plaintiff set forth the parameters and substance of its review as follows:[8]

1.  The terms of the FINRA Employees Retirement Plan document, as amended and restated effective as of January 1, 2016, and as subsequently amended (the "Plan Document"). In particular, the Committee reviewed the following:

   o   Section 6.01 of the Plan Document, which provides that death benefits with respect to a Plan participant who dies before commencing their retirement benefits will be payable to the participant's "Beneficiary".

   o   Section 1.06 of the Plan Document, which defines "Beneficiary" to mean:

---

[8]   The Siblings understand that the Court could simply review the July 28, 2023 letter from Plaintiff to Tanja and the Nieces and Nephews, and it is not their intent to add density to this Motion, but for purposes of demonstrating the point as to how thorough Plaintiff was, the letter is being quoted herein.

"[a] Participant's surviving Spouse, or if there is none, the person or persons designated by a Participant to receive any payment or payments in respect of such Participant payable under this Plan in the event of such Participant's death...

Any such Beneficiary designation shall be in the form and medium prescribed by the Committee and may be changed from time to time in the form and medium prescribed by the Committee. Under reasonable rules uniformly applied, the Committee may limit the number of beneficiaries an individual may designate thereunder. In the absence of an effective designation, or if all designated persons predecease the Participant, the Beneficiary shall be the surviving members of the first of the following classes that include survivors: the Participant's (a) surviving Spouse or Domestic Partner (as defined in Section 8.04(b)), or (b) estate."

o   Section 11.10 of the Plan Document, which provides that to the maximum extent permitted by law, the Committee shall have the power and complete discretionary authority to decide any questions regarding the operation of the Plan, any questions regarding eligibility for benefits under the Plan, and any matter whatsoever that arises in connection with the Plan, with the Committee's decisions being binding, final, and conclusive upon all parties.

2.   The terms of the Summary Plan Description with respect to the Plan, as amended and restated in 2017 (the "SPD"). In particular, the Committee considered the following:

o   The provisions of the SPD describing that in the case of a participant who dies before retirement benefits under the Plan have begun and who is not married, or does not have a domestic partner at the time of death, death benefits will be paid to the participant's designated beneficiary or beneficiaries, unless there is no surviving beneficiary, in which case benefits will be paid to the participant's estate.

o   The provisions of the SPD describing the ERISA claims determination and appeal procedures under the Plan that were applied to the Initial Claim and to the Appeal, consistent with applicable law.

3.   The terms of the Plan's standard Beneficiary Designation form available to retired employees, such as Ms. Lightning, through the FINRA   Pension   Center,   which   reflects   the   reasonable

21

administrative procedures established by the Committee requiring that a Plan participant designate a beneficiary under the Plan by completing a Beneficiary Designation form in writing. In particular, the Committee considered the following:

o    The statement on the Beneficiary Designation form instructing Plan participants to "use this form to designate your beneficiar(ies) for the FINRA Employees Retirement Plan. Any benefit payable will be split equally among the beneficiaries listed. Once you make your beneficiary designation, **you must sign and date this form** in the Participant Signature section." (emphasis added).

o    The section of the Beneficiary Designation form entitled "Participant Signature", which provides that the participant's signature is certifying that the participant has elected the beneficiary designation(s) specified on the form; (ii) that the participant understands that they have a right to designate a non-spouse beneficiary, if applicable, subject to certain consent requirements; and (iii) that the participant understands that they may redesignate a spouse as beneficiary, if applicable, subject to certain consent requirements.

o    The Committee's reasonable administrative procedures, administered uniformly and consistently by the Plan, requiring that each Beneficiary Designation form be signed by the participant himself/herself or, in the alternative, by an individual who has been authorized by the participant, in writing, to complete the Beneficiary Designation form on such participant's behalf.

4.    A signed Durable Financial Power of Attorney for Ms. Lightning, effective April 2, 2018, designating Ms. Tyrene Huff as Ms. Lightning's power of attorney and authorizing her to take certain actions with respect to retirement plans.

5.    Ms. Lightning's Beneficiary Designation form signed February 10, 2019 (the "2019 Beneficiary Designation Form").

6.    Ms. Lightning's Beneficiary Designation form, which is undisputed in the Appeal to have been signed June 6, 2022 by you (the "2022 Beneficiary Designation Form").

7.    A Pension Calculation Statement sent by the FINRA Pension Center to Ms. Lightning, dated February 9, 2021.

22

8.    The Initial Claim faxed January 11, 2023, including (i) a personal statement from you, faxed January 11, 2023; (ii) a letter from Sherry Phillips to the FINRA Pension Center, faxed January 13, 2023; (iii) a letter from Paige Phillips to the FINRA Pension Center, faxed January 13, 2023; (iv) a letter from Jacqueline D. Yarbough to the FINRA Pension Center, faxed January 13, 2023; and (v) a letter from X'Zavier Lightning to the FINRA Pension Center, faxed January 16, 2023.

9.    Call records from the FINRA Pension Center[1] for:

  a.    A call from Ms. Lighting on February 2,  2022;

  b.    A call from Ms. Lightning on February 3,  2022;

  c.    A call from Tyrene Huff on August 19,  2022;

  d.    A call from Tyrene Huff on September 6,  2022;

  e.    A call from you on September 14, 2022;

  f.    A call from you on September 15,  2022;

  g.    A call to Tyrene Huff on December 2,  2022;

  h.    A call to Paige Phillips (returning her voice mail message) on December 13, 2022; and

  i.    A call to you (returning your call) on April 10, 2023.

10.   A chronological summary of communications with the FINRA Pension Center regarding Ms. Lightning's benefit under the Plan, sent by the FINRA Pension Center on January 26,  2023.

11.   A distribution packet sent to Tyrene Huff from the FINRA Pension Center, dated November 30, 2022.

12.   A letter sent by the FINRA Pension Center to you, dated November 30, 2022.

13.   The Initial Claim Denial Letter sent on behalf of the Administrator to you, dated March 29, 2023.

14.   The Appeal, sent by you to FINRA, dated May 25, 2023.

15.    A letter sent on behalf of the Administrator to you, dated June 15, 2023, acknowledging receipt of the Appeal and reminding you and the Claimants that additional information could be submitted for consideration by the Administrator.

16.    Confirmation from Federal Express that the Administrator's letter dated June 15, 2023 was delivered on June 19, 2023.

17.    A letter from you to the FINRA Pension Center, faxed July 10, 2023, with attached documents, including a DARCARS Restricted Power of Attorney from October 2019.

18.    An email from you to Tony Cavallaro, FINRA Director of Benefits, sent July 18, 2023, 7:49AM, with attachments, including pictures of the DARCARS Restricted Power of Attorney from October 2019.

19.    An email from you to Mr. Cavallaro, sent July 18, 2023, 11:33PM, with attachments, including excerpted video and text messages.

Ex. 10.

To fulfill its burden, Plaintiff must have used a "deliberate, principled reasoning process" which was supported by substantial evidence. McKoy v. Int'l Paper Co., 488 F. 3d 221, 223 (4th Cir. 2007). The record unequivocally demonstrates Plaintiff did just that. It considered the record in its entirety, including but not limited to, all the Nieces' and Nephews' submission, their arguments, the Plan, and Plaintiff's mission in administering the Plan.

Upon consideration of the record, including all of the submissions and correspondence from the Nieces and Nephews, the Plaintiff denied the Nieces' and Nephews' claim because the Plan requires the written beneficiary designation form that is to be completed in accordance with the Plan and:

The Plan's reasonable administrative procedures, which have been implemented uniformly and consistently, require that a participant's designation of beneficiaries who will receive any benefits that may become payable under the Plan upon the participant's death requires completion, in writing, of a Beneficiary Designation form. Consistent with historic practice and Plan

operations, completion of such a Beneficiary Designation form requires signature by the Plan participant himself or herself, as indicated in the introductory statement ("you must sign and date this form in the Participant Signature section"), the Participant Signature section ("My signature below certifies that:... "), and the line on the form designated *"Signature of Participant".* In the event a Plan participant is unable to sign, the Plan's consistent administrative procedures have been to accept signature made by another individual on behalf of the Plan participant, but only if that signature is made pursuant to a written delegation of such authority by the participant (such as through a valid power of attorney), which should be appropriately evidenced in the manner in which the Beneficiary Designation form is signed (e.g., notation that the signature is "on behalf of/as legal agent for" the participant).

Id.[9]

The Nieces and Nephews have adduced no evidence showing or suggesting that Plaintiff's administrative procedures were illegal or unfair.[10]   Thus, based on the foregoing, the only conclusion this Court can reach is that Plaintiff, as evidenced through the entirety of the record, reasonably denied the claim because the 2022 Designation Form Tanja submitted in June 2022 was not properly executed in a manner consistent with Plaintiff's administrative procedures and lacked written documentation delegating any authority to Tanja to revise Anita's Death Beneficiary designations.  Id., p. 7.  Plaintiff's decision was not arbitrary, capricious, or in bad faith.

The Nieces and Nephews have had multiple opportunities to present evidence to demonstrate unreasonableness but have not produced any evidence demonstrating that

---

[9]    *Cf.* Garner v. Cent. State, 31 F. 4th 854 (4th Cir., 2022)(Plan administrator with discretion operated unreasonably when an independent medical expert engaged to review claim was not provided records to conduct assessment); Harrison v. Wells Fargo Bank, N.A., 773 F. 3d 15 (4th Cir., 2014)(Discretion abused where administrator did not consider readily available information of which it was on notice).

[10]    The entirety of the Nieces' and Nephews' claim to the Death Benefits appears to be that Anita, before she died, gave Tanja **verbal** authority to change the Beneficiary Form and that Plaintiff should accept that contention over its procedures, or conversely that its procedures should accept a verbal authorization. That contention has no support.

Plaintiff acted unreasonably in denying the claim (indeed, they have not even conducted discovery within the timelines afforded, even after extension).  Accordingly, the Nieces and Nephews exhausted all appeals and failed to produce any evidence demonstrating that Plaintiff acted unreasonably in denying their claim, summary judgment is proper in this case. The Court should uphold the Plaintiff's determination and uphold the 2019 Designation Form.

## V.  Conclusion

WHEREFORE, for the foregoing reasons, Defendants Napoleon Roosevelt Lightning, Tyrene Huff, and Lenora Frazier respectfully request that this Court grant this Motion in its entirety and enter an order authorizing Plaintiff to distribute all of the Death Benefits available to the Siblings under the Plan, plus all interest accrued, as set forth in the 2019 Designation Form and award any and other relief as this Court deems just and proper in this case.

Date:   July 19, 2024

Respectfully submitted,

*/s/ Jesse D. Stein*
Eugene W. Policastri, Bar No. 14917
Jesse D. Stein, Bar No. 17663
Selzer Gurvitch Rabin
Wertheimer & Polott, PC
600 Jefferson Plaza, Suite 308
Rockville, MD 20852
T:      (301) 986-9600
F:      (240) 235-4399
E:      gpolicastri@sgrwlaw.com
        jstein@sgrwlaw.com

Counsel for Defendants Napoleon Roosevelt
Lightning, Tyrene Huff, and Lenora Frazier

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2024, the foregoing was served by the Court's electronic

PACER system on the following individuals:

Edward Lee Isler, Esq.
Micah E. Ticatch, Esq.
Isler Dare PC
1945 Old Gallows Rd. Suite 650
Vienna, VA 22182
*Counsel of Record for*
*FINRA Pension/401(k) Plan Committee*

Carl V. Angelis
4601 Grant Street, NE
Washington, DC 20019-4741
Counsel for Defendants Tanja Lightning,
X'Zaivier Lightning, Paige Phillips, Sherry Phillips,
Napoleon Lightning, Tyler Huff, and Sidney Lightning

*/s/ Jesse D. Stein*
Jesse D. Stein