# THE FINRA EMPLOYEES RETIREMENT PLAN

Amended and Restated

Generally Effective January 1, 2016

**EXHIBIT**

**1**

INTRODUCTION ....................................................................................................................... 1

**ARTICLE 1** .............................................................................................................................. 2

DEFINITIONS ............................................................................................................................. 2
*Section 1.01 - Accrued Benefit* ............................................................................................... 2
*Section 1.02 - Actuarial Equivalent* ....................................................................................... 4
*Section 1.03 - Actuary* ............................................................................................................ 6
*Section 1.04 - Age* .................................................................................................................. 6
*Section 1.05 - Anniversary Date* ............................................................................................ 6
*Section 1.06 - Beneficiary* ...................................................................................................... 6
*Section 1.07 - Code* ................................................................................................................ 7
*Section 1.08 - Committee* ........................................................................................................ 7
*Section 1.09 - Compensation* .................................................................................................. 7
*Section 1.10 - Covered Compensation* .................................................................................... 8
*Section 1.11 - DC Choice Participant* ..................................................................................... 8
*Section 1.12 - Eligibility Computation Period* ........................................................................ 8
*Section 1.13 - - Employee* ....................................................................................................... 8
*Section 1.14 - Employer* .......................................................................................................... 9
*Section 1.15 - Employing Company* ........................................................................................ 9
*Section 1.16 - Employment Commencement Date* .................................................................. 10
*Section 1.17 - ERISA* .............................................................................................................. 10
*Section 1.18 - Final Average Compensation* .......................................................................... 10
*Section 1.19 - Former Final Average Compensation* ............................................................. 11
*Section 1.20 - Grandfathered 1988 Accrued Benefit* .............................................................. 11
*Section 1.21 - Hour of Service* ............................................................................................... 11
*Section 1.22 - Investment Manager* ........................................................................................ 11
*Section 1.23 - Maternity or Paternity Absence* ...................................................................... 12
*Section 1.24 - Normal Retirement Age* ................................................................................... 12
*Section 1.25 - Normal Retirement Date* .................................................................................. 12
*Section 1.26 - Normal Retirement Income* .............................................................................. 12
*Section 1.27 - Participant* ....................................................................................................... 12
*Section 1.28 - Period of Military Service* ............................................................................... 13
*Section 1.29 - Period of Severance* ........................................................................................ 13
*Section 1.30 - Plan - Name of* ................................................................................................. 13
*Section 1.31 - Plan Year* ......................................................................................................... 13
*Section 1.32 - Primary Social Security Benefit* ...................................................................... 13
*Section 1.33 - Reemployment Commencement Date* ............................................................... 14
*Section 1.34 - Service* .............................................................................................................. 14
*Section 1.35 - Severance Date* ................................................................................................ 20
*Section 1.36 - Spouse* ............................................................................................................. 20
*Section 1.37 - Termination of Employment* ............................................................................. 20
*Section 1.38 - Trust Agreement* ............................................................................................... 20
*Section 1.39 - Trustee* ............................................................................................................. 20
*Section 1.40 - Trust Fund* ........................................................................................................ 21
*Section 1.41 - Year of Eligibility Service* ............................................................................... 21
*Section 1.42 - Masculine, Feminine, Singular, and Plural* ..................................................... 21

*Section 1.43 - 1991 Restatement* ...................................................................................... 21
*Section 1.44 - 1993 Restatement* ...................................................................................... 21
*Section 1.45 - 2000 Restatement* ...................................................................................... 21
*Section 1.46 - 2002 Restatement* ...................................................................................... 21
*Section 1.47 - 2011 Restatement* ...................................................................................... 21

**ARTICLE II** ........................................................................................................................ 22

ELIGIBILITY FOR PLAN PARTICIPATION ............................................................................. 22
*Section 2.01 - Eligibility before 2011* .............................................................................. 22
*Section 2.02 - Participation Restrictions After 2010* ...................................................... 23
*Section 2.03 - Notification and Method of Becoming a Participant* ................................ 23
*Section 2.04 - Participation Mandatory* .......................................................................... 24
*Section 2.05 - Leased Employees* ..................................................................................... 24
*Section 2.06 - Returning Employee* .................................................................................. 24
*Section 2.07 - Union Employees* ....................................................................................... 25

**ARTICLE III** ....................................................................................................................... 25

NORMAL RETIREMENT INCOME ........................................................................................ 25
*Section 3.01 - Amount of* .................................................................................................. 25
*Section 3.02 - Type of* ....................................................................................................... 25
*Section 3.03 - Maximum Annual Benefit* .......................................................................... 26
*Section 3.04 - Benefit Restrictions* ................................................................................... 29

**ARTICLE IV** ....................................................................................................................... 29

COST OF PLAN ................................................................................................................... 29
*Section 4.01 - Cost of Plan* ............................................................................................... 29
*Section 4.02 - Return of Contributions* ............................................................................ 29

**ARTICLE V** ........................................................................................................................ 29

RETIREMENT ..................................................................................................................... 29
*Section 5.01 - Normal Retirement* .................................................................................... 30
*Section 5.02 - Deferred Retirement* .................................................................................. 30
*Section 5.03 - Earlier Retirement* ..................................................................................... 30
*Section 5.04 - Total and Permanent Disability Retirement* .............................................. 31
*Section 5.05 - Vesting* ....................................................................................................... 32
*Section 5.06 - Form of Benefit* .......................................................................................... 32
*Section 5.07 - Mandatory Lump Sum Payments* .............................................................. 33
*Section 5.08 - Commencement of Benefits* ....................................................................... 33
*Section 5.09 - Minimum Distributions* .............................................................................. 34
*Section 5.10 - Rehiring Retired Participants* .................................................................... 35
*Section 5.11 - Adjustment for Prior Distributions* ........................................................... 35
*Section 5.12 - Preretirement Age 70½ Distribution Option* ............................................. 35

**ARTICLE VI** ....................................................................................................................... 35

DEATH ............................................................................................................................... 35
*Section 6.01 - Death Benefit* ............................................................................................ 35
*Section 6.02 - Method of Payment* ................................................................................... 36

Section 6.03 - Overriding Provisions.................................................................... 36
Section 6.04 - Special Rule for Domestic Partners............................................... 36

ARTICLE VII ................................................................................................................ 36

TERMINATION OF EMPLOYMENT........................................................................... 36
Section 7.01 - Termination of Employment.......................................................... 36
Section 7.02 - Vested Benefits.............................................................................. 37
Section 7.03 - Notification of Benefits ................................................................. 37
Section 7.04 - Late and Rehired Retirees............................................................. 37
Section 7.05 - Transfer of Employment................................................................ 38
Section 7.06 - Absences....................................................................................... 38
Section 7.07 - Special Rules for Qualified Domestic Relations Orders ............... 39

ARTICLE VIII............................................................................................................... 39

JOINT AND SURVIVOR ANNUITY PROVISIONS ........................................................ 39
Section 8.01 - Application.................................................................................... 39
Section 8.02 - Qualified Joint and Survivor Annuity ........................................... 39
Section 8.03 - Qualified Preretirement Survivor Annuity..................................... 40
Section 8.04 - Definitions.................................................................................... 40
Section 8.05 - Notice Requirements..................................................................... 43

ARTICLE IX.................................................................................................................. 44

AMENDMENT AND TERMINATION OF PLAN ............................................................ 44
Section 9.01 - Amendment.................................................................................... 44
Section 9.02 - Termination of Plan - Merger, Etc. ............................................... 44
Section 9.03 - Full Vesting on Termination of Plan ............................................. 45
Section 9.04 - Manner of Adoption of Plan by Other Employers .......................... 46
Section 9.05 - Limitation on Vesting Amendments ............................................... 46

ARTICLE X ................................................................................................................... 46

TOP-HEAVY PLAN PROVISIONS ............................................................................... 46
Section 10.01 - Definitions................................................................................... 46
Section 10.02 - Provisions Applicable to Top-Heavy Plan.................................... 48
Section 10.03 - Minimum Vesting Requirements................................................... 48
Section 10.04 - Minimum Accrued Benefit............................................................ 49
Section 10.05 - General Override......................................................................... 50

ARTICLE XI.................................................................................................................. 50

NAMED FIDUCIARY - ADMINISTRATOR: POWERS, DUTIES, AND EXEMPTIONS OF COMMITTEE .. 50
Section 11.01 - Named Fiduciary - Administrator - Appointment - Tenure ......... 50
Section 11.02 - Majority to Govern - Meetings .................................................... 51
Section 11.03 - Member as Participant ................................................................ 51
Section 11.04 - General Responsibilities ............................................................. 51
Section 11.05 - Agents and Counsel - Secretary................................................... 51
Section 11.06 - Recordkeeping - Access Thereto.................................................. 52
Section 11.07 - Expenses - Compensation ........................................................... 52
Section 11.08 - Dealing with Trustee.................................................................... 52

Section 11.09 - Certification ................................................................................................ 52
Section 11.10 - Discretion - Mediator - Rules and Regulations - Claims Procedure .......... 52

**ARTICLE XII** ................................................................................................................. **54**

MISCELLANEOUS PROVISIONS ............................................................................................ 54
Section 12.01 - Employees' Trust ........................................................................................ 54
Section 12.02 - Indemnity.................................................................................................... 54
Section 12.03 - General Undertaking - Agreement Binds Heirs, Etc. ................................. 54
Section 12.04 - Prohibition Against Certain Persons Acting .............................................. 54
Section 12.05 - Plan Not Contract of Employment .............................................................. 55
Section 12.06 - Spendthrift Clause...................................................................................... 55
Section 12.07 - Invalidity of Certain Provisions................................................................. 55
Section 12.08 - Restrictions to Prevent Discrimination...................................................... 55
Section 12.09 - Escheat....................................................................................................... 56
Section 12.10 - Incompetence or Minority of Payee............................................................ 56
Section 12.11 - Headings ..................................................................................................... 56
Section 12.12 - Construction; Governing Laws.................................................................... 56
Section 12.13 - All Copies of Plan Deemed Originals......................................................... 57
Section 12.14 - Highly Compensated Employee Definition.................................................. 57
Section 12.15 - Qualified Military Service........................................................................... 57
Section 12.16 - Multiple Employer Plan.............................................................................. 57
Section 12.17 - Offsets ........................................................................................................ 58
Section 12.18 - Appendices ................................................................................................. 58
Section 12.19 - Optional Forms of Distribution ................................................................. 58

**ARTICLE XIII**................................................................................................................. **58**

DIRECT ROLLOVERS ........................................................................................................... 58
Section 13.01 - In General................................................................................................... 58
Section 13.02 - Special Rules.............................................................................................. 58
Section 13.03 - Definitions................................................................................................... 59

**ARTICLE XIV** ................................................................................................................ **60**

EFFECTIVE DATES............................................................................................................... 60
Section 14.01 - In General................................................................................................... 60
Section 14.02 - Qualified Transportation Fringe ............................................................... 60
Section 14.03 - Code Section 417 ........................................................................................ 60
Section 14.04 - Mortality Table .......................................................................................... 60
Section 14.05 - Compensation ............................................................................................. 60

**ARTICLE XV**.................................................................................................................. **61**

THE ECONOMIC GROWTH AND TAX RELIEF RECONCILIATION ACT OF 2001 ............................. 61
Section 15.01 - In General ................................................................................................... 61
Section 15.02 - Limitations on Benefits .............................................................................. 61
Section 15.03 - Increase In Compensation Limit................................................................. 61
Section 15.04 - Modification of Top-Heavy Rules ................................................................ 61
Section 15.05 - Direct Rollovers of Distributions................................................................ 61
Section 15.06 - Automatic Rollover Distributions ............................................................... 61

**APPENDIX A** .................................................................................................................. **63**

    SPECIAL PROVISIONS APPLICABLE TO PARTICIPANTS IN THE AMERICAN STOCK EXCHANGE, INC.
    EMPLOYEES' RETIREMENT PLAN ON DECEMBER 31, 2000........................................................ 63

**APPENDIX B** .................................................................................................................. **68**

    SPECIAL PROVISIONS APPLICABLE BY REASON OF THE REDUCTION IN FORCE AT THE NASDAQ
    STOCK MARKET, INC. ON JUNE 26, 2001 .................................................................................. 68

**APPENDIX C** .................................................................................................................. **69**

    SPECIAL PROVISIONS APPLICABLE TO REHIRED PARTICIPANTS ................................................ 69

**APPENDIX D** .................................................................................................................. **70**

**APPENDIX E** .................................................................................................................. **75**

    SPECIAL PROVISIONS APPLICABLE TO ASE PARTICIPANTS....................................................... 75

**APPENDIX F** .................................................................................................................. **77**

    SPECIAL PROVISIONS APPLICABLE TO NASDAQ PARTICIPANTS ................................................ 77

**APPENDIX G** .................................................................................................................. **78**

    SPECIAL PROVISIONS APPLICABLE BY REASON OF THE 2008 VOLUNTARY RETIREMENT
    PROGRAM ............................................................................................................................... 78

**APPENDIX H**................................................................................................................. **789**

    SPECIAL PROVISIONS APPLICABLE BY REASON OF THE 2013 VOLUNTARY RETIREMENT
    PROGRAM ............................................................................................................................. 789

**APPENDIX I** ................................................................................................................... **80**

    BENEFIT LIMITATIONS UNDER § 436 OF THE INTERNAL REVENUE CODE .................................. 80

22762252v.2

## INTRODUCTION

The Financial Industry Regulatory Authority, Inc. ("FINRA") (formerly the National Association of Securities Dealers, Inc. ("NASD")) established the National Association of Securities Dealers, Inc. Employees Retirement Plan (the "Plan") for the benefit of its employees effective July 1, 1954.

Effective January 1, 2003, the name of the Plan was changed to the NASD Employees Retirement Plan. Upon the formal name change of the National Association of Securities Dealers, Inc., to the Financial Industry Regulatory Authority, Inc., the name of the Plan was changed to the FINRA Employees Retirement Plan.

In 2011, the Plan was amended and restated generally effective January 1, 2011 (except as otherwise indicated in the Plan or prior amendments) to incorporate all amendments made to the Plan since the 2002 Restatement.

The Plan, as amended and restated herein, is effective January 1, 2016. Except as otherwise provided herein or under the terms of a duly executed amendment to the Plan, the Plan shall apply to each Employee who earns an Hour of Service on or after January 1, 2016, and to each Participant in the Plan who maintains an Accrued Benefit in this Plan with respect to such participation on and after the effective date of this restatement. Except as otherwise provided herein, in the case of a Participant who maintains an Accrued Benefit in this Plan but who has not earned an Hour of Service on or after the effective date of this restatement and has not attained his or her annuity starting date, the amount of such Participant's benefit shall be calculated under the terms of the Plan as in effect at the time such Participant terminated employment with all Employers, but the provisions herein relating to the funding, payment and administration of the Participant's benefit shall apply.

The Plan is intended to qualify under section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and to comply with the provisions of ERISA, the Code, and all other applicable federal laws and regulations. For purposes of qualification under the Code, the Plan is intended to be a pension plan, as that term is used under the Code. The provisions of the Plan shall be construed to effectuate the foregoing intentions.

22762252v.2

ARTICLE I

Definitions

Section 1.01 - Accrued Benefit-

Shall be equal to the sum of the amounts described in Sections 1.01(a), (b), and (c), subject to the provisions of Section 1.01(d); provided that if Section 1.01(e) applies to a Participant, such Participant's Accrued Benefit shall be the amount described in Section 1.01(e), subject to the provisions of Section 1.01(d).

(a)     The amount described in this Section 1.01(a) shall equal the product of the amount described in Section 1.01(a)(i) multiplied by the excess of the amount described in Section 1.01(a)(ii) over the amount described in Section 1.01(a)(iii).

(i)     A fraction, the numerator of which is the Participant's Final Average Compensation and the denominator of which is the Participant's Final Average Compensation as of December 31, 1988, provided that if such fraction would be less than one (1), the fraction shall be deemed to equal one (1).

(ii)     Two percent (2%) of the Participant's Former Final Average Compensation as of December 31, 1988, multiplied by his number of years of Service as of December 31, 1988, not to exceed thirty (30) years.

(iii)     Except as otherwise provided in this Section 1.01(a)(iii), the following product: two and one-half percent ($2^1/_2$%) of the Participant's Primary Social Security Benefit, determined as if the date of determination were December 31, 1988, multiplied by his number of years of Service as of December 31, 1988, not to exceed thirty (30) years, multiplied by a fraction, the numerator of which is the Participant's Service as of December 31, 1988 and the denominator of which is the Service the Participant would have if he lived and remained in the employment of the Employer to his Normal Retirement Date. If, with respect to a Participant, the amount determined under the preceding sentence (without regard to this sentence) exceeds fifty percent (50%) of the amount determined under Section 1.01(a)(ii), the amount determined under the preceding sentence shall be deemed to equal fifty percent (50%) of the amount determined under Section 1.01(a)(ii).

(b)     One and one-quarter percent ($1^1/_4$%) of the Participant's Final Average Compensation multiplied by his number of years of Service after December 31, 1988.

(c)     .5267% of the Participant's Final Average Compensation in excess of Covered Compensation, multiplied by his number of years of Service after December 31, 1988.

(d)     Code section 401(1) and the regulations thereunder shall apply only to benefits that accrue in Plan Years beginning after December 31, 1988, and shall not apply under Section 1.01(a).

Notwithstanding any other provisions of this Plan, a Participant's Accrued Benefit shall not be less than his Grandfathered 1988 Accrued Benefit.

2

(e)     This Section 1.01(e) shall apply to all Section 401(a)(17) Employees.  Under this Section 1.01(e), there shall be an OBRA '93 Fresh-Start Date as of December 31, 1993, and the Accrued Benefit of a Section 401(a)(17) Employee shall be equal to the sum of (A) the amount described in Section 1.01(e)(ii) or (iii), whichever is applicable, and (B) the sum of the amounts described in Sections 1.01(e)(iv), (ix), and (vi).  For purposes of this Section 1.01(e), the terms "Section 401(a)(17) Employee," and "OBRA '93 Fresh-Start Date" shall have the meanings given such terms under Code section 401(a)(17).

(i)     The amount described in Section 1.01(a) determined as of December 31, 1993, multiplied by a fraction.  The numerator of the fraction shall be the Participant's Former Final Average Compensation (except that the seventh sentence of Section 1.09 shall apply), and the denominator shall be the Participant's Former Final Average Compensation (except that the seventh sentence of Section 1.09 shall apply) as of December 31, 1993; provided that if such fraction would be less than one (1), the fraction shall be deemed to equal one (1).  For purposes of this Section 1.01(e)(ii), the following modifications shall apply with respect to the fraction determined under Section 1.01(a)(i).  The numerator shall be the Participant's Former Final Average Compensation (except that the seventh sentence of Section 1.09 shall apply).  The denominator shall be the Participant's Former Final Average Compensation as of December 31, 1988.  The proviso in Section 1.01(a)(i) shall apply.

This Section 1.01(e)(ii) shall only apply to a Section 401(a)(17) Employee if, as of a date on or after January 1, 1989, such Participant's Accrued Benefit is based on Compensation for a year prior to January 1, 1989 that exceeded $200,000.

(ii)     The amount described in Section 1.01(a) determined as of December 31, 1993, multiplied by a fraction.  The numerator of the fraction shall be the Participant's Final Average Compensation, and the denominator shall be the Participant's Final Average Compensation as of December 31, 1993; provided that if such fraction would be less than one (1), the fraction shall be deemed to equal one (1).

This Section 1.01(e)(iii) shall only apply to a Section 401(a)(17) Employee who is not described in the second paragraph of Section 1.01(e)(ii).

(iii)     The product of (A) the sum of the amounts described in Sections 1.01(b) and (c,, determined as of December 31, 1993, multiplied by (B) the fraction described in Section 1.01(e)(iii); provided that if such fraction would be less than one (1), the fraction shall be deemed to equal one (1).

(iv)     One and one-quarter percent ($1^1/_4$%) of the Participant's Final Average Compensation multiplied by his number of years of Service after December 31, 1993.

(v)     .5267% of the Participant's Final Average Compensation in excess of Covered Compensation multiplied by his number of years of Service after December 31, 1993.

(f)     Notwithstanding the above, a DC Choice Participant's Accrued Benefit under the Plan or any Appendix thereto shall be frozen as of December 31, 2011, based on his service, compensation and pay (as determined under the Plan or an Appendix), as of such date and the

Accrued Benefit of individuals described in Section 2.06(b)(i) shall be limited in the manner set forth therein.

Section 1.02 - Actuarial Equivalent-

Shall mean a benefit of equivalent value determined on the basis of the following actuarial assumptions:

(a) Seven percent (7%) compound interest and either (i) the UP-1984 Mortality Table or (ii) the applicable mortality table specified in Code section 417(e)(3), that would yield the greater benefit.

(b)(i) Notwithstanding Section 1.02(a), with respect to any Participant, for purposes of Section 5.07 and for purposes of determining the amount of any lump sum payment, or any other optional form of benefit that is subject to Code section 417(e)(3), under the Plan, the actuarial assumptions which shall apply shall be whichever of (A) and (B) below would yield the greater benefit.

(A) the Applicable Actuarial Assumptions; or

(B) seven percent (7%) compound interest, and either (1) the UP-1984 Mortality Table, or (2) the applicable mortality table specified in Code section 417(e)(3) (whichever table would yield the greater benefit).

(ii) For purposes of this Section 1.02(b), "Applicable Actuarial Assumptions" shall mean as follows.

(A) for distributions with annuity starting dates (as defined for purposes of the effective date of section 302 of the Pension Protection Act of 2006) occurring during the Plan Year beginning January 1, 2008, whichever of (1) and (2) below would yield the greater benefit –

(1) (a) the applicable mortality table specified under Rev. Rul. 2001-62, and (b) the annual rate of interest on 30-year Treasury securities specified by the Commissioner of Internal Revenue for October 2007 (i.e., 4.77%); or

(2) (a) the applicable mortality table specified in Code section 417(e)(3), and (b) the applicable interest rate specified in Code section 417(e)(3) for October 2007 for lump sums payable in 2008;

(B) for distributions with annuity starting dates (as defined for purposes of the effective date of section 302 of the Pension Protection Act of 2006) occurring on or after January 1, 2009 but before July 1, 2009, whichever of (1) and (2) below would yield the greater benefit –

(1) (a) the applicable mortality table specified under Rev. Rul. 2001-62, and (b) the annual rate of interest on 30-year Treasury

4

securities specified by the Commissioner of Internal Revenue for October 2007 (i.e., 4.77%) ; or

(2) (a) the applicable mortality table specified in Code section 417(e)(3), and (b) the applicable interest rate specified in Code section 417(e)(3) for October 2008 for lump sums payable in 2009;

(C) for distributions with annuity starting dates (as defined for purposes of the effective date of section 302 of the Pension Protection Act of 2006) occurring on or after July 1, 2009 but before January 1, 2010, whichever of (1) and (2) below would yield the greater benefit –

(1) (a) the applicable mortality table specified in Code section 417(e)(3), and (b) the applicable interest rate specified in Code section 417(e)(3) for October 2008, applying Code section 417(e)(3)(D) as though the applicable percentage for 2009 were 25%; or

(2) (a) the applicable mortality table specified in Code section 417(e)(3), and (b) the applicable interest rate specified in Code section 417(e)(3) for October 2008 for lump sums payable in 2009;

(D) for distributions with annuity starting dates (as defined for purposes of the effective date of section 302 of the Pension Protection Act of 2006) occurring during the Plan Year beginning January 1, 2010, whichever of (1) and (2) below would yield the greater benefit –

(1) (a) the applicable mortality table specified in Code section 417(e)(3), and (b) the applicable interest rate specified in Code section 417(e)(3) for October 2009, applying Code section 417(e)(3)(D) as though the applicable percentage for 2010 were 50%; or

(2) (a) the applicable mortality table specified in Code section 417(e)(3), and (b) the applicable interest rate specified in Code section 417(e)(3) for October 2009 for lump sums payable in 2010;

(E) for distributions with annuity starting dates (as defined for purposes of the effective date of section 302 of the Pension Protection Act of 2006) occurring during the Plan Year beginning January 1, 2011, whichever of (1) and (2) below would yield the greater benefit –

(1) (a) the applicable mortality table specified in Code section 417(e)(3), and (b) the applicable interest rate specified in Code section 417(e)(3) for October 2010, applying Code section 417(e)(3)(D) as though the applicable percentage for 2011 were 75%; or

(2) (a) the applicable mortality table specified in Code section 417(e)(3), and (b) the applicable interest rate specified in Code section 417(e)(3) for October 2010 for lump sums payable in 2011;

(F) for distributions with annuity starting dates (as defined for purposes of the effective date of section 302 of the Pension Protection Act of 2006) occurring during a Plan Year beginning on or after January 1, 2012, (a) the applicable mortality table specified in Code section 417(e)(3), and (b) the applicable interest rate specified in Code section 417(e)(3) for the October immediately preceding such Plan Year.

(iii)If the actuarial assumptions in Section 1.02(b)(i)(A)  apply in determining the amount of a lump sum payment or any other optional form of benefit that is subject to Code section 417(e)(3), the same actuarial assumptions shall apply in determining the Actuarial Equivalent of such lump sum payment or optional form, including the Qualified Joint and Survivor Annuity.

(iv)For purposes of applying Code section 401(1) to a lump sum payment or any other optional form of benefit that is subject to Code section 417(e)(3), the interest rate shall be the interest rate determined under this Section 1.02(b).

Section 1.03 - Actuary -

Shall mean the actuarial consultant qualifying as an enrolled actuary under ERISA and designated by the Employer from time to time to make all actuarial computations in connection with the Plan.

Section 1.04 - Age -

Shall mean actual age as of any date during a Plan Year.

Section 1.05 - Anniversary Date -

Shall mean January 1 and July 1 of each year.

Section 1.06 - Beneficiary -

Shall mean a Participant's surviving Spouse, or if there is none, the person or persons designated by a Participant to receive any payment or payments in respect of such Participant payable under this Plan in the event of such Participant's death. Notwithstanding the foregoing sentence, a married Participant may designate some person, persons, or class of persons (such as surviving children of the Participant) other than his Spouse as his Beneficiary, provided that such designation is made pursuant to a Qualified Election (as defined in Section 8.04(f)).

Any such Beneficiary designation shall be in the form and medium prescribed by the Committee and may be changed from time to time in the form and medium prescribed by the Committee.  Under reasonable rules uniformly applied, the Committee may limit the number of beneficiaries an individual may designate hereunder.  In the absence of an effective designation,

6

or if all designated persons predecease the Participant, the Beneficiary shall be the surviving members of the first of the following classes that include survivors: the Participant's (a) surviving Spouse or Domestic Partner (as defined in Section 8.04(b)), or (b) estate.

Section 1.07 - Code -

Shall mean the Internal Revenue Code of 1986, as amended from time to time, and any regulations issued thereunder. A reference to any section of the Code shall also be deemed to refer to any successor statutory provision.

Section 1.08 - Committee -

Shall mean the persons who are named as the FINRA Pension/401(k) Plan Committee to administer this Plan.

Section 1.09 - Compensation -

Shall, except as otherwise provided in this Section 1.09, mean the basic salary or wages paid during a Plan Year to an Employee from the Employer, excluding bonuses, overtime, expense allowances, severance pay of any kind (whether paid in a lump sum, on a periodic basis, or in any other manner), amounts paid by any entity other than the Employer (such as disability benefits paid by an insurance company), commissions, or other special payments. Notwithstanding the foregoing, Compensation shall include any lump sum payments made to a FINRA Employee in lieu of a merit increase above the salary range maximum for that Employee. Except as otherwise provided in the following sentence, with respect to an Employee who is paid on an hourly basis, the term "base salary or wages" in the preceding sentence shall mean base salary or wages for the hours such an Employee is scheduled to work for the Employer during the Plan Year, provided that this sentence shall not apply with respect to compensation for periods prior to January 1, 2004, if the Employee's Accrued Benefit determined without regard to this sentence would be greater as of December 31, 2003. Effective for compensation for periods after December 31, 2003, with respect to a FINRA Employee who is paid on an hourly basis, the term "base salary or wages" in the first sentence of this Section 1.09 shall mean actual base salary or wages paid to such an Employee by the Employer during the Plan Year for up to 40 hours per week, and the term "overtime" shall mean payment for hours in excess of 40 hours per week. The term "FINRA Employee" shall mean any Employee other than an Employee employed by The Nasdaq Stock Market, Inc. (or a subsidiary thereof) or by the AMEX LLC (or a subsidiary thereof). Compensation shall be determined without regard to any salary reduction pursuant to (a) the FINRA Savings Plus Plan, (b) any other qualified cash-or-deferred arrangement within the meaning of Code section 401(k) maintained by the Employer, (c) any cafeteria plan within the meaning of Code section 125 maintained by the Employer, (d) any eligible deferred compensation plan within the meaning of Code section 457(b) maintained by the Employer, or (e) any qualified transportation fringe program within the meaning of Code section 132(f) maintained by the Employer. No amount shall, however, be taken into account as Compensation with respect to an individual to the extent that the total amount for the individual for any Plan Year exceeds $265,000 (as adjusted for cost of living increases under Code section 401(a)(17)). Notwithstanding the foregoing, for purposes of determining the Final Average Compensation or Former Final Average Compensation of a Section 401(a)(17) Employee (as

7

defined under Code section 401(a)(17)) as of December 31, 1993, the adjusted limit applicable under Code section 401(a)(17) to Plan Years beginning in 1993 shall apply to all periods prior to January 1, 1994. Notwithstanding the above, Compensation for persons rehired after December 31, 2010 and for DC Choice Participants shall be frozen as set forth in Section 2.06.

Section 1.10 - Covered Compensation -

Shall have the meaning given such term in Code section 401(1) (without regard to any rules allowing a Participant's covered compensation to be determined based on data from a prior Plan Year), provided that the amount so determined shall be rounded to the nearest multiple of $600. Notwithstanding the above, Covered Compensation for persons rehired after December 31, 2010 and for DC Choice Participants shall be frozen as necessary to reflect the freeze of such individual's Accrued Benefit.

Section 1.11 - DC Choice Participant -

Shall mean an individual who has chosen to cease benefit accruals as of December 31, 2011 under this Plan pursuant to the 2011 FINRA Retirement Decision Program.

Section 1.12 - Eligibility Computation Period -

Shall mean the twelve (12) consecutive month period used to determine Years of Eligibility Service.

Section 1.13 - - Employee -

(a)      Shall mean an individual who is treated by an Employing Company as an employee of the Employing Company.

(b)      Notwithstanding any provision of the Plan to the contrary, the term "Employee" shall not include for any purpose of the Plan any individual except to the extent that such individual is contemporaneously designated on the Employing Company's records (or on the records of the Employer on behalf of the Employing Company) as an employee for all purposes including, without limitation, all purposes under Subtitle C of the Code. Thus, for example, an individual who for a Plan Year is not contemporaneously designated on the Employing Company's records (or on the records of the Employer on behalf of the Employing Company) as an employee for all purposes under Subtitle C of the Code shall not be an Employee for any part of such Plan Year by reason of the fact that at a later time the individual is retroactively treated as an employee of the Employing Company (or of the Employer) for such Plan Year for purposes of Subtitle C of the Code. As another example, an individual shall not be an Employee if such individual (1) is contemporaneously designated on the Employing Company's records (or on the records of the Employer on behalf of the Employing Company) as an independent contractor or a leased employee (within the meaning of Code section 414(n)), or (2) is not contemporaneously designated as on the regular payroll of the Employing Company. For the purposes of the preceding sentence, the term "leased employee" means any person treated by the Employer as a person (other than as an employee of the Employer) who, pursuant to an agreement between the Employer and any other person, has performed services for the Employer (or for the Employer and related persons determined in accordance with Code section 414(n)(6)) on a substantially

8

full-time basis for a period of at least 1 year, and such services are performed under the primary direction and control of the Employer.  The provisions of this Section 1.13(b) shall apply to an individual without regard to whether the Employing Company (or the Employer on behalf of the Employing Company) provides remuneration to such individual and without regard to the manner in which the Employing Company (or the Employer on behalf of the Employing Company) calculates or provides any such remuneration.

(c)     Notwithstanding any provision of the Plan to the contrary, the term "Employee" shall not include nonresident aliens who receive compensation for labor or personal services performed outside the United States of America.

(d)     If an individual is an Employee under the foregoing provisions of this Section 1.13, the Employing Company by which such individual shall be treated as employed for purposes of this Plan shall be the Employing Company to which such individual is assigned under the payroll records of the Employer.

### Section 1.14 - Employer -

Shall mean all Employing Companies and all employers required to be aggregated with any Employing Company under sections 414(b), (c), (m), or (o) of the Code, provided that for purposes of Article III, the modifications prescribed by Code section 415(h) shall apply. Notwithstanding the foregoing, if an Employing Company ("first Employing Company") is not required to be aggregated with another Employing Company ("second Employing Company") under sections 414(b), (c), (m), or (o) of the Code, the first Employing Company and all employers required to be aggregated with the first Employing Company under sections 414(b), (c), (m), or (o) of the Code, shall, to the extent required by law or to the extent the context clearly requires, be treated as a separate Employer from the second Employing Company and all employers required to be aggregated with the second Employing Company under sections 414(b), (c), (m), or (o) of the Code.

Subject to the second sentence of the preceding paragraph, the term "Employer" shall be used throughout this Plan to refer to the respective Employer entities or the collective group of Employer entities or another similar meaning, as determined by the context in which the term is used.  The principle that shall guide the interpretation of the use of the term "Employer" in this Plan is set forth in Section 12.16.

### Section 1.15 - Employing Company -

Shall mean:

(a)     The FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.;

(b)     A member (or functional unit of a member) of a controlled group of corporations, within the meaning of Code section 414(b), of which the FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. is a member;

9

22762252v.2

(c)     An entity (or functional unit of an entity) under common control, within the meaning of Code section 414(c), with the FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.;

(d)     A member of an affiliated service group, within the meaning of Code section 414(m), of which the FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. is a member;

(e)     Any other entity required to be aggregated with the FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. pursuant to applicable regulations under Code section 414(o); and

(f)     Any other entity (or functional unit of an entity).

Notwithstanding the foregoing, an entity shall be an Employing Company only to the extent that such entity has adopted the Plan in accordance with Section 9.04 and has not terminated such adoption thereunder.

Except to the extent that the context indicates otherwise, references to acts by an Employing Company shall be deemed to include acts by the FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. on behalf of the Employing Company.

Notwithstanding the foregoing, for any period of time prior to the date on which the National Association of Securities Dealers, Inc., formally changed its name to the Financial Industry Regulatory Authority, Inc., "Employing Company" shall be read to mean the National Association of Securities Dealers, Inc.

Section 1.16 - Employment Commencement Date -

Shall mean the date for which an employee is first credited with an Hour of Service.

Section 1.17 - ERISA -

Shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time, and any regulations issued thereunder. A reference to any section of ERISA shall also be deemed to refer to any successor statutory provision.

Section 1.18 - Final Average Compensation -

Shall mean the monthly average of the Compensation earned by the Participant in the sixty (60) consecutive month period during the Participant's Service when such average is the highest. In the case of a Participant with less than sixty (60) months of Service, the reference to "sixty (60)" in the prior sentence shall be deemed to be a reference to such Participant's number of months of Service. Where a Participant is an Employee but for a period of Service is on an authorized leave of absence described in Section 7.06(b) or away from active employment pursuant to the Selective Service Act or similar act, he shall be deemed to be paid Compensation while on such leave or service equal to the Compensation which was in effect for him on the last pay date prior to his beginning such leave or service. Compensation shall not be deemed to be

10

paid under the preceding sentence for a period in excess of the period permitted under Code section 414(s). Notwithstanding the above, Final Average Compensation for persons rehired after December 31, 2010 and for DC Choice Participants shall be frozen as set forth in Section 2.06.

Section 1.19 - Former Final Average Compensation -

Shall mean Final Average Compensation determined without regard to the amendments made under the 1991 Restatement (other than the deletion of the second sentence of the third paragraph of former Section 3.01 and the addition of the last sentence of Section 1.09 (which addition shall, for this purpose, be retroactive to all prior periods)) and determined without regard to the amendments made under the 1993 Restatement or any subsequent amendments. Notwithstanding the above, Former Final Average Compensation for persons rehired after December 31, 2010 and for DC Choice Participants shall be frozen as set forth in Section 2.06.

Section 1.20 - Grandfathered 1988 Accrued Benefit -

Shall mean, with respect to a Participant, the Accrued Benefit determined under Section 1.01(a) (without regard to the last sentence of Section 1.01(a)(iii)) as if the fraction in Section 1.01(a)(i) equaled one (1) and as if each reference in Section 1.01(a) to December 31, 1988 were replaced by a reference to the Grandfather Date. For purposes of this Section 1.20, the Grandfather Date shall be (a) December 31, 1988 for an Employee who was a Super Highly Compensated Employee with respect to the 1989 Plan Year; (b) December 31, 1989 for an Employee who was a Super Highly Compensated Employee with respect to the 1990 Plan Year but not with respect to the 1989 Plan Year; (c) December 31, 1990 for an Employee who was a Super Highly Compensated Employee with respect to the 1991 Plan Year but not with respect to the 1989 or 1990 Plan Years; and (d) the last day of the calendar month in 1991 in which the Plan is amended and restated for an Employee who was not a Super Highly Compensated Employee with respect to the 1989, 1990, or 1991 Plan Years. With respect to an Employee to whom Section 1.20 (b), (c) or (d) applies, Former Final Average Compensation shall, for purposes of this Section 1.20, be adjusted in accordance with Code sections 401(a)(17) and 411(d)(6). For purposes of this provision, the term "Super Highly Compensated Employee" shall mean a highly compensated employee as defined in Code section 414(q), without regard to Code section 414(q)(1)(C) or (D), as in effect for plan years prior to January 1, 1997.

Section 1.21 - Hour of Service -

Shall mean an hour for which an employee is paid or entitled to payment for the performance of duties for the Employer.

Section 1.22 - Investment Manager -

Shall mean a person who:

(a)     Has been appointed by the Employer or the Committee to manage, acquire, and dispose of all or any portion of the Trust Fund;

11

(b)  Is (i) registered as an investment adviser under the Investment Advisers Act of 1940; (ii) a bank, as defined in that Act; or (iii) an insurance company qualified to perform the services described in requirement (a) above under the laws of more than one state; and

(c)  Has acknowledged in writing that such person is a fiduciary with respect to the Plan.

Section 1.23 - Maternity or Paternity Absence -

Shall mean up to two years of any period beginning after December 31, 1984, in which an employee of the Employer is absent from work by reason of such employee's pregnancy, the birth of such employee's child, or the placement of a child with such Employee in connection with adoption by such employee, or for purposes of caring for such a child for a period immediately following such birth or placement. An absence shall not be treated as a Maternity or Paternity Absence unless the employee furnishes to the Committee such timely information as the Committee may reasonably require to establish that the absence is for the permitted reasons and the length of such absence. To the extent that any period of absence is a leave of absence for which the employee otherwise receives credit under Section 1.34, it shall not be a Maternity or Paternity Absence.

Section 1.24 - Normal Retirement Age -

Shall mean Age sixty-five (65), except that in the case of an Employee who becomes a Participant after his sixtieth (60th) birthday, it shall mean the fifth (5th) anniversary of the date he became a Participant.

Section 1.25 - Normal Retirement Date -

Shall mean the first day of the first calendar month coincident with or next following the month in which a Participant attains Normal Retirement Age.

Section 1.26 - Normal Retirement Income -

Shall mean the amount of the monthly income payments to be made to a Participant beginning at his Normal Retirement Date and payable to the Participant for only his lifetime.

Section 1.27 - Participant -

Shall mean an Employee who enters the Plan under the provisions of Article II. A Participant shall continue to be a Participant in the Plan until all amounts to which he is entitled under the Plan shall have been distributed or forfeited.

Notwithstanding the foregoing, no individual who becomes an Employee after December 31, 2010, shall be eligible to participate in the Plan. Any individual who was a Participant in the Plan and has had a Severance Date and is not an Employee on December 31, 2010, shall only be a Participant upon rehire as an Employee to the extent set forth in Sections 2.02 and 2.06. A DC Choice Participant shall not be eligible to receive additional benefit accruals after December 31,

2011 and shall only be able to participate in the Plan to the extent set forth in <u>Sections 2.02 and 2.06</u>.

Section 1.28 - <u>Period of Military Service</u> -

Shall mean a period in the uniformed services of the United States.

Section 1.29 - <u>Period of Severance</u> -

Shall mean a period of time commencing with an employee's Severance Date and ending with the date on which he is next credited with an Hour of Service; provided, however, that a Period of Severance shall not include (a) any period explicitly included in the definition of Service, or (b) any period that is a Maternity or Paternity Absence.

Section 1.30 - <u>Plan - Name of</u> -

Shall mean the FINRA Employees Retirement Plan (formerly the NASD Employees Retirement Plan).

Section 1.31 - <u>Plan Year</u> -

Shall mean a calendar year.

Section 1.32 - <u>Primary Social Security Benefit</u> -

Shall mean the monthly primary Social Security insurance amount payable at a Participant's Normal Retirement Date (or actual retirement date if later) as calculated under the provisions of this Section. The Committee shall determine a Participant's monthly primary insurance amount under the federal Social Security Act by applying the Average Monthly Wage as computed below to the Table of Social Security Benefits in effect as of the January 1 in the year of determination. Such Table of Social Security Benefits shall be adopted by the Committee. To compute a Participant's Average Monthly Wage at his Normal Retirement Date (or actual retirement date if later), the Committee shall apply the total annual Compensation of the Participant in the prior calendar year (annualized, where the Participant worked for less than a full year) to the Table of Wages. Such Table of Wages shall also be adopted by the Committee. The Table of Wages shall (a) use the taxable wage base in effect on January 1 in the year of determination; (b) shall assume the Compensation received in prior years increased at the rate of increase in the national average earnings used for purposes of determining the average indexed monthly earnings on which Social Security benefits are based as reported by the Social Security Administration; and (c) shall assume the continuation of the Compensation in the calendar year preceding the date of determination without increase thereafter until Normal Retirement Date. The foregoing notwithstanding, the Accrued Benefit of a Participant who has any Service after 1983 shall not be less than his Accrued Benefit, as determined under the provisions of this Section in effect on December 31, 1983, on the earlier of December 31, 1984 or the date of determination.

Any Participant who has any Service after 1983 shall have a right to have his Primary Social Security Benefit calculated on the basis of his actual salary history before his separation

13

from service, in lieu of the assumed history under Section 1.32(b), provided that he supplies such actual history to the Committee. The Committee shall give each Participant clear written notice of this right and of the financial consequences of failing to supply his actual salary history. The notice shall be given each time the summary plan description is provided and upon separation from employment, and shall state that the Participant can obtain the actual salary history from the Social Security Administration.

A Participant's benefit shall be adjusted to the offset based on actual salary history for years previously estimated before separation from service and assumed post-separation compensation if the Participant supplies documentation of that history. Such documentation must be provided no later than a reasonable period of time following the later of the date of separation from service and the time when the Participant is notified of the benefit to which he or she is entitled.

Changes in the taxable wage base and adjustments in the benefit formula which occur after a Participant's death, Termination of Employment, or retirement are disregarded for purposes of the Plan. In computing the Primary Social Security Benefit, there shall be disregarded a Participant's failure to apply to the Social Security Administration for commencement of payments or any disqualification or reduction or loss of benefits which may result because of other income or for any other reason.

Section 1.33 - Reemployment Commencement Date -

Shall mean the first date following a Period of Severance on which an employee is credited with an Hour of Service.

Section 1.34 - Service -

Shall mean all periods of time from a person's Employment Commencement Date (or from a subsequent Reemployment Commencement Date) until the later of such person's next Severance Date or the end of the period specified in subsection (a) or (b) below, if applicable, computed in accordance with the provisions of subsections (c), (d), (e), (f), and (i) below, and subject to the provisions of subsections (g), (h), (j), (k), (l), (m), (n), (o), (p), (q), (r), (s), and (t) below. Service for any Participant rehired after 2010 or for a DC Choice Participant after 2011 shall be counted solely for purposes of (i) determining the portion of a Participant's Accrued Benefit that is vested, and (ii) determining eligibility to receive an early retirement benefit under Section 5.03 or the reduction percentage under Section 7.02 for early receipt with respect to such Participant's frozen Accrued Benefit, but not for determining the amount of such Accrued Benefit, except for the projection of Service to Normal Retirement Date for purposes of determining the denominator in the first sentence of Section 1.01(a)(iii).

Notwithstanding anything in the Plan to the contrary, including but not limited to this Section 1.34 or any Appendix, a Participant's Service for any specified period of time shall not be duplicated and shall only be taken into account once in determining Service.

Notwithstanding any provision of the Plan, this Section 1.34 or any Appendix to this Plan, no individual shall be eligible to participate in the Plan after 2010 by reason of any service credit provided to such individual under Section 1.34(a) through (s), other than Section 1.34(b).

(a)     If an employee quits, is discharged, or retires, and then performs an Hour of Service within twelve (12) months after his Severance Date, the Period of Severance shall be included in Service solely for purposes of vesting.  Notwithstanding the foregoing, if an employee quits, is discharged, or retires during an absence (with or without pay) of twelve (12) months or less for any reason other than quitting, discharge, retirement, or death, the Period of Severance shall be included in Service only if he performs an Hour of Service within twelve (12) months after the date he was first absent.  This subsection (a) shall not apply for any purpose other than vesting, and thus shall not apply, for example, for purposes of the determination of an Employee's eligibility to participate under Section 2.01, the determination of the amount of a Participant's Accrued Benefit, the determination of a Participant's eligibility for benefits under Section 5.03, or the determination of a Participant's eligibility for benefits under the second paragraph of Section 7.02.

(b)     Service shall not be considered interrupted by and shall include any Period of Military Service, provided that, subject to Section 12.15, this Section 1.34(b) shall apply only to the extent provided by law.

(c)     In the case of an employee of the Employer who incurs a Period of Severance, and who immediately before such Period of Severance has not met the requirements for a vested benefit, and who again becomes an employee of the Employer, Service shall not include any Service before such Period of Severance if the length of the Period of Severance equals or exceeds the greater of (i) five (5) years, or (ii) the length of the employee's Service before the Period of Severance.  Service with respect to an acquired company or entity or provided to a transferred employee under the special provisions of this Section 1.34 shall not be counted as employment with the Employer in determining whether the break in service rules apply for purposes of benefit accrual, or for any purposes other than those specifically stated in the following subsections of this Section 1.34.

(d)     Service that would have been disregarded as of December 31, 1984 under the Plan as in effect immediately before it was amended and restated in its entirety effective January 1, 1984, shall be disregarded at all times.

(e)     If an employee of the Employer was reemployed before January 1, 1979, his period of Service before his previous termination of employment shall be reinstated in any event.

(f)     Non-successive periods of Service and less than whole calendar year periods of Service shall be aggregated, on the basis that 12 months of Service equal one whole year of Service.  Solely for purposes of determining the amount of a Participant's Accrued Benefit, any fraction of a month shall be credited as a full month of Service.

(g)     Sections 7.04, 7.05, and 7.06 shall be followed in arriving at an Employee's period of employment with the Employer where a terminated Participant is rehired or there is a transfer of employment.

(h)     Solely for purposes of determining the portion of a Transferred Employee's Accrued Benefit that is vested, such Transferred Employee's Service shall be determined as if his service for the Acquired Companies prior to January 1, 1991 were service for the Employer.  For

15

purposes of this subsection (h), the term "Acquired Companies" shall mean The Roach Organization, Inc. ("TRO"), a portion of the assets of which was acquired as of January 1, 1991 by the Employer, and TRO's predecessor corporation, the Control Data Corporation. For purposes of this subsection (h), a "Transferred Employee" is any individual who, immediately prior to such acquisition by the Employer of a portion of the assets of TRO, was an employee of TRO, and who, by reason of such acquisition, became an Employee as of January 1, 1991. This subsection (h) shall not apply for any purpose other than vesting, and thus shall not apply, for example, for purposes of the determination of an Employee's eligibility to participate under Section 2.01, the determination of the amount of a Participant's Accrued Benefit, the determination of a Participant's eligibility for benefits under Section 5.03, or the determination of a Participant's eligibility for benefits under the second paragraph of Section 7.02.

(i)     Notwithstanding anything herein to the contrary, for purposes of determining the amount of a Participant's Accrued Benefit, Service shall only include Service as an Employee.

(j)     Solely for the purposes of determining the portion of a Transferred Employee's Accrued Benefit that is vested, such Transferred Employee's Service shall be as if his service for the Acquired Company for the period prior to March 16, 2000 were service for the Employer. For purposes of this subsection (j), the term "Acquired Company" shall mean Financial Systemware, Inc., the assets of which were acquired by The Nasdaq Stock Market, Inc. For purposes of this subsection (j), a "Transferred Employee" is any individual who, immediately prior to such acquisition of Financial Systemware, Inc., was an employee of Financial Systemware, Inc., and who, by reason of such acquisition, became an Employee as of March 16, 2000. This subsection (j) shall not apply for any purpose other than vesting, and thus, shall not apply, for example, for purposes of the determination of the Employee's eligibility to participate under Section 2.01, the determination of the amount of a Participant's Accrued Benefit, the determination of a Participant's eligibility for benefits under Section 5.03, or the determination of a Participant's eligibility for benefits under the second paragraph of Section 7.02.

(k)     Solely for the purposes of determining the portion of a Transferred Employee's Accrued Benefit that is vested, such Transferred Employee's Service shall be as if his service for the Acquired Company for the period prior to September 7, 2004, were service for the Employer. For purposes of this subsection (k), the term "Acquired Company" shall mean BRUT, LLC, which was acquired by The Nasdaq Stock Market, Inc. For purposes of this subsection (k), a "Transferred Employee" is any individual who, immediately prior to such acquisition of BRUT, LLC, was an employee of BRUT, LLC, and who, by reason of such acquisition, became an Employee as of September 7, 2004. This subsection (k) shall not apply for any purpose other than vesting, and thus, shall not apply, for example, for purposes of the determination of the Employee's eligibility to participate under Section 2.01, the determination of the amount of a Participant's Accrued Benefit, the determination of a Participant's eligibility for benefits under Section 5.03, or the determination of a Participant's eligibility for benefits under the second paragraph of Section 7.02.

(l)     Notwithstanding anything herein to the contrary, for the purposes of determining an Active Exchange Participant's (as defined in Appendix A) eligibility for benefits under Section 5.03, years of Service prior to January 1, 2001 shall include only years of "Accredited

Service" (as defined in the Exchange Plan (as defined in Appendix A)), and for the purposes of determining an Active Exchange Participant's (as defined in Appendix A), eligibility for benefits under Section 7.02, years of Service prior to January 1, 2001 shall include only years of "Vesting Service" (as defined in the Exchange Plan (as defined in Appendix A)).

(m)     Solely for the purposes of determining the portion of a Transferred Employee's Accrued Benefit that is vested, such Transferred Employee's Service shall be as if his service for the Acquired Company for the period prior to January 1, 2005 were service for the Employer. For purposes of this subsection (m), the term "Acquired Company" shall mean The Nasdaq Insurance Agency, LLC, which was acquired by The Nasdaq Stock Market, Inc. For purposes of this subsection (m), a "Transferred Employee" is any individual who, immediately prior to such acquisition of The Nasdaq Insurance Agency, LLC, was an employee of The Nasdaq Insurance Agency, LLC, and who, by reason of such acquisition, became an Employee as of January 1, 2005. This subsection (m) shall not apply for any purpose other than vesting, and thus, shall not apply, for example, for purposes of the determination of the Employee's eligibility to participate under Section 2.01, the determination of the amount of a Participant's Accrued Benefit, the determination of a Participant's eligibility for benefits under Section 5.03, or the determination of a Participant's eligibility for benefits under the second paragraph of Section 7.02.

(n)     Solely for the purposes of determining the portion of a Transferred Employee's Accrued Benefit that is vested, such Transferred Employee's Service shall be as if his service for the Acquired Company for the period prior to October 1, 2005 were service for the Employer. For purposes of this subsection (n), the term "Acquired Company" shall mean Carpenter Moore Insurance Services, Inc., which was acquired by The Nasdaq Stock Market, Inc. For purposes of this subsection (n), a "Transferred Employee" is any individual who, immediately prior to such acquisition of Carpenter Moore Insurance Services, Inc., was an employee of Carpenter Moore Insurance Services, Inc., and who, by reason of such acquisition, became an Employee as of October 1, 2005. This subsection (n) shall not apply for any purpose other than vesting, and thus, shall not apply, for example, for purposes of the determination of the Employee's eligibility to participate under Section 2.01, the determination of the amount of a Participant's Accrued Benefit, the determination of a Participant's eligibility for benefits under Section 5.03, or the determination of a Participant's eligibility for benefits under the second paragraph of Section 7.02.

(o)     Solely for purposes of determining (i) whether a Transferred Employee is eligible to participate in the Plan pursuant to Section 2.01 of this Plan, (ii) the portion of a Transferred Employee's Accrued Benefit that is vested, and (iii) such Transferred Employee's eligibility to receive early retirement benefits under Section 5.03 and eligibility for benefits under the second paragraph of Section 7.02 (but not the determination of the amount of such individual's Accrued Benefit under such sections or under the Plan), such Transferred Employee's Service shall be determined as if his service for the Acquired Company prior to rendering an Hour of Service, were service for the Employer. Where a Transferred Employee satisfies the eligibility requirements of Section 2.01 on or before the Anniversary Date of July 1, 2007, such Transferred Employee shall become a Participant under this Plan on the date the Employer acquires the assets of the Acquired Company. For purposes of this subsection (o), the term "Acquired Company" shall mean NYSE Group, Inc., a portion of the assets of which was acquired in 2007

17

by the Employer. For purposes of this subsection (o), a "Transferred Employee" is any individual who, immediately prior to such acquisition by the Employer of the assets of the Acquired Company in July 2007, was an employee of the Acquired Company, and who, by reason of such acquisition, became an Employee. This subsection (o) shall not apply for any purpose other than those purposes specifically stated and described in the first sentence of this subsection, and shall not apply, for example, for purposes of the determination of the amount of a Participant's Accrued Benefit. Except as expressly stated herein, nothing contained in this subsection (o) shall be construed to limit or otherwise preclude the application of other Plan provisions, including, but not limited to, the provisions contained in Article VII of this Plan. In addition, solely for the purposes described in the first sentence of this subsection (o), for an Employee who was an Employee on the date the Employer acquires the assets of the Acquired Company in July 2007, such Employee's Service shall be determined as if his service for the Acquired Company prior to rendering an Hour of Service were service for the Employer. For an Employee who is credited with Service pursuant to the preceding sentence, and otherwise satisfies the eligibility requirements of Section 2.01 on or before the Anniversary Date of July 1, 2007, such Employee shall become a Participant under this Plan on the date the Employer acquires the assets of the Acquired Company.

(p)     Solely for purposes of determining (i) eligibility to participate in the Plan, (ii) eligibility for Earlier Retirement under Section 5.03 of the Plan, and (iii) whether a Participant has a vested right to a benefit under the Plan, but not for purposes of determining an Accrued Benefit, Service shall include all Service that was credited to an Employee under the Plan for periods during which he participated in the Plan as an employee of the Nasdaq Stock Market, Inc. or the American Stock Exchange, LLC (including their predecessors and participating affiliates), prior to the applicable transfers of assets and liabilities described in Appendix E and Appendix F, and subject to the break in service rules set forth in Section 1.34(c), above, with such rules applied as if the period of employment described in the clause above were in fact a period of employment with an Employer.

(q)     Solely for the purposes of determining the portion of a Transferred Employee's Accrued Benefit that is vested, such Transferred Employee's Service shall be as if his service for the Acquiring Company for any period of employment with the Acquiring Company commencing October 20, 2008 were service for the Employer. For purposes of this subsection (q), the term "Acquiring Company" shall mean NYSE Euronext, which acquired the American Stock Exchange on October 1, 2008. For purposes of this subsection (q), a "Transferred Employee" is any individual who, immediately prior to the acquisition of the American Stock Exchange by the Acquiring Company, was an Employee in the Market Regulation/Amex Regulation/Trading Analysis and Enforcement division, and who, by reason of such acquisition, ceased to be an Employee in the Market Regulation/Amex Regulation/Trading Analysis and Enforcement division, and who, on or between October 1, 2008 and January 31, 2009, by reason of such acquisition, thereafter became an employee of the Acquiring Company. This subsection (q) shall not apply for any purpose other than vesting, and thus, shall not apply, for example, for purposes of the determination of the Transferred Employee's eligibility to participate under Section 2.01, the determination of the amount of the Transferred Employee's Accrued Benefit, the determination of the Transferred Employee's eligibility for benefits under Section 5.03, or the

determination of the Transferred Employee's eligibility for benefits under the second paragraph of Section 7.02. This provision shall be effective as of October 1, 2008.

(r)     Solely for purposes of determining (i) whether a Transferred Employee is eligible to participate in the Plan pursuant to Section 2.01 of the Plan, (ii) the portion of a Transferred Employee's Accrued Benefit that is vested, and (iii) such Transferred Employee's eligibility to receive early retirement benefits under Section 5.03 and eligibility for benefits under the second paragraph of Section 7.02 (but not the determination of the amount of such individual's Accrued Benefit under such sections or under the Plan), such Transferred Employee's Service shall be determined as if his service for Nasdaq OMX PHLX ("PHLX") prior to rendering an Hour of Service, were service for the Employer. Where a Transferred Employee satisfies the eligibility requirements of Section 2.01 on or before the Anniversary Date of January 1, 2010, such Transferred Employee shall become a Participant under this Plan on the date the Transferred Employer became an Employee. For purposes of this subsection (r), a "Transferred Employee" is any individual who, immediately prior January 19, 2010, was an employee of PHLX and who, by reason of the expansion of the Nasdaq OMX Regulatory Services Agreement, became an Employee. This subsection (r) shall not apply for any purpose other than those purposes specifically stated and described in the first sentence of this subsection, and shall not apply, for example, for purposes of the determination of the amount of a Participant's Accrued Benefit. Except as expressly stated herein, nothing contained in this subsection (r) shall be constructed to limit or otherwise preclude the application of other Plan provisions, including, but not limited to, the provisions contained in Article VII of this Plan.

(s)     Solely for purposes of determining (i) whether a Transferred Employee is eligible to participate in the Plan pursuant to Section 2.01 of the Plan, (ii) the portion of a Transferred Employee's Accrued Benefit that is vested, and (iii) such Transferred Employee's eligibility to receive early retirement benefits under Section 5.03 and eligibility for benefits under the second paragraph of Section 7.02 (but not the determination of the amount of such individual's Accrued Benefit under such sections or under the Plan), such Transferred Employee's Service shall be determined as if his service for the NYSE Group, Inc. ("NYSE") prior to rendering an Hour of Service, were service for the Employer. Where a Transferred Employee satisfies the eligibility requirements of Section 2.01 on or before the Anniversary Date of January 1, 2010, such Transferred Employee shall become a Participant under this Plan on the date the Transferred Employer became an Employee. For purposes of this subsection (s), a "Transferred Employee" is any individual who, immediately prior to June 14, 2010, was an employee of NYSE and who, by reason of the Employee Matters Agreement between the Employer and NYSE Group, Inc. and NYSE Regulation, Inc. became an Employee. This subsection (s) shall not apply for any purpose other than those purposes specifically stated and described in the first sentence of this subsection, and shall not apply, for example, for purposes of the determination of the amount of a Participant's Accrued Benefit. Except as expressly stated herein, nothing contained in this subsection (s) shall be constructed to limit or otherwise preclude the application of other Plan provisions, including, but not limited to, the provisions contained in Article VII of this Plan.

(t)     Solely for purposes of determining (i) the portion of a Transferred Employee's Accrued Benefit that is vested, and (ii) the portion of the Participant's eligibility to receive early retirement benefits under Section 5.02 and eligibility for benefits under Section 7.02 (but not the determination of the amount of such individual's Accrued Benefit under such sections or under

19

the Plan), such Transferred Employee's Service shall be determined as if his service for the Chicago Board Options Exchange, Inc. and C2 Options Exchange, Inc. (collectively "CBOE") prior to rendering an Hour of Service, were service for the Employer. For purposes of this subsection (t), a "Transferred Employee" is any individual who, immediately prior to the "Services Commencement Date," as defined in the Employee Matters Agreement between the Employer and CBOE ("EMA"), was an employee of CBOE and who, by reason of the EMA became an Employee. This subsection (t) shall not apply for any purpose other than for these purposes specifically stated and described in the first sentence of this subsection, and thus, shall not apply, for example, for purposes of the determination of an Employee's eligibility to participate under Section 2.01, or the determination of the amount of a Participant's Accrued Benefit. Except as expressly stated herein, nothing contained in this subsection (t) shall be construed to limit or otherwise preclude the application of other Plan provisions, including, but not limited to, the provisions contained in Article VII of this Plan.

Section 1.35 - Severance Date -

Shall mean the earlier of

(a)     The date on which an employee terminates employment with all Employers by reason of a discharge, quit, retirement, or death, or

(b)     The date twelve (12) months after the date on which an employee first becomes absent from the service of all Employers (with or without pay) for any other reason, including, without limitation, disability.

Notwithstanding the preceding, for purposes of determining a Participant's Accrued Benefit, the term "Employing Companies" shall be substituted for the term "Employers" wherever it appears in this Section 1.35.

Section 1.36 - Spouse -

Shall mean the person to whom the Participant is legally married in the jurisdiction in which the marriage takes place.

Section 1.37 - Termination of Employment -

Shall mean termination of employment with respect to the Employer.

Section 1.38 - Trust Agreement -

Shall mean an agreement pursuant to which the Trust Fund is held. In the event of any conflict or inconsistency between the Plan and the Trust Agreement, the Plan shall control.

Section 1.39 - Trustee -

Shall mean the person, persons, or entity who is or are the Trustee or Trustees under the Trust Agreement under which the contributions and assets are held to provide the benefits called for by the terms of this Plan.

22762252v.2

Section 1.40 - Trust Fund -

Shall mean the contributions at any time made by the Employer to the Trustee for purposes of this Plan, the assets resulting from the investment and reinvestment thereof, the accretions thereto and any and all income of any kind arising therefrom and less the losses thereon and less any payments made therefrom.

Section 1.41 - Year of Eligibility Service -

Shall mean each twelve (12) consecutive month period ending on the employee's first anniversary of employment with the Employer, or on any subsequent December 31, and during which the employee completes 1,000 or more Hours of Service (within the meaning of Section 2.01). A Year of Eligibility Service is deemed completed as of the last day of the twelve (12) month period which comprises such year.

Section 1.42 - Masculine, Feminine, Singular, and Plural -

The masculine shall include the feminine, and the singular shall include the plural and the plural the singular, wherever the context shall plainly so require.

Section 1.43 - 1991 Restatement -

Shall mean the amendment and restatement of the Plan executed in 1991.

Section 1.44 - 1993 Restatement -

Shall mean the amendment and restatement of the Plan executed in 1993.

Section 1.45 - 2000 Restatement -

Shall mean the amendment and restatement of the Plan executed in 2000.

Section 1.46 - 2002 Restatement -

Shall mean the amendment and restatement of the Plan executed in 2002.

Section 1.47 - 2011 Restatement -

Shall mean the amendment and restatement of the Plan executed in 2011.

ARTICLE II

Eligibility for Plan Participation

Section 2.01 - Eligibility before 2011 -

Subject to Section 2.02, below, for years prior to 2011, each Employee shall be eligible to become a Participant under this Plan on the first Anniversary Date coincident with or next following (a) his attainment of age twenty-one (21) and (b) his completion of one (1) Year of Eligibility Service.

Solely for purposes of Section 1.41 and this Section 2.01, an "Hour of Service" shall constitute the following:

(a)     Each hour for which an employee is paid, or entitled to payment, for the performance of duties for the Employer during the applicable computation period.

(b)     Each hour for which an employee is paid, or entitled to payment, by the Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, or leave of absence.  Notwithstanding the preceding sentence,

(i)     No more than 501 Hours of Service are required to be credited under this subsection (b) to an employee on account of any single continuous period during which the employee performs no duties (whether or not such period occurs in a single computation period);

(ii)     An hour for which an employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not required to be credited to the employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable workmen's compensation or unemployment compensation, or disability insurance laws; and

(iii)     Hours of Service are not required to be credited for a payment which solely reimburses an employee for medical or medically related expenses incurred by the employee.

(iv)     No credit shall be given for compensation, beyond that for accrued vacation, holiday, or sick leave, paid to an employee upon his termination, regardless of the method of calculation of such termination compensation.

(c)     Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer.

The determination of Hours of Service during periods of absence shall be based on the lesser of a thirty-five (35) hour week (or pro rata portion thereof) or the employee's customarily scheduled workweek (or pro rata portion thereof) for the Employer.

22

In addition, an employee of the Employer shall receive credit for paid or non-paid periods of absence during any customary period of work based on the lesser of a thirty-five (35) hour week (or pro rata portion thereof) or his customarily scheduled workweek (or pro rata portion thereof) during which the employment of an employee is interrupted for the reason set forth in Section 1.34(b). An employee shall not receive credit for the same period of service more than once under the provisions of this Section 2.01.

The determination of Hours of Service for reasons other than the performance of duties and the crediting of Hours of Service to computation periods shall be consistent with the provisions of 29 C.F.R. § 2530.200b-2 or any successor regulations of similar intent.

Notwithstanding anything to the contrary in this Section 2.01, an employee shall be credited with Hours of Service for purposes of Section 1.40 and this Section 2.01 to the extent required by applicable law.

Section 2.02 - Participation Restrictions After 2010 -

Notwithstanding Section 2.01, effective January 1, 2011, only Employees who were Employees of an Employing Company on December 31, 2010 shall be eligible to participate in the Plan, and effective January 1, 2012, DC Choice Participants shall only be eligible to participate in the Plan to the extent permitted under Section 2.06. Individuals who were Employees of an Employing Company on December 31, 2010 and who are not yet Participants in the Plan shall nonetheless be eligible to participate in the Plan when they meet the eligibility requirements set forth in Section 2.01 above if such eligibility requirements are met prior to January 1, 2012, but such individuals shall not be eligible to participate if they have a Severance Date prior to becoming eligible to participate in the Plan.

(a)     For purposes of this paragraph, any individual who was an Employee of an Employing Company on or before December 31, 2010, and who had a Severance Date and is reemployed by an Employing Company after December 31, 2010, will not be eligible to become a Participant in the Plan after December 31, 2010.

(b)     Any Service or Compensation earned after December 31, 2010 by an individual described in (a) above (or after 2011 for DC Choice Participants) will be credited only to the extent and for the purposes provided in Section 2.06 of the Plan.

(c)     Notwithstanding the above, any individual who was an Employee of an Employing Company on or before December 31, 2010 and who was on short-term disability or an Employer-approved leave of absence on December 31, 2010 shall be treated as an Employee on December 31, 2010 and as continuing as an Employee after that date for purposes of this Section 2.02, until a subsequent termination of employment, provided that he returns to service with the Employing Company immediately after his period of disability or leave.

Section 2.03 - Notification and Method of Becoming a Participant -

Each Participant shall truthfully and fully, without any mental and other reservations whatsoever, answer any and all questions asked of him by the Committee and the Employer. The Committee and the Employer shall not be responsible to the Participant or to his spouse,

23

Beneficiaries, estate, or any other entity or person who makes a claim with respect to the Participant's benefits under the Plan, or to any or all of them, for any incorrect information supplied by the Participant. In this connection, each Participant shall provide the Employer and the Committee with proof of age at the time he is to begin to receive benefits under the Plan. Any benefit due the Participant will reflect the proper benefits for his real age and not his stated age should they differ.

Section 2.04 - Participation Mandatory -

For years prior to 2011, each Employee eligible to become a Participant shall, as a condition of employment, be required to become and/or to continue to be a Participant in this Plan.

Section 2.05 - Leased Employees -

Notwithstanding anything herein to the contrary, no person who is treated as an employee of an Employing Company solely by reason of section 414(n) of the Code, relating to "leased employees," shall be eligible to participate in the Plan.

Section 2.06 - Returning Employees and DC Choice Participants -

(a)     Returning Employee Before 2011. For years prior to 2011, in the event that an Employee who satisfies the eligibility requirements set forth in subsections (a) or (b) of Section 2.01 ceases to be an Employee, and then again becomes an Employee after the Anniversary Date on which he became or would have become eligible to participate under Section 2.01, he shall become a Participant as of the date of his return, but only if such return occurs prior to January 1, 2011 and only to the extent he does not cease to participate by becoming a DC Choice Participant.

(b)     Returning Employees After 2010 and DC Choice Participants

(i)     For years after 2010, any employee who was an Employee of the Employing Company on or before December 31, 2010, and who (A) had a Severance Date before December 31, 2010 and was not an Employee of the Employing Company on December 31, 2010, or (B) had a Severance Date on or after December 31, 2010, will not be eligible to become a Participant in the Plan (or resume participation in the Plan) and earn additional benefits upon reemployment after December 31, 2010, except to the extent provided in (ii), below.

(ii)     If the individual described in (i) above was a Participant in the Plan and continues to have an Accrued Benefit under the Plan for periods prior to January 1, 2011, such Participant's Service will continue to be counted solely for determining (A) the portion of such Employee's pre-2011 Accrued Benefit that is vested, and (B) such Employee's eligibility to receive early retirement benefits under Section 5.03 and eligibility for benefits under the second paragraph of Section 7.02 (but not the determination of the amount of such individual's Accrued Benefit under such sections or under the Plan) with respect to his pre-2011 Accrued Benefit. Notwithstanding the above, Service shall be projected to Normal Retirement Date when determining the denominator

24

under the first sentence of Section 1.01(a)(iii), and nothing in this Section 2.06 shall preclude a forfeiture of a Participant's Accrued Benefit under the fourth paragraph of Section 7.02.

(iii)     A DC Choice Participant shall cease to accrue additional benefits after December 31, 2011, except to the extent provided in (iv) below.

(iv)     A DC Choice Participant's Service will continue to be counted solely for determining (A) the portion of such Employee's pre-2012 Accrued Benefit that is vested, and (B) such Employee's eligibility to receive early retirement benefits under Section 5.03 and eligibility for benefits under the second paragraph of Section 7.02 (but not the determination of the amount of such individual's Accrued Benefit under such sections or under the Plan) with respect to his pre-2012 Accrued Benefit. Notwithstanding the above, Service shall be projected to Normal Retirement Date when determining the denominator under the first sentence of Section 1.01(a)(iii), and nothing in this Section 2.06 shall preclude a forfeiture of a Participant's Accrued Benefit under the fourth paragraph of Section 7.02.

(v)     Any compensation or pay earned after December 31, 2010 for an individual described in subparagraph (i) (or after 2011 for DC Choice Participants) will not be taken into account for purposes of determining Compensation, Final Average Compensation, Former Final Average Compensation, or any increase in the Participant's Accrued Benefit based on compensation or pay under the Plan (including an Appendix).

Section 2.07 - Union Employees-

Notwithstanding anything herein to the contrary, no employee of an Employing Company whose terms and conditions of employment are subject to a collective bargaining agreement between one or more Employing Companies and a collective bargaining agent shall be eligible to participate in the Plan except to the extent that such collective bargaining agreement provides for participation in the Plan.

## ARTICLE III

### Normal Retirement Income

Section 3.01 - Amount of -

Subject to the provisions of this Article III, the Normal Retirement Income to be provided under this Plan for a Participant shall be his Accrued Benefit as determined under Section 1.01.

Section 3.02 - Type of -

The Normal Retirement Income under this Plan shall be of the type which is payable monthly beginning on the Participant's Normal Retirement Date and ending with the final payment on the first day of the month in which the Participant's death occurs.  For provisions regarding the actual method of payment, see Articles V through VIII and XIII.  All references in such Articles to the Normal Retirement Income or to the Actuarial Equivalent of the Normal

25

Retirement Income shall be deemed to refer only to the vested portion of the Normal Retirement Income.

Section 3.03 - Maximum Annual Benefit -

    (a)    Limitation on Annual Benefit.

        (i)    Notwithstanding any other provision of this Plan to the contrary, the Annual Benefit paid to or accrued by a Participant for a Limitation Year shall not exceed the lesser of (i) the amount set forth in Code section 415(b)(1)(A) (as adjusted by Treasury Regulation section 1.415(b)-1 or by the Secretary of the Treasury under Code section 415(d)), or (ii) 100% of such Participant's average Section 415 Compensation for his three years as determined in accordance with Treasury Regulation section 1.415(b)-1(a)(5).

        (ii)    No Annual Benefit exceeding the limitations in Code section 415(b) shall be accrued, distributed or otherwise payable in any form of benefit at any time.

        (iii)    Notwithstanding anything in this Section 3.03 to the contrary, if a Participant's total Annual Benefit payable for a Limitation Year does not exceed $10,000, then it shall not be considered to exceed the limitations on benefits described in subparagraph (i) of this Section 3.03 if the requirements of Treasury Regulation section 1.415(b)-1(f) are satisfied.

        (iv)    Notwithstanding anything in this Section 3.03 to the contrary, no Post-Termination Adjustment shall be taken into account for any Participant for a Limitation Year after the Limitation Year in which the Participant has his last Termination of Employment.

    (b)    Determination of Annual Benefit. The Term "Annual Benefit" shall have the meaning set forth in Treasury Regulation section 1.415(b)-1(b)(1)(i) and shall be determined in accordance with Treasury Regulation section 1.415(b)-1(b) and (c). For this purpose, the interest rates and mortality tables used for purposes of the calculations under Code section 415 shall be those specified by Code section 415 and applicable regulations and guidance, and for 2008, as permitted under Pub. L. 110-458 (the "Worker, Retiree and Employee Recovery Act of 2008"), the mortality table for such purposes shall be the table used for purposes of Code section 417(e).

    (c)    Aggregation of Plans.

        (i)    For purposes of applying the limitations of Code section 415, all defined benefit plans (without regard to whether a plan has been terminated) ever maintained by the Employer (or a "predecessor employer") under which the Participant has accrued a benefit are treated as one defined benefit plan. The "Employer" means the Employer that adopts this Plan and any other entity which is required to be aggregated with the Employer under section 414(b), 414(c) or 414(m) of the Code. For purposes of this Section 3.03:

26

(A)     A former employer is a "predecessor employer" with respect to a Participant if the Employer maintains a plan under which the Participant had accrued a benefit while performing services for the former employer, but only if that benefit is provided under the plan maintained by the Employer. For this purpose, the formerly affiliated plan rules in Treasury Regulation section 1.415(f)-1(b)(2) apply as if the Employer and predecessor employer constituted a single employer under the rules described in Treasury Regulation section 1.415(a)-1(f)(1) and (2) immediately prior to the cessation of affiliation (and as if they constituted two unrelated employers under the rules described in Treasury Regulation section 1.415(a)-1(f)(1) and (2) immediately after the cessation of affiliation) and cessation of affiliation was the event that gives rise to the predecessor employer relationship, such as a transfer of benefits or plan sponsorship.

(B)     With respect to an Employer, a former entity that antedates the Employer is a "predecessor employer" with respect to a Participant if, under the facts and circumstances, the Employer constitutes a continuation of all or a portion of the trade or business of the former entity.

(ii)     Midyear Aggregation.  Two or more defined benefit plans that are not required to be aggregated pursuant to Code section 415(f) and the Treasury Regulations thereunder as of the first day of a Limitation Year do not fail to satisfy the requirements of Code section 415 for the Limitation Year merely because they are aggregated later in that Limitation Year, provided that no plan amendments increasing benefits with respect to the Participant under either plan are made after the occurrence of the event causing the plan to be aggregated.

(d)     Definitions.  For purposed of Section 3.03, the following definitions shall apply.

(i)     "Limitation Year."  Limitation Year shall mean a calendar year.

(ii)     "Post-Termination Adjustment."  The term Post-Termination Adjustment shall mean any adjustment by the Secretary of the Treasury as described in Section 3.03(a)(i).

(iii)     "Section 415 Compensation."

(A)     Generally.  Section 415 Compensation shall mean compensation as defined in Treasury Regulation section 1.415(c)-2 (or any successor provision) received by a Participant for a Limitation Year.

(B)     Timing of Compensation Payments.  Generally, in order to be counted as Section 415 Compensation for a Limitation Year, an amount must be actually paid or made available to a Participant (or, if earlier, includible in the Participant's gross income) within the Limitation Year in accordance with Treasury Regulation section 1.415(c)-2(e)(1). Notwithstanding the prior sentence, Section 415 Compensation shall include amounts earned, but not paid,

27

during the Limitation Year solely because of the timing of pay periods and pay dates, if (i) the amounts are paid during the first few weeks of the next Limitation Year, (ii) the amounts are included on a uniform and consistent basis with respect to all similarly situated Participants, and (iii) no Section 415 Compensation is included in more than one Limitation Year.

(C)     Treatment of Post-Severance Compensation. Section 415 Compensation shall include only the following types of remuneration paid after a Participant's Severance from Employment with the Employer:

(1)     Regular Post-Severance Pay. Section 415 Compensation shall include Regular Post-Severance Pay which is paid after a Participant's Severance from Employment with the Employer, provided such Regular Post-Severance Pay is paid by the later of $2 \frac{1}{2}$ months after Severance from Employment with the Employer or the end of the Limitation Year that includes the date of such Severance from Employment. For purposes of this subparagraph (A), "Regular Post-Severance Pay" means compensation for services during the Participant's regular working hours, or compensation for services outside the Participant's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments, which would have been paid to the Participant prior to a Severance from Employment if the Participant had continued in employment with the Employer.

(2)     Leave Cashouts and Deferred Compensation. Section 415 Compensation shall include Leave Cashouts and Deferred Compensation if such Leave Cashouts and Deferred Compensation (i) are paid by the later of $2 \frac{1}{2}$ months after a Participant's Severance from Employment with the Employer, or the end of the Limitation Year that includes the date of such Severance from Employment, and (ii) would have been included in Section 415 Compensation if they were paid prior to such Severance from Employment. For purposes of this subparagraph (B), "Leave Cashouts" means an amount that is payment for unused accrued bona fide sick, vacation, or other leave, but only if the employee would have been able to use the leave if employment had continued, and "Deferred Compensation" means an amount that is received by the Participant pursuant to a nonqualified unfunded deferred compensation plan, but only if the payment would have been paid to the Participant at the same time if the Participant had continued employment with the Employer and only to the extent that the payment is includible in the Participant's gross income.

(D)     Salary Continuation Payments for Military Service Participants. Section 415 Compensation shall include payments by the Employer to a Participant who does not currently perform services for the Employer by reason of qualified military service (as defined in Code section 414(u)(1)), to the extent those payments do not exceed the amounts the Participant would have received if

28

the Participant had continued to perform services for the Employer rather than entering military service.

(iv) "Severance from Employment." Severance from Employment shall have the meaning set forth in Treasury Regulation section 1.415(a)-1(f)(5).

Section 3.04 - Benefit Restrictions -

Notwithstanding any other provision in the Plan to the contrary, in accordance with Section 401(a)(29) of the Internal Revenue Code, benefits, benefit accruals, and distributions shall be limited to the extent required by Section 436 of the Code as set forth in Appendix I.

## ARTICLE IV

### Cost of Plan

Section 4.01 - Cost of Plan -

Subject to the provisions of Article IX, each Employing Company shall periodically contribute to the Trustee to be held by it in the Trust Fund the amount necessary to currently fund, under an accepted actuarial method, the benefits called for under this Plan. In this connection, the Committee, as often as necessary, shall have actuarial computations made in order to determine the amount which the Employer shall use as a basis for its contributions to the Trustee at a particular time in order to fund the benefits called for under this Plan. Such actuarial computations shall be made in a manner which reduces the Employing Company's contributions for any forfeitures arising under the Plan from severance of employment, death, or for any other reason, so that in no event shall any forfeitures increase the benefits any Participants would otherwise be entitled to under the terms of the Plan. No Participant shall be required to make, or permitted to make, any contributions to this Plan.

Section 4.02 - Return of Contributions -

(a) If a contribution is made to the Plan by a mistake of fact, such contribution, net of any losses attributable thereto but not including any earnings thereon, must be returned to the Employing Company within one (1) year after the making of such contribution.

(b) If the deduction of a contribution made by the Employer is disallowed in part or in whole under Code section 404 by the Internal Revenue Service, the amount of the contribution disallowed, net of any losses attributable thereto but not including any earnings thereon, must be returned to the Employing Company within one (1) year after the disallowance of the deduction. This subsection (b) has no application to an Employer that has, at all times, been exempt from taxation under subtitle A of the Code pursuant to Code section 501, within the meaning of Code section 4972(d)(1)(B).

## ARTICLE V

### Retirement

29

Section 5.01 - Normal Retirement -

Subject to the provisions of Sections 5.02 and 12.08, as each Participant reaches Normal Retirement Age, the Committee shall determine the amount of his Normal Retirement Income under the terms of this Plan and shall give the necessary directions so that any Participant who retires at that time shall begin to receive the benefits to which he is entitled. The time and form of payment of the Participant's benefits under this Section 5.01 and under Sections 5.02 through 5.04 shall be determined in accordance with the provisions of Sections 5.06 through 5.11 and Article VIII.

Section 5.02 - Deferred Retirement -

In the event a Participant remains in employment after his Normal Retirement Date, the payment of his Normal Retirement Income shall not commence or be made until the Participant actually retires from active employment.

Section 5.03 - Earlier Retirement -

A Participant who has an Early Retirement shall, at his option, be entitled to receive either: (a) a monthly retirement benefit beginning at his Normal Retirement Date equal to his Accrued Benefit as of his Earlier Retirement Date, or (b) a monthly retirement benefit beginning with the first day of any month coincident with or next following his Earlier Retirement Date which is equal to (i) that portion of his Accrued Benefit as of his Earlier Retirement Date determined under Section 1.01 (without regard to Section 1.01(a)(iii)) reduced four-twelfths of one percent (4/12 of 1%) for each month between the date benefit payments commence and his Normal Retirement Date, less (ii) the amount determined as of his Earlier Retirement Date by multiplying the amount described in Section 1.01(a)(i) by the amount described in Section 1.01(a)(iii), reduced by five-twelfths of one percent (5/12 of 1%) for each month between the date benefit payments commence and his Normal Retirement Date.

Effective with respect to any Early Retirement on or after January 1, 1993, Section 5.03(b) shall be deemed to be amended to provide as follows: "a monthly retirement benefit beginning with the first day of any month coincident with or next following his Earlier Retirement Date which is equal to his Accrued Benefit as of his Earlier Retirement Date determined under Section 1.01 reduced three-twelfths of one percent (3/12 of 1%) for each month between the date benefit payments commence and the first day of the first calendar month coincident with or next following the calendar month in which the Participant attains age 62." The preceding sentence shall not apply to the portion of any Accrued Benefit determined under Section 1.01(e)(ii), except to the extent required by Code section 411(d)(6). In addition, in the case of such portion, Section 5.03(b) shall be deemed to be amended to provide as follows: "a monthly retirement benefit beginning with the first day of any month coincident with or next following his Earlier Retirement Date which is equal to: (i) that portion of his Accrued Benefit as of his Earlier Retirement Date determined under Section 1.01(e)(ii) (without regard to Section 1.01(a)(iii)) reduced four-twelfths of one percent (4/12 of 1%) for each month between the date benefit payments commence and his Normal Retirement Date, less (ii) the amount determined as of his Earlier Retirement Date under Section 1.01(e)(ii) (without regard to Section 1.01(a)(ii) and without regard to the following in Section 1.01(a): "the excess of the amount described in

30

Section 1.01(a)(ii) over") reduced by five-twelfths of one percent (5/12 of 1%) for each month between the date benefit payments commence and his Normal Retirement Date." If a Participant's Normal Retirement Income equals his Grandfathered 1988 Accrued Benefit, then for purposes of Section 5.03(b), Section 1.01 shall apply in the manner set forth in Section 1.19.

Notwithstanding the foregoing, effective with respect to any Early Retirement of a Participant who was hired by an Employing Company on or after January 1, 2006, Section 5.03(b) shall be deemed to be amended to provide as follows: "a monthly retirement benefit beginning with the first day of any month coincident with or next following his Earlier Retirement Date which is equal to his Accrued Benefit as of his Earlier Retirement Date determined under Section 1.01 reduced three-twelfths of one percent (3/12 of 1%) for each month between the date benefit payments commence and the Participant's Normal Retirement Date." The foregoing sentence shall not apply to any Participant who is employed by the Nasdaq Stock Market, LLC (or a subsidiary thereof) or who is treated as an employee of an Employing Company prior to January 1, 2006 for the specific purpose of this Section 5.03 under Section 1.34 of the Plan or under an Appendix to this Plan.

The election of the benefits under this Section 5.03 shall preclude the election of any benefits under Section 5.04.

For purposes of this Section 5.03, a Participant shall be considered to have an Early Retirement if such Participant (a) retires on or after attaining age 55 but prior to his Normal Retirement Date, and (b) has completed ten (10) or more years of Service as of the date of such retirement. For purposes of this Section 5.03, a Participant's Earlier Retirement Date shall be the date that a Participant who has an Earlier Retirement retires.

Section 5.04 - Total and Permanent Disability Retirement -

A Disabled Participant shall be credited with Service as an Employee, in addition to Service otherwise credited under this Plan, equal to his Disability Period. For purposes of determining a Disabled Participant's Accrued Benefit, such Disabled Participant shall be deemed to receive Compensation during his Disability Period at the same rate that such Compensation was received at the time his disability was incurred.

For purposes of this Section 5.04, the term "Disabled Participant" shall mean a Participant who ceases to be an Employee because such Participant has a mental or physical condition that would be treated as a disability under the long-term disability program maintained by the Participant's Employing Company, determined without regard to whether a particular Participant is in fact covered by such program. Notwithstanding the foregoing, if the Participant's Employing Company does not maintain a long-term disability program, the term "Disabled Participant" shall mean a Participant who ceases to be an Employee because such Participant has a mental or physical condition that would be treated as a disability under a long-term disability program maintained by an Employing Company with which the Participant's Employing Company is required to be aggregated under sections 414(b), (c), (m), or (o) of the Code.

31

For purposes of this Section 5.04, with respect to a Participant, the term "Disability Period" shall mean the period that commences with the date as of which the Participant becomes a Disabled Participant and ceases with the earliest of the following dates: (a) the date as of which the Participant would cease to receive disability benefits under the long-term disability program described in the preceding paragraph, even if such benefits are not actually ceased; (b) the date as of which the Participant is considered by the Committee to have refused to furnish proof that he continues to have a disability within the meaning of the long-term disability program described in the preceding paragraph; and (c) the date of death of the Participant.

If a Participant elects benefits under this Section 5.04, payment of any of such Participant's benefits shall not commence prior to the expiration of the Disability Period, which expiration shall be considered his Termination of Employment under this Plan (unless he returns to active employment with the Employer upon such expiration). If such Termination of Employment occurs on or after the Participant's Normal Retirement Age, such Participant shall be treated as retiring under Section 5.01 or 5.02 whichever would be applicable. If such Termination of Employment occurs prior to the Participant's Normal Retirement Age, such Participant's benefits shall be determined under Section 7.02, except as otherwise provided in Section 5.05. The election of benefits under this Section 5.04 shall preclude the election of any benefits under Section 5.03.

Section 5.05 - Vesting -

Each Participant retiring under Section 5.01, 5.02 or 5.03 and each Participant whose Disability Period ceases solely by reason of Section 5.04(a) (other than by reason of ceasing to have a disability within the meaning of the long-term disability program described in Section 5.04) shall have a one hundred percent (100%) vested interest in the benefits to which he is entitled under the applicable Section of this Plan (disregarding the last sentence of Section 3.02).

Section 5.06 - Form of Benefit -

The normal form of benefit with respect to a Participant shall be such Participant's Normal Retirement Income. However, pursuant to Article VIII, unless a Participant makes a Qualified Election within the one hundred eighty (180) day period ending on the Annuity Starting Date, distribution of his benefits shall be made in the form of a Qualified Joint and Survivor Annuity.

Pursuant to Article VIII, a Participant may make a Qualified Election, within the one hundred eighty (180) day period ending on the Annuity Starting Date, to have distribution of his benefits made in one of the following forms in lieu of a Qualified Joint and Survivor Annuity:

(a)     A single lump sum payment;

(b)     An annuity payable for the life of the Participant;

(c)     An annuity payable for the life of the Participant with a guaranteed minimum number of payments;

32

(d)     A joint and survivor annuity benefit with a continuation of 100%, 75% or 50% to the surviving annuitant;

(e)     An annuity providing for a fixed number of payments; or

(f)     50% in a single lump sum payment and the remaining 50% in one of the annuity forms enumerated in subsections (b) through (e). This subsection (f) shall not apply to any Participant who is employed by The Nasdaq Stock Market, LLC (or a subsidiary thereof).

With respect to a Participant, any form of payment listed in subsections (a) through (f) shall be adjusted to the Actuarial Equivalent of the Participant's monthly retirement benefit (determined without regard to this Section 5.06 (other than the first sentence) or Article VIII).

Section 5.07 - Mandatory Lump Sum Payments -

Notwithstanding anything to the contrary contained in this Plan, if a Participant terminates employment with the Employer, and the lump sum payment that is the Actuarial Equivalent of the Participant's monthly retirement benefit (determined without regard to Section 5.06 (other than the first sentence) or Article VIII) does not exceed $5,000 (determined under the rules of Code sections 411(a)(11) and 417), distribution of the Participant's entire interest in the Plan shall be made in a single lump sum payment to the Participant or, if the Participant has died, to the Participant's Beneficiaries. Notwithstanding the above, pursuant to Section 15.06, any mandatory distribution under this Section in excess of $1,000 shall be made to an individual retirement plan selected by the Committee. Such lump sum payment shall be made within an administratively reasonable period after the Participant's Termination of Employment. If the Actuarial Equivalent of a Participant's monthly retirement benefit (determined without regard to Section 5.06 (other than the first sentence) or Article VIII) is zero, such Participant shall be deemed to have received a distribution of such Actuarial Equivalent in a lump sum payment.

Section 5.08 - Commencement of Benefits -

All benefit payments under this Plan to a Participant shall begin not later than the first day of the month following the later of a Participant's (i) Normal Retirement Date or (ii) actual retirement date unless the dollar amount of the payment cannot be ascertained by such date. If the dollar amount of the payment cannot be ascertained as of the above commencement date, the amount of such payment as of the date of actual commencement shall be the Actuarial Equivalent of the amount of the payment that would have been made but for such delay. Subject to Section 5.03, unless a terminated Participant elects an earlier commencement of benefit payments in accordance with Code section 411(a)(11), benefit payments under this Plan to such Participant shall begin no earlier than the later of the Participant's Normal Retirement Date or the first day of the month following the Participant's actual retirement date. Notwithstanding anything in this Plan to the contrary, the Annuity Starting Date of any distribution under this Plan shall be the date that payments begin, and no payments shall begin before the earlier of (a) the Normal Retirement Date of a Participant who has had a Termination of Employment, or (b) the date that is a reasonable period after a Participant who has had a Termination of Employment properly elects to receive benefit payments.

33

Section 5.09 - Minimum Distributions -

(a)     A Participant's entire interest under this Plan must be distributed beginning not later than the Participant's "required beginning date" as that term is defined in Code section 401(a)(9)(C).

(b)     The benefits of any Participant must conform to the incidental death benefit requirements of Code section 401(a)(9).

(c)     The provisions of this Section 5.09 shall be applied in accordance with regulations issued under Code section 401(a)(9) and shall override any inconsistent distribution options or elections under this Plan.

(d)     With respect to distributions under the Plan made in calendar years beginning on or after January 1, 2002, the Plan shall apply the minimum distribution requirements of Code section 401(a)(9) in accordance with the regulations under Code section 401(a)(9) that were proposed in January 2001, notwithstanding any provision of the Plan to the contrary. With respect to distributions under the Plan made in calendar years beginning on or after January 1, 2003, the Plan shall apply the minimum distribution requirements of Code section 401(a)(9) in accordance with the final and temporary regulations under Code section 401(a)(9) that were issued in April 2002 (or any successor regulations), notwithstanding any provision of the Plan to the contrary. Such successor regulations shall include the final regulations issued by the Internal Revenue Service under Treas. Reg. § 1.401(a)(9)-6, and applicable benefit distribution options permitted under this Plan shall conform to such regulations. Moreover, benefits payable after the death of the Participant must either (a) commence no later than one year after the Participant's death or (b) be paid in their entirety within five (5) years of Participant's death; provided that payments to a Participant's Spouse may begin in time and manner permitted under Code section 401(a)(9)(B)(iv) and implementing regulations. This Section 5.09 is only intended to ensure that the benefit options available under the Plan meet the requirements of Code section 401(a)(9) and it shall not create any new benefit distribution options under the Plan. For the purposes of this Section 5.09, the determination of whether any elective provisions of the applicable regulations shall apply shall depend upon whether such provisions are consistent with the benefits payable under the Plan without regard to this Section 5.09.

(e)     The Accrued Benefit of an Employee (other than a 5-percent owner, as defined in Code section 416(i)(1)(B)) who retires in a calendar year after the calendar year in which the Employee attains age $70^1/_2$ is actuarially increased from April 1 after the calendar year in which the employee attains age $70^1/_2$ to the date on which benefits commence after retirement in an amount sufficient to satisfy Code section 401(a)(9), in order to take into account the period during which the Employee is not receiving benefits under the Plan.

(f)     Subject to the provisions of Section 7.04, the actuarial increase required by Code section 401(a)(9)(C)(iii) applies during the period that an Employee is in suspendible service under ERISA section 203(a)(3)(B) and Code section 411(a)(3)(B).

34

Section 5.10 - Rehiring Retired Participants -

In the event that a retired Participant again becomes an Employee, (a) he shall resume participation if he returns prior to January 1, 2011, and (b) notwithstanding the date of his rehire, his benefits shall be suspended in accordance with Section 7.04.

Section 5.11 - Adjustment for Prior Distributions -

If one or more benefit payments are made to a Participant based on a determination of such Participant's Accrued Benefit, and such Participant's Accrued Benefit is subsequently redetermined, the amount payable pursuant to the redetermined Accrued Benefit shall be the amount that would be payable if such redetermined Accrued Benefit were reduced by the Actuarial Equivalent of the prior benefit payment or payments. The intent of this Section 5.11 is to ensure that total benefit payments to, or on behalf of, a Participant do not exceed the Actuarial Equivalent of the benefits to which the Participant is ultimately determined to be entitled; Section 5.11 shall be construed in a manner consistent with this intent. To the extent that this Section 5.11 is inconsistent with the provisions of Section 7.04, Section 7.04 shall control.

Section 5.12 - Preretirement Age 70½ Distribution Option -

(a) Notwithstanding anything herein to the contrary, subject to Section 5.08, in the case of a Participant who has not had a Termination of Employment by December 31 of the calendar year in which he attains Age 70½, benefit payments shall commence not later than April 1 of the following calendar year unless such Participant shall elect to defer the commencement of benefit payments until the first day of the month following such Participant's actual retirement date. A Participant shall be entitled to only one such election.

(b) In the case of a Participant who makes the election described in Section 5.12(a) above, such Participant's benefit shall be actuarially adjusted in accordance with Section 1.02 as and to the extent required by Code section 401(a)(9)(C)(iii). As and to the extent permitted by Code section 411(b)(1)(H)(iii)(II), the actuarial increase described above for a Plan Year shall reduce (but not below zero) the amount of benefits otherwise accrued by the Participant during such Plan Year.

## ARTICLE VI

### Death

Section 6.01 - Death Benefit -

Upon the death of any Participant who is an employee of the Employer, or a formerly employed Participant who is vested and who has not received any portion of his vested interest, the following paragraph of this Section 6.01 shall apply.

Except as otherwise provided in Article VIII, if such a Participant should die prior to the commencement of his retirement benefits, the Beneficiary of such a Participant shall receive benefits (in the form provided under Section 6.02) equal to one hundred percent (100%) of the Actuarial Equivalent of the deceased Participant's monthly retirement benefit determined as of

35

the date of his death. For this purpose, the monthly retirement benefit shall be determined (a) without regard to Section 5.06 (other than the first sentence) or Article VIII, (b) without regard to the requirements under this Plan with respect to vesting, (c) in the case of any Participant who is employed on the date of death, as if the Participant had, on the date of death, had a Termination of Employment for a reason other than death, (d) as if the Participant had elected for such monthly retirement benefit to commence on the date of death, and (e) to the extent that the Participant would have been eligible to elect benefits under either Section 5.03 or 5.04, as if the Participant had made the election that maximized his monthly retirement benefit.

If a Participant should die on or after the commencement of his retirement benefits, no death benefit shall be paid unless the Participant had a method of payment in force which calls for survivor benefits and, if so, the survivor benefits under the method of payment shall be the death benefit.

Section 6.02 - Method of Payment -

The Participant may elect a method of payment of his death benefit. If he fails to make the election, the Beneficiary(ies) may elect a method of payment within ninety (90) days of the Participant's death. If a Beneficiary does not make an election within such period, the death benefit payable with respect to such Beneficiary shall be paid as a lump sum in cash as soon as is practicable after the termination of the election period.

Section 6.03 - Overriding Provisions -

Notwithstanding anything herein to the contrary, the provisions of Sections 5.07 (mandatory lump sum payments), 5.09 (minimum distributions), and 5.11 (adjustment for prior distributions) and Article VIII (joint and survivor annuity provisions) shall apply to benefits payable under this Article.

Section 6.04 - Special Rule for Domestic Partners -

Notwithstanding the above, if the Participant dies before his Annuity Starting Date and has named his Domestic Partner (as defined in Section 8.04(b)) as his Beneficiary (or if the Participant has a Domestic Partner and has not named a different Beneficiary) the Participant's Domestic Partner will be entitled to receive a Qualified Pre-retirement Survivor Annuity as defined in Section 8.03(b) as if the Domestic Partner were the Participant's Spouse in lieu of any payments under this Article VI, unless the Domestic Partner elects an alternative form of benefit pursuant to Section 8.03(d).

## ARTICLE VII

### Termination of Employment

Section 7.01 - Termination of Employment -

If a Participant shall have a Termination of Employment, except at retirement (Sections 5.01, 5.02 or 5.03), disability (Section 5.04), or death (Section 6.01), his interest and rights under

the Plan shall be limited to those contained in the following Sections of this Article, and he shall become a terminated Participant.

Section 7.02 - Vested Benefits -

If a Participant, at the time of Termination of Employment, is not entitled to a benefit under any other Section of this Plan and has completed at least five (5) years of Service, he shall be entitled to receive a benefit that is the Actuarial Equivalent of one hundred percent (100%) of his Normal Retirement Income (determined as of the date of his Termination of Employment). The terminated Participant may elect the date on which payments of this benefit shall commence, provided that such date shall not be earlier than an administratively reasonable period after the date of election or later than the first day of the month following the Participant's Normal Retirement Date. In all other respects, the terminated Participant's benefits under this Section 7.02 shall be determined in accordance with the provisions of Sections 5.06 through 5.11 and Article VIII.

Notwithstanding the reference to "Actuarial Equivalent" in the first sentence of this Section 7.02, if a Participant has completed ten (10) years of Service as of the date of his Termination of Employment, such Participant shall be entitled to receive a monthly retirement benefit equal to the Participant's Normal Retirement Income (determined as of the date of his Termination of Employment), reduced by five-twelfths of one percent (5/12 of 1%) for each month between (i) the later of the date payments commence or the date such Participant would attain Age fifty-five (55) and (ii) his Normal Retirement Date, and further reduced in accordance with the actuarial assumptions in Section 1.02 for each month between the date payments commence and the date such Participant would attain Age fifty-five (55).

If a terminated Participant entitled to benefits under this Section 7.02 dies prior to the date his benefits commence, there shall be paid to his Beneficiary a benefit in accordance with Article VI.

Except as provided in Articles V and VI, a Participant who does not have at least five (5) years of Service at the time of his Termination of Employment shall not be entitled to any benefit under this Plan and any Accrued Benefit he had under the Plan at that time shall be forfeited; provided that if such an individual is reemployed prior to incurring a five (5) year Period of Severance, his Accrued Benefit shall be restored to the amount of such Accrued Benefit as of the date of his Termination of Employment.

Section 7.03 - Notification of Benefits -

The Committee shall promptly notify, in writing, either in person or at his last known address, each Participant whose employment has terminated of the vested benefit to which he is entitled under the provisions of Section 7.02.

Section 7.04 - Late and Rehired Retirees -

(a)     In the event of a rehiring of a terminated Participant as an Employee prior to 2011, he shall resume his participation in the Plan as of the date of his reemployment and, to the extent provided in Section 1.34, he shall be credited with the amount of Service he had earned as

of the date of his Termination of Employment. A DC Choice Participant, or a terminated Participant who is rehired as an Employee after 2010, shall not be eligible to participate in the Plan with respect to service or compensation after 2010 (or 2011 for a DC Choice Participant) except to the extent provided under Section 2.06.

(b)    Except as provided in Section 5.12, any benefit otherwise due or payable to a Participant who has reached Normal Retirement Age and who receives payment from an Employing Company for Hours of Service performed on each of eight (8) or more days in a month shall be payable only for the period after such Participant has ceased to be employed by the Employer.

(i)    Any benefit otherwise due or payable to a Participant who has not yet reached Normal Retirement Age and who receives payment from an Employer for Hours of Service in a month shall be payable only for the period after such Participant has ceased to be employed by the Employer.

(c)    Except as otherwise required by law, any benefit not paid to a Participant pursuant to subsection (b) shall be forfeited, and any benefit due or payable to such Participant during any period after such Participant has ceased to be employed by the Employer shall not be increased or adjusted on account of such forfeited benefit. As and to the extent permitted by Code section 411(b)(1)(H)(iii)(II), any actuarial increase during a Plan Year required by law with respect to any benefit not paid to a Participant pursuant to subsection (b) shall reduce (but not below zero) the amount of benefits otherwise accrued by the Participant during such Plan Year.

(d)    As and to the extent permitted by Code section 411(b)(1)(H)(iii)(I), the actuarial equivalent of any benefit paid during any Plan Year to a Participant described in Section 5.12 (who does not elect to defer distributions) shall reduce (but not below zero) the amount of benefits otherwise accrued by the Participant during such Plan Year.

(e)    Subsections (b)-(d) do not apply to the minimum benefit to which the Participant is entitled under the top-heavy rules of Article X.

Section 7.05 - Transfer of Employment -

The transfer of a Participant in whole or in part from the payroll of one of the Employers hereunder to the payroll of one or more of the other Employers (including Employers that may be separate under the second sentence of Section 1.14) hereunder shall not be construed as a Termination of Employment. Upon the occurrence of such an event, the Employers concerned shall notify the Committee. The Employers concerned shall give all suitable directions to the Committee to accomplish any necessary changes in its records.

Section 7.06 - Absences -

(a)    If the active employment of a Participant with the Employer is interrupted, but not terminated, and if such interruption is described in Section 7.06(b), then during any such absence he shall be treated as though he were in the active employ of his most recent Employer; provided that Service shall be credited only in accordance with Section 1.34.

38

The Employer shall notify the Committee of any such event. Should a Participant die or retire while away from the active employment of the Employer in such circumstances, the provisions of this Plan Agreement with reference to the applicable contingency shall be followed in the same manner as though the Participant had died or retired in active employment. Except to the extent and for the purposes set forth in other provisions of this Plan, if a Participant's absence is not described in Section 7.06(b), such Participant shall be deemed to have a Termination of Employment as of the date the absence commenced.

(b)     Subject to the second sentence of this Section 7.06(b), the following interruptions in active employment shall be considered described in this Section 7.06(b): (i) to the extent required by law, any Period of Military Service, and (ii) an absence from active employment with the Employer pursuant to a leave of absence that is approved in writing by the Employer and that does not exceed two (2) years. However, an absence of the type set forth in Section 7.06(b)(ii) shall not be considered described in this Section 7.06(b) unless the Employee returns to active employment with the Employer on or before the end of his authorized leave of absence, and, after returning, does not have a voluntary Termination of Employment prior to having been in the employ of the Employer since his return for a period of time at least equal to his absence. Notwithstanding the immediately preceding sentence, with respect to a Participant who begins a leave of absence in 2009 on or after July 1, 2009 that is authorized by the Employer (the "2009 Leave of Absence") and who attains age 55 on or before December 1, 2009, such 2009 Leave of Absence shall be an absence as described in Section 7.06(b)(ii).

Section 7.07 - Special Rules for Qualified Domestic Relations Orders -

Notwithstanding anything contained in this Plan to the contrary, payments may be made under the Plan as necessary to comply with a qualified domestic relations order (as defined in and subject to the provisions of sections 401(a)(13) and 414(p) of the Code). In the case of such an order, distributions may be made under the Plan in accordance with the order, provided that any such distribution (a) is otherwise permissible under the Plan with respect to timing, amount, and form, or (b) would satisfy Section 7.07(a) but for the fact that it is payable from the Trust Fund prior to the date it would otherwise be payable under the Plan. The Committee shall establish reasonable procedures to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders (or the segregation of amounts pending determination of such status).

## ARTICLE VIII

### Joint and Survivor Annuity Provisions

Section 8.01 - Application -

The provisions of this Article shall take precedence over any conflicting provision in this Plan other than Sections 3.03, 5.07, 5.09, and 5.11. The provisions of this Article shall apply to any Participant who is credited with at least one Hour of Service on or after August 23, 1984.

Section 8.02 - Qualified Joint and Survivor Annuity -

39

Unless an optional form of benefit is selected pursuant to a Qualified Election within the one hundred eighty (180) day period ending on the Annuity Starting Date, a Participant's vested Accrued Benefit will be paid in the form of a Qualified Joint and Survivor Annuity.

Section 8.03 - Qualified Preretirement Survivor Annuity -

(a)　　If a Participant dies before the Annuity Starting Date, this Section 8.03 shall apply in lieu of Section 8.02.

(b)　　Under this Section 8.03, unless an optional form of benefit is selected within the Election Period pursuant to a Qualified Election, then in lieu of any benefits that would otherwise be payable under Article VI, the Participant's Eligible Spouse (if any) will receive a benefit in the form of an annuity for the life of such Eligible Spouse that is the Actuarial Equivalent of the Participant's monthly retirement benefit determined as of the date of his death. For this purpose, the monthly retirement benefit shall be determined (a) without regard to Section 5.06 (other than the first sentence) or Article VIII, (b) without regard to the requirements under this Plan with respect to vesting, (c) in the case of any Participant who is employed on the date of death, as if the Participant had, on the date of death, had a Termination of Employment for a reason other than death, (d) as if the Participant had elected for such monthly retirement benefit to commence on the date of death, and (e) to the extent that the Participant would have been eligible to elect benefits under either Section 5.03 or 5.04 as if the Participant had made the election that maximized his monthly retirement benefit.

(c)　　For purposes of subsection (b), a Participant's Eligible Spouse will begin to receive payments within an administratively reasonable period following the later of (i) the date of the Participant's death, or (ii) the Earliest Retirement Age.

(d)　　A Participant's Eligible Spouse may elect to receive an alternate form of benefit under Article VI in lieu of the form of benefit described in Sections 8.03(b) and (c) ("Qualified Preretirement Survivor Annuity"). A Participant's Eligible Spouse may also elect to begin to receive payments at a date earlier or later than the date specified in Section 8.03(c). The benefit shall be an Actuarial Equivalent of the Qualified Preretirement Survivor Annuity to which such Eligible Spouse was entitled. Notwithstanding the foregoing, a Participant shall be treated as having made a Qualified Election if the Participant elects an immediate annuity for the life of the Participant with, in the case of a Participant with an Eligible Spouse, a survivor annuity for the life of such Eligible Spouse which is one hundred percent (100%) of the amount of the annuity which is payable during the joint lives of the Participant and such Eligible Spouse.

Section 8.04 - Definitions -

(a)　　Annuity Starting Date. The first day of the first period for which an amount is paid as an annuity or any other form.

If an Employee defers retirement under Section 5.02 and has not received any payments, the Annuity Starting Date is determined with respect to the deferred date of benefit commencement.

40

There shall only be one Annuity Starting Date with respect to a Participant except in the case of a Participant who has an Annuity Starting Date prior to Normal Retirement Age and whose Accrued Benefit increases after such Annuity Starting Date; such a Participant shall have another Annuity Starting Date with respect to such increases in his Accrued Benefit.

(b)     Domestic Partner.  An individual who qualifies as a Participant's domestic partner in accordance with current Employer policies.

(c)     Earliest Retirement Age.  The earliest date on which, under the Plan, the Participant could elect to receive retirement benefits.

(d)     Election Period.  The period which begins on the first day of the Plan Year in which the Participant attains age thirty-five (35) and ends on the date of the Participant's death. If a Participant separates from service prior to the first day of the Plan Year in which age thirty-five (35) is attained, with respect to the Accrued Benefit as of the date of separation, the Election Period shall begin on the date of separation.

A Participant who will not yet attain age thirty-five (35) as of the end of any current Plan Year may make a special Qualified Election to waive the Qualified Preretirement Survivor Annuity for the period beginning on the date of such election and ending on the first day of the Plan Year in which the Participant will attain age thirty-five (35). Such election shall not be valid unless the Participant receives a written explanation of the Qualified Preretirement Survivor Annuity in such terms as are comparable to the explanation required under Section 8.05. Qualified Preretirement Survivor Annuity coverage will be automatically reinstated as of the first day of the Plan Year in which the Participant attains age thirty-five (35). Any new waiver on or after such date shall be subject to the full requirements of this Article.

(e)     Eligible Spouse.  An individual who is the Spouse of the Participant:

(i)     In the case of a Qualified Joint and Survivor Annuity, or a distribution under Articles V or VII, as of the Annuity Starting Date, and

(ii)     In the case of a Qualified Preretirement Survivor Annuity, or a distribution under Article VI, as of such Participant's date of death.

Notwithstanding the prior sentence:

(iii)     A former Spouse will be treated as the Participant's Eligible Spouse and a current Spouse or Domestic Partner will not be treated as such Participant's Eligible Spouse to the extent provided under a qualified domestic relations order as described in section 414(p) of the Code; and

(iv)     Except as otherwise provided in such a qualified domestic relations order, a Participant shall not be considered to have an Eligible Spouse as of a date, if on such date (I) such Participant is legally separated (within the meaning of local law), (II) such Participant has been abandoned (within the meaning of local law) and such Participant has a court order or local certificate to such effect or (III) such Participant's Spouse has been declared legally dead (within the meaning of local law).

41

If, pursuant to Section 8.04(e)(iii), more than one (1) individual is treated as an Eligible Spouse of a Participant, the total amount to be paid in the form of a Qualified Preretirement Survivor Annuity or in the form of the survivor portion of a Qualified Joint and Survivor Annuity may not exceed the amount that would be paid if such Participant had only one (1) Eligible Spouse, determined in accordance with Code sections 401(a)(13) and 414(p).

(f)     Qualified Election.  Any waiver of a Qualified Joint and Survivor Annuity or a Qualified Preretirement Survivor Annuity that satisfies the following requirements: (i) the Participant's Eligible Spouse consents in writing to the election; (ii) the election designates one or more specific Beneficiaries, including any class of Beneficiaries or any contingent Beneficiaries, which may not be changed without consent of the Participant's Eligible Spouse (or such Eligible Spouse expressly permits designations by the Participant without any further consent of such Eligible Spouse); (iii) the Participant's Eligible Spouse's consent acknowledges the effect of the election; and (iv) the Participant's Eligible Spouse's consent is witnessed by a Plan representative or notary public.  Additionally, a Participant's waiver of the Qualified Joint and Survivor Annuity shall not be effective unless the election designates a form of benefit payment which may not be changed without consent of the Participant's Eligible Spouse (or such Eligible Spouse expressly permits designations by the Participant without any further consent of such Eligible Spouse).  If it is established to the satisfaction of a Plan representative that there is no Eligible Spouse or that the Eligible Spouse cannot be located, a waiver will be deemed a Qualified Election.

Any consent by an Eligible Spouse obtained under this provision (or establishment that the consent of an Eligible Spouse may not be obtained) shall be effective only with respect to such Eligible Spouse.  Any consent by an Eligible Spouse shall be irrevocable with respect to such Eligible Spouse.  A consent that permits designations by the Participant without any requirement of further consent by such Eligible Spouse must acknowledge that such Eligible Spouse has the right to limit consent to a specific Beneficiary, and a specific form of benefit where applicable, and that such Eligible Spouse voluntarily elects to relinquish either or both of such rights.  A revocation of a prior waiver may be made by a Participant without the consent of such Participant's Eligible Spouse at any time before the Annuity Starting Date.  The number of revocations shall not be limited.  No consent obtained under this provision shall be valid unless the Participant has received notice as provided in Section 8.05.

(g)     Qualified Joint and Survivor Annuity.  An immediate annuity for the life of the Participant with, in the case of a Participant with an Eligible Spouse, a survivor annuity for the life of such Eligible Spouse which is fifty percent (50%) of the amount of the annuity which is payable during the joint lives of such Participant and such Eligible Spouse.  With respect to a Participant, the Qualified Joint and Survivor Annuity shall be the Actuarial Equivalent of the form of benefit available to the Participant (without regard to this Article VIII) with respect to which the Actuarial Equivalent is the greatest amount.

(h)     Qualified Preretirement Survivor Annuity.  The life annuity described in Section 8.03(d).

Section 8.05 - Notice Requirements -

(a)    In the case of a Participant eligible to select an optional form of benefit under Articles V or VII, the Committee shall, no less than thirty (30) days and no more than one hundred eighty (180) days prior to the Annuity Starting Date, provide such Participant with a written explanation of (i) the terms and conditions of the Qualified Joint and Survivor Annuity; (ii) the Participant's right to make, and the effect of, an election to waive the Qualified Joint and Survivor Annuity form of benefit; (iii) the rights of a Participant's Eligible Spouse; and (iv) the right to make, and the effect of, a revocation of a previous election to waive the Qualified Joint and Survivor Annuity. Notwithstanding the foregoing, a Participant's Annuity Starting Date may occur less than 30 days after such explanation is provided to the Participant if, after having received such explanation, the Participant affirmatively elects a form of distribution, such Participant's Eligible Spouse consents to that form of distribution (where necessary), and: (I) the Committee provides information to the Participant clearly indicating that the Participant has a right to at least 30 days to consider whether to waive the Qualified Joint and Survivor Annuity; (II) the Participant is permitted to revoke his affirmative election of a form of distribution at least until his Annuity Starting Date or, if later, at any time prior to the expiration of the 7-day period that begins the day after the written explanation is provided; (III) the Annuity Starting Date is after the date that the explanation is provided to the Participant; and (IV) payment in accordance with the Participant's election does not begin before the end of the 7-day period described in clause (II).

(b)    The Committee shall, within the applicable period for each Participant, provide such Participant with a written explanation of the Qualified Preretirement Survivor Annuity in such terms and in such manner as would be comparable to the explanation provided for meeting the requirements of Section 8.05(a) applicable to a Qualified Joint and Survivor Annuity.

The applicable period for a Participant is whichever of the following periods that ends last: (i) the period beginning with the first day of the Plan Year in which the Participant attains Age thirty-two (32) and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains Age thirty-five (35); and (ii) a reasonable period ending after the individual becomes a Participant. Notwithstanding the foregoing, notice must be provided within a reasonable period ending after Termination of Employment in the case of a Participant who has such a Termination of Employment before attaining Age thirty-five (35).

For purposes of applying the preceding paragraph, a reasonable period ending after the event described in Section 8.05(b)(ii) is the two (2) year period beginning one (1) year prior to the date the individual becomes a Participant, and ending one (1) year after that date. In the case of a Participant who has a Termination of Employment before Age thirty-five (35) is attained, notice shall be provided within the two (2) year period beginning one (1) year prior to Termination of Employment and ending one (1) year after Termination of Employment. If such a Participant thereafter returns to employment with the Employer, the applicable period for such Participant shall be redetermined.

The Committee shall further provide each Participant with the written explanation described in this Section 8.05(b) to the extent that such written explanation is required in connection with a pre-Age thirty-five (35) waiver, as described in Section 8.04(d).

43

ARTICLE IX

Amendment and Termination of Plan

Section 9.01 - Amendment -

FINRA reserves the right at any time to amend this Plan in any respect (including retroactively) to the extent permitted by law, by resolution of its governing body or other method authorized under its governing documents; provided that this authority may be delegated to any party by resolution or other method authorized under FINRA's governing documents; and further provided, that the Chief Executive Officer (or his delegate) may adopt amendments to the Plan if such amendments are ministerial in nature, are required or desirable to comply with existing law, or are amendments that do not have a material financial impact on FINRA. Any amendment to the Plan shall be binding on all Employers, Participants, Beneficiaries, and other persons. Any amendment shall be effective as of the date specified therein.

The rights and benefits of any Participant (or his Beneficiary) who has a Termination of Employment before the effective date of an amendment of the Plan shall be determined without regard to such amendment, except to the extent otherwise required by law; provided that the amendments of Section 12.08(a) contained in the 1991 Restatement and the 1993 Restatement shall be effective as provided in Section 14.12 without regard to the date of a Participant's Termination of Employment.

Section 9.02 - Termination of Plan - Merger, Etc. -

(a)     The participation of an Employer in this Plan shall continue for such time as may be necessary to accomplish the purpose for which it was commenced, but it may be terminated and discontinued by an Employer as to its Employees at any time by action of its Governing Body or a Committee or designee duly appointed thereby. Notice of such termination shall be given by the Employer to its Participants, the Trustee, the Committee, any Investment Manager, the Pension Benefit Guaranty Corporation, and the appropriate District Director of Internal Revenue, if necessary. Such termination of participation in this Plan by an Employer shall take effect as of the date contained in the resolution of termination. If the termination of the participation of an Employer in this Plan is deemed to be a partial termination of the Plan, the provisions of Section 9.03 shall be followed. The participation of an Employer in this Plan shall also terminate should the Employer be legally dissolved or declared bankrupt or should it make any general assignment for the benefit of creditors. The Plan shall terminate if the Employer merges or consolidates with any other entity which is not an Employer under this Plan and it is not the surviving entity or if it sells or transfers its assets and goes out of business, unless the entity succeeding to the business of the Employer shall agree to assume the liabilities of this Plan as to the Participants who are employed by such entity. A condition of the assumption of the liabilities shall be that the benefits to which a Participant is entitled immediately after the assumption of the liabilities shall be equal to or greater than the benefits to which he would have been entitled if the Plan had been terminated immediately prior to the assumption of the liabilities. As to any Participants who do not become Employees of the successor Employer, the Plan shall be deemed terminated, and they shall be entitled to all the equities held hereunder on their behalf as provided in Section 9.03. Adoption of this Plan to cover its Employees by any

44

entity which shall assume the obligations of this Plan shall be in the manner described in Section 9.04.

(b) In the case of any merger or consolidation of the Plan with, or in the case of any transfer of assets or liabilities of the Plan to, any other plan, each Participant and Beneficiary in the Plan must be entitled to receive a benefit immediately after the merger, consolidation, or transfer that satisfies the requirements of Code section 414(1). No merger, consolidation, or transfer shall take place if such merger, consolidation, or transfer would cause this Plan to cease to be qualified under Code section 401(a).

Section 9.03 - Full Vesting on Termination of Plan -

In the event of a partial or complete termination of the Plan, within the meaning of Code section 411(d)(3), the rights of all affected Employees to benefits accrued to the date of said termination, to the extent then funded, shall be nonforfeitable.

The amount of Trust Fund assets held by the Trustee with respect to such Employer shall, subject to the provisions of Section 12.08, be allocated, subject to provision for expenses of administration or liquidation, for the following benefit purposes and in the following manner and order to the extent of the sufficiency of such assets:

(a) First, such assets shall be allocated to provide the retirement benefits called for by the Plan in respect of (i) the benefits of a Participant or Beneficiary who was receiving retirement benefits as of the beginning of the three (3) year period ending on the termination date of the Plan, based on the provisions of the Plan (as in effect during the five (5) year period ending on such date) under which such benefits would be the least, and (ii) the benefits of a Participant or Beneficiary who was receiving retirement benefits as of the beginning of such three (3) year period if the Participant had retired prior to the beginning of the three (3) year period and if his benefits had commenced as of the beginning of such period, based on the provisions of the Plan (as in effect during the five (5) year period ending on such date) under which such benefits would be the least. For purposes of this subsection (a), the lowest benefit in pay status during the three (3) year period shall be considered the benefit in pay status for such period.

(b) Second, if any such assets remain after the complete allocation for the purposes of (a) above, they shall be allocated to provide the retirement benefits called for by the Plan in respect of all other benefits (if any) of individuals under the Plan guaranteed under Title IV of ERISA.

(c) Third, if any such assets remain after complete allocation for the purposes of (a) and (b) above, they shall be allocated to provide retirement benefits called for by the Plan, to the extent possible, in respect of all other benefits of the Participants who have terminated employment with the Employer with a vested right to retirement benefits under the Plan or who could have terminated such employment with a vested right to retirement benefits in accordance with Section 7.02 and their Beneficiaries.

(d) The allocation of the amounts for the purposes of subsections (a), (b), and (c) shall be on the basis of immediate and/or deferred annuity values as determined by the Actuary.

45

Any reduction in such benefits revealed as necessary by the insufficiency of assets shall be determined by the Actuary in a uniform manner on the basis of similar annuity values.

(e)     Fourth, if any such assets remain after the complete allocation for the purposes of (a), (b), and (c) above, they shall be allocated to provide retirement benefits to Participants who remain and who have a pension interest on the date of termination of the Plan, but not beyond the value of such interest, on a basis proportionate to the actuarial value of such interests of such Participants.

(f)     Fifth, if any such assets remain after the complete allocation for the purposes of (a), (b), (c), and (e) above, such assets shall then revert to the Employer.

The allocations referred to in this Section 9.03, when determined by the Actuary based on the amount of assets available as determined by the Trustee, may be implemented through the continuance of the existing Trust Fund or through a new trust created for that purpose or through the purchase by the Trustee of life insurance company annuity contracts, either group or individual, or by a combination of these media.

Section 9.04 - Manner of Adoption of Plan by Other Employers -

Adoption of this Plan to cover its Employees by any entity which shall assume the obligations of this Plan as provided in Section 9.02, or any other Employer, as defined in Section 1.14, which shall agree to cover its Employees under this Plan, shall be evidenced by an agreement entered into between such entity, the Committee, and the Trustee.

Section 9.05 - Limitation on Vesting Amendments -

If an amendment to the Plan changes any vesting schedule hereunder, each Participant having at least three (3) years of Service will be permitted to elect, within a reasonable period after the adoption of such amendment, to have the nonforfeitable percentage of his Accrued Benefit under the Plan computed without regard to such amendment, unless such Participant's nonforfeitable percentage under the Plan, as amended, at any time cannot be less than such percentage computed without regard to such amendment.

ARTICLE X

Top-Heavy Plan Provisions

Section 10.01 - Definitions -

The following definitions shall apply for purposes of this Article.

(a)     Top-Heavy Plan. The Plan is a Top-Heavy Plan for a Plan Year if, as of the Determination Date with respect to such Plan Year, the aggregate of the accrued benefits of Key Employees under the Group of Plans exceeds sixty percent (60%) of the aggregate of the accrued benefits of all employees under the Group of Plans, as determined under Code section 416.

46

For purposes of the determination described in the preceding paragraph, the value of accrued benefits as of the Determination Date shall be determined as of the most recent Valuation Date that is within a 12-month period ending on the Determination Date, except that in the case of a Defined Contribution Plan, there shall be an adjustment for contributions actually made after the Valuation Date but on or before the Determination Date. With respect to a Defined Benefit Plan, the Valuation Date shall be the same valuation date for computing plan costs for minimum funding, regardless of whether a valuation is performed that year. With respect to a Defined Contribution Plan, the Valuation Date shall be the date used for valuing account balances and plan assets.

(b)     Group of Plans. The Group of Plans includes each Defined Benefit Plan and Defined Contribution Plan of the Employer (i) in which a Key Employee is a participant (in the Plan Year containing the Determination Date or any of the four (4) preceding Plan Years), (ii) which must be aggregated with any other plan described in clause (i) in order for such other plan to meet the qualification requirements set forth or referred to in sections 401(a)(4) and 410 of the Code, and (iii) at the option of the Employer, any other such plan of the Employer as long as all plans as so aggregated and viewed as a single plan would meet the requirements of sections 401(a)(4) or 410 of the Code.

(c)     Determination Date. The Determination Date with respect to any Plan Year of this Plan shall be the last day of the preceding Plan Year. The Determination Date with respect to any plan year of any other plan in the Group of Plans shall be the last day of the preceding plan year, or in the case of the first plan year of such plan, the last day of such first plan year.

(d)     The term "Key Employee" means an employee of the Employer who, at any time during the Plan Year, is:

(A)     an officer of the Employer having an annual compensation greater than $170,000 (as adjusted under Code section 416(i)(1)),

(B)     a 5-percent owner of the Employer, or

(C)     a 1-percent owner of the Employer having an annual compensation from the Employer of more than $150,000.

For purposes of subparagraph (A), no more than 50 employees (or, if lesser, the greater of 3 or 10 percent of the employees) of the Employer shall be treated as officers. Such term shall not include any officer or employee of an entity referred to in Code section 414(d) (relating to governmental plans). For purposes of determining the number of officers taken into account under subparagraph (A), employees described in Code section 414(q)(5) shall be excluded.

(i)     (A)     For purposes of this Section 10.01(d), the term "5-percent owner" means:

(I)     if the Employer is a corporation, any person who owns (or is considered as owning within the meaning of Code section 318) more than 5 percent of the outstanding stock of the corporation or stock possessing more than 5 percent of the total combined voting power of all stock of the corporation, or

47

(II)  if the Employer is not a corporation, any person who owns more than 5 percent of the capital or profits interest in the Employer.

(B)  For purposes of this Section 10.01(d), the term "1-percent owner" means any person who would be described in subparagraph (A) if "1 percent" were substituted for "5 percent" each place it appears in subparagraph (A).

(C)  For purposes of Section 10.01(d)(ii):

(I)  subparagraph (C) of Code section 318(a)(2) shall be applied by substituting "5 percent" for "50 percent", and

(II)  in the case of any employer which is not a corporation, ownership in such employer shall be determined in accordance with regulations prescribed by the Secretary of Treasury which shall be based on principles similar to the principles of Code section 318 (as modified by clause (I)).

(III)  For purposes of this Section 10.01(d), the term "Employer" shall have the meaning set forth in Section 10.01(f) except that the rules of subsections (b), (c), and (m) of Code section 414 shall not apply for purposes of determining ownership in the Employer.

(IV)  For purposes of this Section 10.01(d), the term "compensation" has the meaning given such term by Code section 414(q)(4).

(ii)  The language of this Section 10.01(d) is intended to conform to Code section 416(i)(1) and shall be interpreted accordingly.

(e)  Non-Key Employee. Any employee or former employee (including a Beneficiary of such individual) of the Employer other than a Key Employee.

(f)  Employer. "Employer" as defined in Section 1.14.

(g)  Compensation. "Compensation" as defined in Code section 414(s).

(h)  Defined Benefit Plan. As defined in Code section 414(j).

(i)  Defined Contribution Plan. As defined in Code section 414(i).

Section 10.02 - Provisions Applicable to Top-Heavy Plan -

The rules specified in the remaining provisions of this Article shall apply to the Plan for each Plan Year in which it is a Top-Heavy Plan.

Section 10.03 - Minimum Vesting Requirements -

(a)  For any Plan Year in which the Plan is a Top-Heavy Plan, the vested portion of each Participant's Accrued Benefit shall be the greater of the vested portion determined without regard to this Section 10.03 or the following:

48

| Years of Service | Vested Interest |
|:---:|:---:|
| 0- 1 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 or more | 100% |

(b)     If the Plan ceases to be a Top-Heavy Plan, the resulting change from the vesting schedule contained in subsection (a) to the one otherwise applicable under this Plan shall be deemed to be an amendment of the vesting provisions of the Plan, and the requirements of Section 9.05 shall apply.

Section 10.04 - Minimum Accrued Benefit -

(a)     Except as otherwise provided in this Section 10.04, the Accrued Benefit of any Non-Key Employee at any time shall equal at least the product of (i) the Employee's average annual Compensation for the five consecutive Plan Years for which the Employee had the highest aggregate Compensation, excluding Plan Years in which the Employee had no Service, Plan Years before 1984, and Plan Years after the last Plan Year in which the Plan is a Top-Heavy Plan; and (ii) the lesser of (A) two percent (2%) per year of Service, or (B) twenty percent (20%) (the "Minimum Benefit").

(b)     The Minimum Benefit shall be determined without regard to any Social Security contributions and benefits.

(c)     For purposes of computing the Minimum Benefit, only Service during Plan Years after 1983 and for which the Plan is a Top-Heavy Plan shall be taken into account and any Service shall be disregarded to the extent that such Service occurs during a Plan Year when the Plan benefits (within the meaning of Code section 410(b)) no Key Employee or former Key Employee.

(d)     If the form of benefit is other than a single life annuity, the Employee must receive an amount that is the Actuarial Equivalent of the Minimum Benefit. If the benefit commences at a date other than at Normal Retirement Age, the Employee shall receive at least an amount that is the Actuarial Equivalent of the Minimum Benefit commencing at Normal Retirement Age.

(e)     The Minimum Benefit shall not be forfeited or suspended as a result of the reemployment of the Employee. It shall be subject to the vesting provisions applicable to benefits in general.

(f)     All accruals of Employer-derived benefits, whether or not attributable to years for which the Plan is a Top-Heavy Plan, may be used in satisfying the Minimum Benefit.

(g)     Employer-derived benefits under all Defined Benefit Plans required to be included in a Group of Plans shall be taken into account in determining whether the Minimum

49

Benefit is provided. To the extent that the benefits must be increased to provide the Minimum Benefit, they shall be increased under this Plan.

(h)     The Minimum Benefit to which an Employee would otherwise be entitled shall be reduced by the Actuarial Equivalent of the sum of his account balances attributable to Employer contributions (other than elective deferrals described in Code section 402(g)(3)(A)) and forfeitures under all Defined Contribution Plans required to be included in a Group of Plans, determined as of the date of commencement of benefits hereunder.

(i)     A Non-Key Employee shall not fail to accrue a Minimum Benefit

(i)     merely because the Non-Key Employee is or is not employed on a specified date, or

(ii)     merely because of the Non-Key Employee's level of compensation.

Section 10.05 - General Override -

Notwithstanding anything herein to the contrary, if the Plan is determined to be a Top-Heavy Plan for any Plan Year, then the Plan shall meet the requirements contained in this Article X for such Plan Year.

## ARTICLE XI

### Named Fiduciary - Administrator: Powers, Duties, and Exemptions of Committee

Section 11.01 - Named Fiduciary - Administrator - Appointment - Tenure -

The Named Fiduciary and Administrator, as those terms are defined under ERISA, of this Plan shall be the Committee, but not the members of the Committee as individuals. Service of legal process may be made upon the Plan by delivery of the same upon the Committee as the Administrator.

The Governing Bodies of the Employers or their designees shall appoint the members of the Committee. At any time they so desire, the Governing Bodies of the Employers shall have the right to appoint a new member or members to the Committee and to fill any vacancies in the membership of the Committee. The Employers shall notify the Trustee, any Investment Manager, and, to the extent required by law, the Participants of any change in the membership of the Committee.

Any member of the Committee may resign by giving notice in writing to the Employers. The Governing Bodies of the Employers shall have the power to remove a member of the Committee for any or no reason. A member shall cease to be such upon his death, his being legally declared incompetent, or, in the case of a member who was an Employee when appointed to be a member, his Termination of Employment.

Section 11.02 - Majority to Govern - Meetings -

Except as otherwise specifically provided for herein, any and all acts and decisions of the Committee shall be by a majority of the members. A meeting need not be called or held to make any decision or take any action, but any decisions may be made or action taken by written documents signed by a majority of the members.

The Committee may delegate to each or any one of its members authority to sign any document on its behalf, or to perform ministerial acts, but no person to whom such authority is delegated shall perform any act involving the exercise of any discretion without first obtaining the concurrence of a majority of the members, even though he alone may sign any document required by third parties. If at any time there is a vacancy or vacancies in the membership of the Committee, pending the appointment of a successor or successors, the remaining members or member shall have authority to act as the Committee.

Section 11.03 - Member as Participant -

No member of the Committee who is a Participant under this Plan shall vote or act upon, or sign any documents relating to, his own particular participation under this Plan although he may act on matters of general applicability to all Participants, including himself.

Section 11.04 - General Responsibilities -

The Committee shall use the ordinary care and reasonable diligence of a prudent man in the performance of its duties under this Plan and it shall not be liable for any loss, or lack of income, sustained by reason of any decision which does not violate its fiduciary duties, is in good faith, and is in accordance with the provisions hereof. The Committee's powers, duties, rights, and obligations shall be those expressly conferred or imposed upon it by this Plan or by law. No member of the Committee or other fiduciary, as that term is defined under the law, shall be liable for breaches of fiduciary duty regarding this Plan if such breach was committed before he became a fiduciary or after he ceased to be one.

Section 11.05 - Agents and Counsel - Secretary -

The Committee may engage agents, accountants, and actuaries to assist it in its duties and may consult with counsel, who may be counsel for any Employer, with respect to the meaning or construction of this Plan or its obligations or duties hereunder, or with respect to any action or proceeding or any question of law, and shall, except as limited by law, be fully protected with respect to any action taken or omitted by them in good faith pursuant to the advice of such persons.

The Committee may appoint a Secretary to keep such records as may be necessary of the acts and resolutions of the Committee, and the Secretary so appointed may, but need not be a member of the Committee. Such Secretary may perform any and all purely ministerial acts which may be delegated to him in writing by the Committee.

Section 11.06 - Recordkeeping - Access Thereto -

The Committee shall keep complete records which shall show its actions under this Plan. Any officer of an Employer shall have the right to inspect the records of the Committee. Any Participant may demand a copy of the Committee's records, and, through the Committee, of the Trustee's records with respect to his participation, but shall have no right to inquire with respect to other Participants.

Section 11.07 - Expenses - Compensation -

The Trustee will pay from the Trust Fund the reasonable expenses of the Committee in the administration of this Plan to the extent permitted by law and the Trustee may reimburse the Employers for any payments made for these expenses retroactive to January 1, 1989. Any such expenses not paid by the Trustee from the Trust Fund shall be paid by the Employers. Any member of the Committee who is an employee of an Employer shall receive no compensation for his services as such member, but the Employers agree to supply such stenographic or office help as may be necessary to assist such members of the Committee in the performance of their powers, duties, and discretions. Any member of the Committee who is not an employee of an Employer shall receive such compensation as he and the Employers agree upon, and this shall be paid by the Trustee from the Trust Fund to the extent permitted by law.

Section 11.08 - Dealing with Trustee -

The Committee shall give, in a writing signed by a member thereof or by the Secretary to the Committee, all such directions to the Trustee as are called for by the provisions hereof in connection with any act to be taken by the Trustee under this Plan. The Trustee may at any time call upon the Committee for directions under any Section or provision of this Plan even though said Section or provision may not definitely provide that the Trustee is to act on direction of the Committee.

To the extent the same is needed by the Trustee, the Committee shall procure from the Employer and transmit to the Trustee for its use a complete list of all eligible Employees and such information as is necessary pertaining to their ages, history of employment, and their earnings.

Section 11.09 - Certification -

A certificate signed by the Secretary of the Employer, FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., certifying the names and signatures of the persons who are at the date of certification the members of the Committee hereunder, and the Secretary to the Committee, if any, shall be conclusive evidence for all purposes that such persons are holding such positions at the date of such certification, and on any date thereafter until a new certification is received, and that the signatures appearing are their authentic signatures.

Section 11.10 - Discretion - Mediator - Rules and Regulations - Claims Procedure -

With respect to the powers and duties of the Committee under this Plan, the Committee shall, to the maximum extent permitted by law, have complete discretion and to the maximum

22762252v.2

extent permitted by law, its decisions shall be binding, final, and conclusive upon all parties. In this connection, the Committee shall have the power to decide any question which may arise as to the operation of the Plan (including without limitation the power to find facts), as to Employee and Participant coverage, as to eligibility for benefits under the Plan, and as to any matter whatsoever which may arise in connection with this Plan. The Committee, however, shall exercise its discretion in a nondiscriminatory manner and in a manner consistent with the terms of the Plan and with applicable law.

The Committee may from time to time formulate and issue to the Employees, to the Participants, to the Trustee, and to the Employers such rules and regulations necessary to enable it to administer and carry out its duties. Such rules and regulations may clarify any of the provisions of this instrument which it deems in need of clarification or as it deems necessary in the administration of this Plan. No rule or regulation, however, shall amend any substantive provision of this Plan. This Section 11.10 is not meant to supersede any rights granted by ERISA.

Where a Participant's or Beneficiary's claim for benefits shall be denied, the Committee shall give the Participant or Beneficiary adequate written notice of the denial. The Committee shall set up a review procedure for claims which have been denied which shall be consistent and practiced in a nondiscriminatory manner. The written notice referred to above shall contain the specific reasons for the denial, description of the review procedure, and instructions on how to apply for review. Such notice shall be written in a manner calculated to be understood by all Participants and Beneficiaries.

In the event that any dispute shall arise as to any act to be performed under this Plan, the Committee may postpone the performance of such act until actual adjudication of such dispute shall have been made in a court of competent jurisdiction or it shall be indemnified against loss to its satisfaction.

## ARTICLE XII

### Miscellaneous Provisions

Section 12.01 - Employees' Trust -

This Plan shall be interpreted in a manner consistent with its being a qualified plan under section 401(a) of the Code. Therefore, except as otherwise provided herein, under no circumstances shall any funds contributed to this Plan and Trust Fund or any assets of this Plan and Trust Fund ever revert to, or be used or enjoyed by, any Employer prior to the satisfaction of all liabilities hereunder to its Participants and Beneficiaries.

Section 12.02 - Indemnity -

To the extent permitted by law, the Employers shall and do hereby jointly and severally indemnify and hold harmless any of their officers and employees, any member of their Governing Bodies, and each member of the Committee, from any and all claims, demands, suits, or proceedings, for liability, loss, damage, penalty, or tax (including payment of legal fees and expenses in connection with defense against same) brought by any Participant, Beneficiary, Employee, or any other person, corporation, governmental agency, or other entity, arising from any act or failure to act which constitutes or is alleged to constitute a prohibited transaction or a breach of such individual's responsibilities under ERISA or other law; provided, however, that such indemnification shall not apply to any willful misconduct, willful failure to act, or gross negligence. Reasonable expenses incurred in defending any such claim, demand, suit, or proceeding shall be paid by the Employers in advance of a final disposition of such claim, demand, suit, or proceeding, upon presentation therefore by a person who would be entitled to indemnification under the prior sentence. An Employer shall have the right to control any controversy where the Employer is required to indemnify any individual under the provisions of this Section 12.02. It is contemplated that the Employers may, if they so desire, purchase insurance to cover their potential liability hereunder.

Section 12.03 - General Undertaking - Agreement Binds Heirs, Etc. -

All parties to this Plan and all persons claiming any interest whatsoever hereunder agree to perform any and all acts and execute any and all documents and papers which may be necessary or desirable for the carrying out of this Plan or any of its provisions. This Plan Agreement shall be binding upon the heirs, executors, administrators, successors, and assigns, as such terms shall apply, of any and all parties hereto, present and future.

Section 12.04 - Prohibition Against Certain Persons Acting -

No person shall serve or be permitted to serve as an Administrator, Named Fiduciary, member of the Committee, officer, Trustee, custodian, counsel, agent, or employee of this Plan, or as a consultant to this Plan, who is prohibited from serving in one of the above positions under Title I, section 411 of ERISA.

22762252v.2

Section 12.05 - Plan Not Contract of Employment -

      This Plan shall not be construed as creating or modifying any contract of employment between an Employer and its Employees, whether Participants hereunder or not, or as interfering with their right to terminate their respective employment at any time, to the same extent as though this Plan had not been created.

Section 12.06 - Spendthrift Clause -

      Except as may be required by law or as otherwise provided in this Plan, no Participant or Beneficiary shall have any right to withdraw, assign, pledge, transfer, appropriate, encumber, commute, alienate, or anticipate his interest in the Plan and Trust, or any payments to be made thereunder, and no benefits, payments, rights, or interest of such a person under the Plan shall be in any way subject to any legal or equitable process to levy or execute upon, garnish, or attach the same for payment of any claim against such person, nor shall any such person have any right of any kind whatsoever with respect to the Trust, or any estate or interest therein, or with respect to any other property or rights, other than the right to receive such distributions as are made out of the Trust, as and when the same are or shall become due and payable under the terms of the Plan. Any attempt to transfer, pledge, levy upon, or otherwise alienate an interest of a Participant or Beneficiary shall not be recognized by the Employers, the Committee, or the Trustee except to such an extent as may be required by law or as otherwise provided in this Plan. This Section 12.06 shall prohibit the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant or Beneficiary pursuant to a domestic relations order, unless the order is a qualified domestic relations order within the meaning of section 414(p) of the Code.

Section 12.07 - Invalidity of Certain Provisions -

      If any provision of this Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof, and this Plan shall be construed and enforced as if such provisions had not been included.

Section 12.08 - Restrictions to Prevent Discrimination -

      (a)    If none of the requirements set forth in Treasury Regulations §§ 1.401(a)(4)-5(b)(3)(iv)(A), (B), or (C) is satisfied, then benefit payments to the Top 25 Highly Compensated Employees shall be limited in the manner set forth in Treasury Regulations §§1.401(a)(4)-5(b)(3)(i) and (iii). References in the prior sentence to regulations shall be deemed to refer to any successor regulations as of the effective date of such successor regulations.

      (i)    For purposes of this Section 12.08, the term "Top 25 Highly Compensated Employees" shall mean the individuals who, as of the date of determination, are with respect to the Employers (i) highly compensated employees (within the meaning of Code section 414(q)) or former highly compensated employees, and (ii) among the twenty-five (25) Participants or former Participants with the largest Final Average Compensation.

      (ii)    Notwithstanding anything to the contrary elsewhere in this Section 12.08(a), benefits otherwise restricted under this Section 12.08(a) may be distributed if an

22762252v.2

agreement is entered into between the affected individual and the Plan to secure repayment to the Plan of any amount necessary for the distribution of assets upon termination of the Plan to satisfy section 401(a)(4) of the Code.

The amount that may be required to be repaid shall be determined in accordance with the Treasury Regulations under section 401(a)(4) and promulgations related thereto. The agreement shall provide for security for the individual's repayment obligations in the form of the deposit of property in escrow, the posting of bond, a bank letter of credit, or other adequate security or collateral; the amount of security or collateral and the terms of the arrangement shall comply with the aforesaid regulations and promulgations.

The agreement and the security arrangements thereunder shall terminate at any time after the distribution when the Committee certifies that the individual is no longer obligated to repay any amount because at such time any of the circumstances described in Treasury Regulations §§ 1.401(a)(4)-5(b)(3)(iv)(A), (B), or (C) (or any successor regulations) then applies, the Plan has terminated and the benefit received by the individual is nondiscriminatory, or the individual is not one of the Top 25 Highly Compensated Employees.

(b)     In the event of termination of this Plan, the benefit of any highly compensated employee (as defined in Code section 414(q)) is limited to a benefit that is nondiscriminatory under Code section 401(a)(4).

Section 12.09 - Escheat -

If benefits otherwise payable to a Participant or Beneficiary are lost by reason of applicable state law relating to escheat or abandoned property, such benefits shall be considered forfeited with respect to such Participant or Beneficiary.

Section 12.10 - Incompetence or Minority of Payee -

In the event that any benefit is payable to a minor or incompetent; to a person otherwise under legal disability; or to a person who, in the judgment of the Committee, is by reason of illness or other physical or mental incapacity incapable of handling his property, the Committee may apply the whole or any part of such benefit directly to the care, comfort, maintenance, support, education, or use of such person or pay or distribute the whole or any part of such benefit to (a) the parent of such person, (b) the guardian, committee, or other legal representative, wherever appointed, of such person, (c) the person with whom such person resides, (d) any person having the care and control of such person, or (e) such person personally. The receipt by the person to whom any such payment or distribution is so made shall constitute a full and complete discharge of the rights of affected Participants and Beneficiaries under the Plan.

Section 12.11 - Headings -

The headings and subheadings in this Plan have been inserted for convenience of reference only and shall not be dispositive or controlling in construction of the provisions hereof.

Section 12.12 - Construction; Governing Laws -

22762252v.2

Except insofar as Federal law shall govern, the validity and construction of the Plan shall be subject to and governed by the laws of the District of Columbia. The Plan is intended to qualify under section 401(a) of the Code and to comply with the provisions of ERISA and any other applicable laws and regulations; the provisions of the Plan shall be construed to effectuate such intention.

Section 12.13 - All Copies of Plan Deemed Originals -

This Plan may be executed and/or conformed in any number of counterparts, each of which shall be deemed an original.

Section 12.14 - Highly Compensated Employee Definition -

For purposes of all provisions of the Code or the Plan that incorporate by reference the definition of highly compensated employee contained in Code section 414(q), the definition in this Plan of highly compensated employee shall be the definition contained in Code section 414(q), provided that the Committee shall have the power to make any elections available under Code section 414(q). Effective for Plan Years beginning after December 31, 1997, for the purpose of determining who is a highly compensated employee, compensation shall include elective amounts that are not includible in the gross income of the employee by reason of Code section 132(f)(4).

Section 12.15 - Qualified Military Service -

Notwithstanding any provision of the Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code Section 414(u), but except as otherwise provided in the Plan, only to the extent that Section 414(u) requires such contributions, benefits or credits; provided that if the Financial Industry Regulatory Authority, Inc., in its discretion, provides continuing compensation to a Participant during any part of a Participant's Period of Military Service, the Participant's Compensation for such period shall include such continuing compensation; provided further that the Service of a Participant who is serving a Period of Military Service shall include the Participant's period of active duty. Effective January 1, 2007, if the Participant dies while performing qualified military service (as defined in Code Section 414(u)), the Participant's beneficiaries shall be entitled to any additional benefits that are required under Section 414(u) (other than benefit accruals), as determined under the Plan as if the Participant had returned to employment on the day preceding his death and then terminated on the date of his death.

Section 12.16 - Multiple Employer Plan -

To the extent that more than one Employer (within the meaning of the second sentence of Section 1.14) has adopted this Plan (and has not terminated such adoption), this Plan shall be treated as a plan described in Code section 413(c). Notwithstanding the foregoing, this Plan document shall be construed, and the Plan shall be operated, as if all Employers (including Employers that may be separate under the second sentence of Section 1.14) were a single Employer, except to the extent that the law requires otherwise or to the extent that the context clearly requires otherwise.

22762252v.2

Section 12.17 - Offsets -

The Plan shall apply any offset described in Code section 401(a)(13)(C) in the manner described therein.

Section 12.18 - Appendices -

The Appendices to this Plan shall for all purposes be treated as part of this Plan. All provisions of this Plan shall apply with respect to the Appendices except for provisions that (a) are inconsistent with the Appendices and (b) are not, in context, intended to override the Appendices.

Section 12.19 - Optional Forms of Distribution -

All optional forms of benefits that are protected by Code section 411(d)(6) shall be preserved under the Plan to the extent required by applicable law.

## ARTICLE XIII

### Direct Rollovers

Section 13.01 - In General -

Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Article XIII, a Distributee may elect at the time and in the manner prescribed by the Committee, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

Section 13.02 - Special Rules -

For purposes of Section 13.01, the following rules apply:

(a)     Direct Payment.  In the sole discretion of the Committee, a Direct Rollover may be made by any means permitted by Treasury Regulations §§ 1.401(a)(31)-1 Q/A-3, Q/A-4 (or a successor provision).

(b)     Plan Procedures.  The Committee may, in its sole discretion, require, as a condition of making a Direct Rollover, that the Distributee electing the Direct Rollover provide such information or documentation as is permitted under Treasury Regulations §§ 1.401(a)(31)-1 Q/A-6 (or a successor provision).

(c)     Default Procedure.  The Committee may establish a deadline for a Distributee to elect a Direct Rollover, which deadline shall comply with all applicable requirements under the Code.  To the extent permitted by law, such deadline may vary depending on the circumstances of the Distributee.  If a Distributee does not make any election by the applicable deadline, the Distributee shall be deemed to have elected not to have a Direct Rollover made.

(d)    Partial Direct Rollovers. Subject to the other requirements set forth in this Article XIII, a Distributee may elect (i) to have his entire Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover, or (ii) to have any portion of his Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

(e)    Number of Eligible Retirement Plans. Any election to have a Direct Rollover made with respect to an Eligible Rollover Distribution must specify a single Eligible Retirement Plan to which the Direct Rollover shall be made.

(f)    Treatment as a Distribution. For purposes of this Plan, a Direct Rollover with respect to a Distributee shall be treated as a distribution or withdrawal with respect to such Distributee.

(g)    Series of Periodic Payments. If an Eligible Rollover Distribution is one payment in a series of periodic payments, and the Distributee elects to have some or all of such Eligible Rollover Distribution paid to an Eligible Retirement Plan specified by the Distributee in a Direct Roll over; such election shall apply to all subsequent payments in the series; provided that the Distributee is permitted at any time to change the election with respect to subsequent payments in the series; provided further that any such change shall be treated as an election subject to this Section 13.02(g).

(h)    Nonspouse Rollovers. Notwithstanding anything in the Plan to the contrary, effective for distributions after July 7, 2008, the Plan permits nonspouse rollovers described in Code section 402(c)(11). For purposes of this Article XIII, such a nonspouse rollover shall be a Direct Rollover, and the individual who is a designated beneficiary (as defined by Code section 401(a)(9)(E)) of the Employee and who is not the surviving spouse of the Employee shall be a Distributee.

Section 13.03 - Definitions -

(a)    Eligible Rollover Distribution. The term "Eligible Rollover Distribution" has the meaning given such term in Code section 401(a)(31)(D).

(b)    Eligible Retirement Plan. The term "Eligible Retirement Plan" has the meaning given such term in Code section 401(a)(31)(E) (taking into account Code section 401(a)(31)(C)). For distributions made after December 31, 2007, an eligible retirement plan shall also mean a Roth IRA described in Code section 408A(b), subject to any limitations described in Code section 408A(c).

(c)    Distributee. A "Distributee" includes an Employee or former Employee. In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, are Distributees with respect to the interest of the spouse or former spouse.

(d)    Direct Rollover. A "Direct Rollover" is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

59

(e)    Distribution.  A "Distribution" means any payment by the Plan to or on behalf of a Participant or Beneficiary, including a withdrawal by such Participant or Beneficiary.

## ARTICLE XIV

### Effective Dates

#### Section 14.01 - In General -

The provisions of this 2016 Restatement, including those referred to in other Sections of this Article XIV, shall not apply to former Employees who do not have an Hour of Service on or after January 1, 2016, except to the extent required by law or applicable context, or to the extent otherwise provided in the Plan or applicable amendment to the Plan prior to the adoption of this 2016 Plan Amendment and Restatement.

#### Section 14.02 - Qualified Transportation Fringe -

The Plan shall reflect the modifications made by section 314(e) of the Community Renewal Tax Relief Act of 2000 to Code section 415(c)(3)(D) for Limitation Years beginning after December 31, 1997.

#### Section 14.03 - Code Section 417 -

The amendments to Section 8.05 of the Plan with respect to the relationship between the written explanation of the Qualified Joint and Survivor Annuity and a Participant's Annuity Starting Date shall be effective as of January 1, 1996.

#### Section 14.04 - Mortality Table -

Effective for distributions with annuity starting dates on or after December 31, 2002, for purposes of Section 1.02(b), the "applicable mortality table specified in Code section 417(e)(3)" shall be the mortality table set forth in Revenue Ruling 2001-62.  Except as provided in the preceding sentence, effective for distributions with annuity starting dates in calendar year 2002, for purposes of Section 1.02(b), the "applicable mortality table specified in Code section 417(e)(3)" shall be the mortality table set forth in Revenue Ruling 95-6.  These tables have been superseded by subsequent amendments and the new factors are set forth in the Plan.

#### Section 14.05 - Compensation -

Effective for Plan Years and Limitation Years beginning on and after January 1, 1998, for purposes of the treatment of salary reductions pursuant to a cafeteria plan within the meaning of Code section 125 and for purposes of the determination of a Participant's compensation under Section 3.03, Section 12.08, Section 12.14, and other provisions of this Plan, amounts under Code section 125 shall include any amounts not available to a Participant in cash in lieu of group health coverage because the Participant is unable to certify that he or she has other health coverage.  An amount will be treated as an amount under Code section 125 only if the Employing Company does not request or collect information regarding the Participant's other health coverage as part of the enrollment process of the health plan.

ARTICLE XV

The Economic Growth and Tax Relief Reconciliation Act of 2001

Section 15.01 - In General -

This Plan document contains certain amendments to reflect the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"). These amendments are intended as good faith compliance with the requirements of EGTRRA and are to be construed in accordance with EGTRRA and guidance issued thereunder. The EGTRRA amendments are generally effective January 1, 2002, except as provided in this Article XV or unless superseded by subsequent amendments.

Section 15.02 - Limitations on Benefits -

Effective for Participants who have an Hour of Service as an Employee on or after January 1, 2002, Section 3.03 of the Plan shall reflect the modifications to Code section 415(b) set forth in section 611(a) of EGTRRA; provided, however, that such modifications shall only be effective with respect to Limitation Years ending after December 31, 2001. The modifications to Code section 415(b) set forth in section 611(a), including the elimination of Code section 415(b)(2)(F), shall not be taken account with respect to any Participant who does not have an Hour of Service as an Employee on or after January 1, 2002.

Section 15.03 - Increase In Compensation Limit -

The limit on annual Compensation for a Plan Year beginning before January 1, 2002 which may be taken into account in determining benefit accruals after December 31, 2001 shall be determined under the terms of the 2000 Restatement or such earlier version of the Plan, as applicable.

Section 15.04 - Modification of Top-Heavy Rules -

The amendments to Article X shall be effective for purposes of determining whether the Plan is a Top-Heavy Plan and whether the Plan satisfies the minimum benefits and minimum vesting requirements of Code section 416 for Plan Years commencing after December 31, 2001.

Section 15.05 - Direct Rollovers of Distributions -

Effective for distributions after December 31, 2001, Section 13.03 shall reflect the modifications to the definition of Eligible Retirement Plan and Eligible Rollover Distribution set forth in sections 636(b), 641, 642, and 643 of EGTRRA. Thus, for example, a portion of a distribution shall not fail to be an Eligible Rollover Distribution merely because the portion consists of after-tax contributions which are not includible in gross income.

Section 15.06 - Automatic Rollover Distributions -

Effective for distributions occurring on or after March 28, 2005, in the event of a mandatory distribution in excess of $1,000 made in accordance with the provisions of Section

61

5.07, if the Participant does not elect to have such distribution paid directly to an eligible retirement plan specified by the Participant in accordance with Article XIII or to receive the distribution directly, in accordance with Section 5.07 then the Committee shall pay the distribution in a direct rollover to an individual retirement plan designated by the Committee.

FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

By: _____

Date: 12/29/2015

62

APPENDIX A

Special Provisions Applicable to Participants in the American Stock Exchange, Inc. Employees'
Retirement Plan on December 31, 2000

The American Stock Exchange, Inc. Employees' Retirement Plan (the "Exchange Plan"), as in effect on December 31, 2000, was merged into this Plan as of January 1, 2001. The provisions of this Appendix A shall apply in connection with such merger, notwithstanding any provisions elsewhere in the Plan to the contrary.

(1)     Any person who was eligible to participate in the Exchange Plan on December 31, 2000 ("Exchange Participant") shall become a Participant in the Plan on January 1, 2001.

(2)     The accrued pension benefit of each Exchange Participant who is not an Employee on or after January 1, 2001 shall be determined solely in accordance with the provisions of the Exchange Plan as in effect on December 31, 2000.

(3)     The accrued pension benefit of each Exchange Participant who is an Employee on or after January 1, 2001 (an "Active Exchange Participant") shall be determined in accordance with the provisions of the Plan as in effect on the date such person has a Termination of Employment. The following special provisions shall apply to an Active Exchange Participant:

(A)     Accrued Benefit. An Active Exchange Participant's Accrued Benefit under the Plan shall be equal to the sum of amounts described in (i), (ii), and (iii) below.

(i)     The Participant's accrued benefit determined under the terms of the Exchange Plan as in effect on December 31, 2000; provided that Service after December 31, 2000 shall not be taken into account for purposes of determining "Accredited Service" (as defined in the Exchange Plan); and provided further that "Base Pay" (as defined in the Exchange Plan) after December 31, 2000 shall be taken into account but shall not include commissions.

(ii)     One and one-quarter percent (1¼%) of the Participant's Final Average Compensation multiplied by his number of years of Service after December 31, 2000; provided that Compensation prior to January 1, 2001 shall include commissions.

(iii)     .5267% of the Participant's Final Average Compensation in excess of Covered Compensation multiplied by his number of years of Service after December 31, 2000; provided that Compensation prior to January 1, 2001 shall include commissions.

(B)     Actuarial Equivalent. In the case of an Active Exchange Participant who receives a distribution for which the Annuity Starting Date occurs in the Plan Year beginning January 1, 2001, the annual interest rate described in Section 1.02(b)(i) shall be the annual interest rate on 30-year Treasury securities for either the second or third calendar month preceding the first day of the Plan Year during which the Annuity Starting Date occurs, whichever results in the larger distribution.

(C)     Vesting. An Active Exchange Participant (other than Richard F. Syron) shall have a fully vested and nonforfeitable interest in his Accrued Benefit under the Plan if, on

63

the Closing Date, such Participant was an employee of an employer participating in the Exchange Plan and an Exchange Participant. The term "Closing Date" is defined in the Transaction Agreement by and among the National Association of Securities Dealers, Inc., NASD Market Holding Company, the American Stock Exchange, Inc., and the new AMEX LLC, dated as of May 8, 1998. For purposes of determining the fully vested and nonforfeitable interest of all other Active Exchange Participants and for purposes of determining any Active Exchange Participant's eligibility for the early retirement benefits in Section 3(D) below, years of Service prior to January 1, 2001 shall include only years of "Vesting Service" (as defined in the Exchange Plan).

(D)     Special Early Retirement. An Active Exchange Participant who has completed at least ten (10) years of Service, attained Age 55, and had a Termination of Employment may elect to receive that portion of his Accrued Benefit determined under Appendix A(3)(A)(i), commencing on or after the first day of the month following completion of such requirements, reduced by two-twelfths of one percent (2/12 of 1%) for each month between the date benefit payments commence and the first day of the first calendar month after the calendar month in which the Participant attains Age 62.

An Active Exchange Participant who has completed at least five (5) years of Service, attained Age 60, and had a Termination of Employment may elect to receive that portion of his Accrued Benefit determined under Appendix A(3)(A)(i), commencing on or after the first day of the month following completion of such requirements, reduced by two-twelfths of one percent (2/12 of 1%) for each month between the date benefit payments commence and the first day of the first calendar month after the calendar month in which the Participant attains Age 62.

An Active Exchange Participant whose years of Service plus Age total at least seventy (70), who has attained Age 50, and had a Termination of Employment may elect to receive that portion of his Accrued Benefit determined under Appendix A(3)(A)(i), commencing on or after the first day of the month following completion of such requirements, reduced by two-twelfths of one percent (2/12 of 1%) for each month between the date benefit payments commence and the first day of the first calendar month after the calendar month in which the Participant attains Age 62.

An Active Exchange Participant who elects to receive a portion of his Accrued Benefit under any of the Special Early Retirement provisions described above shall be deemed to elect to receive that portion of his Accrued Benefit determined under Appendix A(3)(A)(ii) and (iii) at the same time as the portion of his Accrued Benefit determined under Appendix A(3)(A)(i), provided that the portion of his Accrued Benefit determined under Appendix A(3)(A)(ii) and (iii) shall be reduced for commencement prior to the Participant's Normal Retirement Date as provided in Section 5.03 or Section 7.02, whichever shall apply.

(E)     Forms of Distribution. Pursuant to Section 12.19 of the Plan, all optional forms of benefit that are protected by Code section 411(d)(6) shall be preserved under the Plan to the extent required by applicable law.

(F)     Employee Contributions.  An Active Exchange Participant shall at all times have a vested interest in his Accrued Benefit Derived from Employee Contributions.

An Active Exchange Participant who is eligible to receive a distribution of his benefits may elect to receive an immediate distribution of his Accumulated Contributions and, if such Participant is vested in his Accrued Benefit, receive his Accrued Benefit Derived From Employer Contributions in any manner provided under the terms of the Plan.  If the present value of the Participant's nonforfeitable Accrued Benefit exceeds $5,000, unless such Participant makes a Qualified Election to have distribution of his Accumulated Contributions made as a single lump sum payment, distribution of his Accumulated Contributions shall be made in the form of a Qualified Joint and Survivor Annuity.

There shall be paid with respect to each Active Exchange Participant the difference between his Accumulated Contributions and the sum of all payments made under the Plan to such Participant, his spouse, his spouse's estate, his Beneficiary, the Beneficiary's estate, and any contingent annuitant.  Such payment shall be made as soon as administratively feasible after the death of the last person to whom the Active Exchange Participant's benefits are due.  Such payments shall be made to the persons described in Section 5.4 of the Exchange Plan.

No employee contributions to the Plan are permitted.

For purposes of this Appendix, the following definitions shall apply:

(i)     "Accumulated Contributions" shall mean the aggregate of an Active Exchange Participant's contributions to the Exchange Plan with interest credited under the terms of the Exchange Plan through December 31, 2000, plus Interest credited from January 1, 2001 on such amounts to the first day of the month immediately preceding or coincident with the date payment under the Plan is first made to the Participant, or his Beneficiary, spouse, contingent annuitant or estate, whichever is earliest.  For purposes of determining the amount of a Participant's Accrued Benefit, Interest shall be computed up to a Participant's Normal Retirement Date.

(ii)    "Interest" shall mean interest credited at 120% of the Federal mid-term rate (as in effect under Section 1274 of the Code for the first month of the Plan Year) compounded annually through the applicable determination date, and shall be the applicable interest rate determined under Code section 417(e)(3) for the period thereafter through the Participant's Normal Retirement Date.  The applicable determination date shall be the date on which distribution of such benefit commences as provided in Proposed Treasury Regulation section 1.411(c)-1.

(iii)   "Accrued Benefit Derived From Employee Contributions" shall mean, as of any applicable determination date, an amount equal to a Participant's Accumulated Contributions expressed as an annual benefit payable for the Participant's life commencing at the Participant's Normal Retirement Date, using the applicable interest rate and applicable mortality table under Code section 417(e)(3) as of the applicable determination date.

65

(iv) "Accrued Benefit Derived From Employer Contributions" shall mean, as of any applicable determination date, the excess of the annual amount of a Participant's Accrued Benefit as of such date over his Accrued Benefit Derived From Employee Contributions.

(G) Supplemental Retirement Allowance. A supplemental retirement allowance shall be paid with respect to each Active Exchange Participant who elected a direct payment (an "MSP Payment") to the Exchange Plan from the American Stock Exchange, Inc. 401(k) Plan (formerly, the Matched Savings Plan) under Section 4.3C of the Exchange Plan. Such supplemental retirement allowance shall be actuarially equivalent to the MSP Payment and shall be payable to the Participant in the same form and at the same time as the portion of his Accrued Benefit determined under Appendix A(3)(A)(i). For all purposes, including any reduction for commencement before the Participant's Normal Retirement Date, actuarial equivalence shall be determined using the modified 1983 Group Annuity Mortality Table provided in Revenue Ruling 95-6 and the annual interest rate on 30-year Treasury securities for the second month prior to the date the Participant's benefits are to commence.

Notwithstanding anything herein to the contrary, there shall be paid with respect to each Exchange Participant an amount equal to the excess of the MSP Payment over the sum of all payments made under the Plan to such Participant, his spouse, his spouse's estate, his Beneficiary, the Beneficiary's estate, and any contingent annuitant. Such payment shall be made as soon as administratively feasible after the death of the last person as to whom the Exchange Participant's benefits are due and to the persons described in Section 5.4 of the Exchange Plan.

No MSP Payments to the Plan are permitted.

(H) Affected Employees of The Nasdaq Stock Market, Inc. Notwithstanding anything herein to the contrary, the Accrued Benefit of a Participant who (I) was a former Participant in the Exchange Plan (as defined in Section 3.3 of the Exchange Plan), (II) terminated employment with the American Stock Exchange, LLC after December 31, 1990, and (III) was an Employee of The Nasdaq Stock Market, Inc. on January 1, 2001 (an "Affected Employee of the Nasdaq Stock Market, Inc.") shall be equal to the sum of the amounts described in (i), (ii), and (iii) below.

(i) The Participant's accrued benefit determined under the terms of the Exchange Plan as in effect on December 31, 2000; provided that Service after such Participant commenced employment with The Nasdaq Stock Market, Inc. shall not be taken into account for purposes of determining "Accredited Service" (as defined in the Exchange Plan); and provided further that "Base Pay" (as defined in the Exchange Plan) after such Participant commenced employment with The Nasdaq Stock Market, Inc. shall be taken into account but shall not include commissions.

(ii) One and one-quarter percent (1¼%) of the Participant's Final Average Compensation multiplied by his number of years of Service after the Participant commenced employment with The Nasdaq Stock Market, Inc.; provided that Compensation prior to the date such Participant terminated employment with the American Stock Exchange, Inc. shall include commissions.

66

(iii)    .5267% of the Participant's Final Average Compensation in excess of Covered Compensation multiplied by his number of years of Service after the Participant commenced employment with The Nasdaq Stock Market, Inc.; provided that Compensation prior to the date such Participant terminated employment with the American Stock Exchange, Inc. shall include commissions.

Appendix A(3)(D) shall apply to an Affected Employee of the Nasdaq Stock Market, Inc., provided that references to Appendix A(3)(A) shall be treated as references to this Appendix A(3)(H).

(4)    Any election made by an Exchange Participant under the Exchange Plan shall be taken into account in the same manner as an election made under the Plan.

(5)    Effective as of January 1, 2001, all assets and liabilities of the Exchange Plan shall become assets and liabilities of the Plan.

(6)    Notwithstanding any other provision of this Appendix, for purposes of determining the benefits payable to the Participant under the Plan (including this Appendix), the limitations of Section 2.06(b) of the Plan shall apply to all individuals described therein, and those limitations (as appropriate) shall also be applicable to the defined terms in this Appendix to the extent they reflect post-2011 service or compensation.

APPENDIX B

Special Provisions Applicable By Reason of the Reduction In Force at The Nasdaq Stock Market, Inc. on June 26, 2001

This Appendix B shall apply to any Participant who (a) had a Termination of Employment by reason of the reduction in force at The Nasdaq Stock Market, Inc. on June 26, 2001, (b) attained Age 50 on or before June 26, 2001, and (c) executed a timely General Release and Separation Agreement in connection with such Termination of Employment which describes the benefits provided by this Appendix B.

A Participant to whom this Appendix B applies who has completed fewer than five (5) years of Service (determined without regard to this Appendix) shall be considered (a) to have completed five (5) years of Service for purposes of determining such Participant's vested interest under Section 7.02 and (b) in the case of Participant who attained Age 63 on or before June 26, 2001, to have attained Normal Retirement Age as of June 26, 2001 for purposes of Section 5.07 and the first sentence of Section 7.02.

A Participant to whom this Appendix applies who has completed at least five (5) years of Service (determined without regard to this Appendix) shall be considered (a) for purposes of determining eligibility for an Early Retirement under Section 5.03, (i) to have completed the greater of such Participant's actual years of Service or ten (10) years of Service and (ii) to have attained the greater of such Participant's actual Age or Age 55; (b) for purposes of determining "the date benefit payments commence" under Section 5.03, to have attained the greater of such Participant's actual Age or Age 55; and (c) for purposes of computing the amount of such Participant's Accrued Benefit under Section 1.01 or Appendix A(3)(A), to have completed the greater of such Participant's actual years of Service or ten (10) years of Service, provided that any years of Service credited under Section 1.01 or Appendix A(3)(A) solely by reason of this clause (c) shall be treated as years of Service after December 31, 2000.

APPENDIX C

Special Provisions Applicable to Rehired Participants

This Appendix C shall apply to any Participant who (a) is an Employee on July 1, 2003, (b) has incurred a Period of Severance that ended before July 1, 2003 with a length that equaled or exceeded the greater of (i) five (5) years or (ii) the length of the Participant's Service before the Period of Severance, (c) has at least five (5) years of Service prior to such Period of Severance (determined without regard to Section 1.34(c)), and (d) has not been a highly compensated employee within the meaning of Code section 414(q) (or had a similar status under Code section 401(a)(4)) at any time. In the case of a Participant to whom this Appendix C applies, Service shall include any Service otherwise excluded under Section 1.34(c) by reason of the Period of Severance described in subsection (b) above.

69

APPENDIX D

This Appendix D shall apply notwithstanding any other provision of the Plan (including any Appendices thereto) to the contrary with respect to each Participant who is a Nasdaq Participant (as such term is defined in this Appendix D) and with respect to each Beneficiary or alternate payee, as such term is defined in Code section 414(p) of each such Nasdaq Participant.

I.      For purposes of this Appendix D, terms not herein defined shall have the meaning ascribed to them in the Plan (including the provisions of Appendix A, Appendix B and Appendix C thereof); and the following capitalized terms shall have the meanings provided herein:

(A)     Career Average Compensation -

Shall mean:

(i)     with respect to a Nasdaq Participant whose Termination of Employment occurs on or after November 1, 2003 and prior to January 1, 2009, the greater of (x) the monthly average of the Compensation earned by such Nasdaq Participant during the last sixty (60) consecutive months of such Nasdaq Participant's Service immediately prior to such Nasdaq Participant's Termination of Employment, or (y) such Nasdaq Participant's Final Average Compensation determined as of October 31, 2003, as if such Nasdaq Participant had a Termination of Employment on that date.  In the case of a Nasdaq Participant with less than sixty (60) months of Service, the reference to "sixty (60)" in the prior sentence shall be deemed to be a reference to such Participant's number of months of Service.

(ii)    with respect to a Nasdaq Participant whose Termination of Employment occurs on or after January 1, 2009, the greater of (x) the monthly average of the Compensation earned by such Nasdaq Participant during all periods of such Nasdaq Participant's Service on and after January 1, 2004 or (y) such Nasdaq Participant's Final Average Compensation determined as of October 31, 2003, as if such Nasdaq Participant had a Termination of Employment on that date.

(iii)   with respect to a NASD Transferee whose Termination of Employment occurs on or after November 1, 2003 and prior to January 1, 2009, the greater of (x) the monthly average of the Compensation earned by such NASD Transferee during the last sixty (60) consecutive months of such NASD Transferee's Service immediately prior to his or her Termination of Employment, or (y) such NASD Transferee's Final Average Compensation determined as of the day immediately prior to his or her Transfer Date, as if such NASD Transferee had a Termination of Employment on that date.  In the case of a NASD Transferee with less than sixty (60) months of Service, the reference to "sixty (60)" in the prior sentence shall be deemed to be a reference to such NASD Transferee's number of months of Service.

(iv)    with respect to a NASD Transferee whose Termination of Employment occurs on or after January 1, 2009, the greater of (x) the monthly average of Compensation earned by such NASD Transferee during all period of his or her Service on and after January 1, 2004 or (y) such NASD Transferee's Final Average Compensation determined as of the day immediately prior to his or her Transfer Date, as if such NASD Transferee had a Termination of Employment on that date.

70

22762252v.2

The following additional rules shall apply in determining a Nasdaq Participant's Career Average Compensation:

Where a Nasdaq Participant or NASD Transferee, as applicable, is an Employee, but is on an authorized leave of absence described in Section 7.06(b) or away from active employment pursuant to the Selective Service Act or similar act, he or she shall be deemed to be paid Compensation at the rate in effect for him or her on the last pay day prior to his or her beginning such leave or Service and shall be deemed to be in a period of Service while on such leave. Compensation shall not be deemed to be paid under the preceding sentence for a period in excess of the period permitted under Code section 414(s).

Following the Severance Date of a Nasdaq Participant who subsequently is credited with an Hour of Service for the performance of duties for The Nasdaq Stock Market, Inc., for purposes of this Appendix D, such Nasdaq Participant's Period of Severance shall be disregarded in computing such Participant's Career Average Compensation.

    (B)   <u>Nasdaq Participant</u> -

Shall mean an individual (i) who is an Employee under the provisions of Section 1.13(a), (b) and (c), of the Plan, (ii) who is treated for purposes of this Plan, in accordance with Section 1.13(d) of the Plan, as employed by The Nasdaq Stock Market, Inc. on or after October 31, 2003, and (iii) whose Termination of Employment is on or after October 31, 2003.

    (C)   <u>NASD Transferee</u> -

Shall mean an individual who (i) prior to becoming an Employee treated for purposes of this Plan in accordance with Section 1.13(d) of the Plan, as employed by The Nasdaq Stock Market, Inc., is a Participant by virtue of being an Employee treated in accordance with Section 1.13(d) as being employed by the National Association of Securities Dealers, Inc. or any entity required to be aggregated with the National Association of Securities Dealers, Inc. pursuant to Code section 414(b), (c), (m) or (o) and (ii) thereafter becomes a Nasdaq Participant on or after November 1, 2003.

    (D)   <u>Transfer Date</u> -

Shall mean the date an individual who is a Participant, but is not a Nasdaq Participant, first becomes a Nasdaq Participant.

II.   <u>Accrued Benefit</u>. Notwithstanding the provisions of Section 1.01 of the Plan to contrary, a Nasdaq Participant's Accrued Benefit under the Plan shall be equal to the sum of the amounts described in Section II(A), (B), and (C) hereof subject to the provisions of Section II(D) and (E) hereof:

    (A)   The amount described in this Section (A) shall be equal to the product of the amount described in (i) multiplied by the excess of the amount described in (ii) over the amount described in (iii):

(i) A fraction the numerator of which is the Nasdaq Participant's Career Average Compensation and the denominator of which is the Nasdaq Participant's Final Average Compensation as of December 31, 1988; provided that if such fraction would be less than (1), the fraction shall be deemed to equal one (1).

(ii) Two percent (2%) of the Nasdaq Participant's Former Final Average Compensation as of December 31, 1988, multiplied by his or her number of years of Service as of December 31, 1988 not to exceed thirty (30) years.

(iii) Except as otherwise provided in the last sentence of this subsection (iii), the product of: two and one-half percent (2½%) of the Nasdaq Participant's Primary Social Security Benefit, determined as if the date of determination were December 31, 1988, multiplied by his or her number of years of Service as of December 31, 1988, not to exceed thirty (30) years, multiplied by a fraction, the numerator of which is the Nasdaq Participant's Service as of December 31, 1988 and the denominator of which is the Service the Nasdaq Participant would have if he or she lived and remained in the employment of the Employer through his or her Normal Retirement Date. If, with respect to a Nasdaq Participant, the amount determined under this subsection (iii) (without regard to this sentence) exceeds fifty percent (50%) of the amount determined under (ii) of this Section II(A), the amount determined under the preceding sentence shall be deemed to equal fifty (50%) of the amount determined under subsection (ii) of this Section II(A).

(B) One and one-quarter percent (1¼%) of the Nasdaq Participant's Career Average Compensation multiplied by his or her number of years of Service after December 31, 1988.

(C) .5267% of the Nasdaq Participant's Career Average Compensation in excess of Covered Compensation, multiplied by his or her number of years of Service after December 31, 1988.

(D) Code section 401(1) and the regulations thereunder shall apply only to benefits that accrue in Plan Years beginning after December 31, 1988, and shall not apply to Section II(A) hereof.

(E) In no event will a Nasdaq Participant's Accrued Benefit be less than such Nasdaq Participant's Accrued Benefit determined under Section 1.01 of the Plan as in effect on October 31, 2003 and without regard to the provisions of this Appendix D as if he or she had a Termination of Employment with the Employer on that date.

III. Accrued Benefit - Special Provisions Applicable to Participants in the American Stock Exchange, Inc. Employees' Retirement Plan on December 31, 2000.

Notwithstanding the provisions of Appendix A to the contrary, the Accrued Benefit under the Plan of a Nasdaq Participant who is an Active Exchange Participant, shall be equal to the sum of the amounts described in Section III(A), (B), and (C) of this Appendix D subject to the provisions of Section III(D):

(A) The Nasdaq Participant's accrued benefit determined under the terms of the Exchange Plan as in effect on December 31, 2000 except that the term Final Average

72

Compensation (as defined in the Exchange Plan) shall be replaced with the term Career Average Compensation (as defined in Section I of this Appendix D, as applicable) except that the term Service in Section I shall be replaced with the term "Accredited Service" (as defined in the Exchange Plan); the term Compensation in Section I shall be replaced with the term "Base Pay" (as defined in the Exchange Plan), and the term Final Average Compensation in Section I shall be replaced with the term "Final Average Compensation" (as defined in the Exchange Plan); provided that Service after December 31, 2000 shall not be taken into account for purpose of determining "Accredited Service" (as defined in the Exchange Plan); and provided further that "Base Pay" (as defined in the Exchange Plan) after December 31, 2000 shall be taken into account but shall not include commissions.

(B) One and one-quarter percent (1¼%) of the Nasdaq Participant's Career Average Compensation multiplied by his or her number of years of Service after December 31, 2000; provided that Compensation prior to January 1, 2001 shall include commissions.

(C) .5267% of the Nasdaq Participant's Career Average Compensation in excess of Covered Compensation multiplied by his or her number of years of Service after December 31, 2000; provided that Compensation prior to January 1, 2001, shall include commissions.

(D) In no event will the Accrued Benefit of a Nasdaq Participant who is an Active Exchange Participant be less than such Nasdaq Participant's Accrued Benefit determined under Appendix A as in effect on October 31, 2003 and without regard to the provisions of this Appendix D as if he or she had a Termination of Employment with the Employer on that date.

IV. Accrued Benefit - Special Provisions Applicable to Affected Employees of the Nasdaq Stock Market, Inc.

Notwithstanding the provisions of Appendix A to the contrary, the Accrued Benefit under the Plan of a Nasdaq Participant who (i) was a former Participant in the Exchange Plan (as defined in Section 3.3 of the Exchange Plan), (ii) terminated employment with the American Stock Exchange, LLC after December 31, 1990, and (iii) was an Employee of The Nasdaq Stock Market, Inc. on January 1, 2001 (an "Affected Employee of the Nasdaq Stock Market, Inc.") shall be equal to the sum of the amounts described in Section IV(A), (B), and (C), hereof subject to the provisions of Section IV(D):

(A) The Nasdaq Participant's accrued benefit determined under the terms of the Exchange Plan as in effect on December 31, 2000 except that the term Final Average Compensation (as defined in the Exchange Plan) shall be replaced with the term Career Average Compensation (as defined in Section I of this Appendix D, as applicable) except that the term Service in Section I shall be replaced with the term "Accredited Service" (as defined in the Exchange Plan); the term Compensation in Section I shall be replaced with the term "Base Pay" (as defined in the Exchange Plan), and the term Final Average Compensation in Section I shall be replaced with the term "Final Average Compensation" (as defined in the Exchange Plan); provided that Service after such Nasdaq Participant commenced employment with The Nasdaq Stock Market, Inc. shall not be taken into account for purposes of determining "Accredited Service" (as defined in the Exchange Plan); provided further that "Base Pay" (as defined in the

Exchange Plan) after such Nasdaq Participant commenced employment with The Nasdaq Stock Market, Inc. shall be taken into account but shall not include commissions.

(B)     One and one-quarter percent (1¼%) of the Nasdaq Participant's Career Average Compensation multiplied by his or her number of years of Service after such Nasdaq Participant commenced employment with The Nasdaq Stock Market, Inc.; provided that Compensation prior to the date such Nasdaq Participant terminated employment with the American Stock Exchange, LLC shall include commissions.

(C)     .5267% of the Nasdaq Participant's Career Average Compensation in excess of Covered Compensation multiplied by his or her number of years of Service after December 31, 2000 after such Nasdaq Participant commenced employment with The Nasdaq Stock Market, Inc.; provided that Compensation prior to the date such Nasdaq Participant terminated employment with the American Stock Exchange, LLC shall include commissions.

(D)     In no event will the Accrued Benefit of a Nasdaq Participant who is an Active Exchange Participant be less than such Nasdaq Participant's Accrued Benefit determined under Appendix A as in effect on October 31, 2003 and without regard to the provisions of this Appendix D as if he or she had a Termination of Employment with the Employer on that date.

V.     Notwithstanding any other provision of this Appendix, for purposes of determining the benefits payable to the Participant under the Plan (including this Appendix), the limitations of Section 2.06(b) of the Plan shall apply to all individuals described therein and those limitations (as appropriate) shall also be applicable to the defined terms in this Appendix to the extent they reflect post-2011 service and compensation.

74

APPENDIX E

Special Provisions Applicable to ASE Participants

Background:

Effective as of February 7, 2004, the National Association of Securities Dealers, Inc. ("NASD") entered into a Transaction Agreement among NASD, New NASD Holding, Inc., American Stock Exchange, LLC ("ASE"), and The AMEX Membership Corporation (the "Transaction Agreement"). Pursuant to the Transaction Agreement, among other things, on and after the Closing Date (as such term is defined in the Transaction Agreement), ASE Participants (as defined below) will accrue benefits under the ASE Pension Plan in accordance with, and to the extent provided under, the terms of the ASE Pension Plan. NASD also entered into a Regulatory Services Agreement dated as of April 30, 2004 between NASD and ASE (the "RSA"), providing, among other things, that certain ASE employees will become employees of NASD.

Provisions:

1.      This Appendix E shall apply notwithstanding any other provision of the Plan (including any appendices thereto) to the contrary with respect to each participant for whom a transfer of assets under Code section 414(1) from this Plan is specified in accordance with the Transaction Agreement and the RSA (each, an "ASE Participant"), and with respect to each Beneficiary or alternate payee, as such term is defined in Code section 414(p), of each such ASE Participant.

2.      Effective as of the Closing Date (as such term is defined in the Transaction Agreement):

(i)     For the purposes of the transfer described in clause (iii) below, each ASE Participant's Accrued Benefit and Service under this Plan shall be equal to such ASE Participant's Accrued Benefit and Service, respectively, as of such Closing Date;

(ii)    No ASE Participant shall accrue any additional benefits or be credited with any additional Service under this Plan after such Closing Date, including, without limitation, either by reason of increases in compensation or service with any entity after such Closing Date;

(iii)   Liabilities for all benefits under this Plan with respect to ASE Participants (including their Beneficiaries and alternate payees), together with the assets attributable to such liabilities, shall be transferred to the qualified retirement plan sponsored and maintained by ASE for the benefit of the ASE Participants and their Beneficiaries and alternate payees (the "ASE Pension Plan"), the amount of such assets to be transferred to the determined in accordance with the provisions of Section 6.09 of the Transaction Agreement; and

(iv)    None of ASE, The AMEX Membership Corporation, or any of their respective Affiliates (as defined in the Transaction Agreement) shall be an Employer participating in this Plan.

22762252v.2

3.     The provisions of this Appendix E shall be effective only upon the closing and consummation of the transactions contemplated in the Transaction Agreement.

22762252v.2

APPENDIX F

Special Provisions Applicable to Nasdaq Participants

Background:

Effective as of December 6, 2005, the National Association of Securities Dealers, Inc. ("NASD") entered into a Memorandum of Understanding ("MOU") with the Nasdaq Stock Market, Inc. ("Nasdaq") regarding the termination of Nasdaq's participation in the Plan and the transfer of assets and liabilities associated with Nasdaq's current and former employees from the Plan to a tax-qualified single employer defined benefit pension plan maintained and sponsored by Nasdaq Pension Plan (the "Nasdaq Pension Plan"). The MOU provides that the Nasdaq Pension Plan shall assume all liabilities associated with Nasdaq's current and former employees from the Plan effective January 1, 2006.

Provisions:

1.      This Appendix F shall apply notwithstanding any other provision of the Plan (including any Appendices thereto) to the contrary with respect to each Participant for whom a transfer of assets under Code section 414(1) from this Plan is specified in accordance with the MOU (each, a "Nasdaq Participant"), and with respect to each Beneficiary or alternate payee, as such term is defined in Code section 414(p), of each Nasdaq Participant.

2.      Effective as of 12:59 p.m. on December 31, 2005:

        (i)     For the purposes of the transfer described in clause (iii) below, each Nasdaq Participant's Accrued Benefit and Service under this Plan shall be equal to such Nasdaq Participant's Accrued Benefit and Service, respectively, as of 12:59 p.m. on December 31, 2005;

        (ii)    No Nasdaq Participant shall accrue any additional benefits or be credited with any additional Service under this Plan after December 31, 2005, including, without limitation, either by reason of increases in compensation or service with any entity after December 31, 2005;

        (iii)   Liabilities for all benefits under this Plan with respect to the Nasdaq Participants (including their Beneficiaries and alternate payees), together with the assets attributable to such liabilities, shall be transferred to the Nasdaq Pension Plan sponsored and maintained by Nasdaq for the benefit of Nasdaq Participants and their Beneficiaries and alternate payees, the amount of such assets to be transferred to be determined in accordance with the provisions of the MOU and any exhibits thereto; and

        (iv)    Neither Nasdaq nor its affiliates shall be an Employer participating in this Plan.

APPENDIX G

Special Provisions Applicable by Reason of the
2008 Voluntary Retirement Program

This Appendix G shall apply to any Participant who is an Eligible Employee (as defined in the 2008 Voluntary Retirement Program Summary).

A Participant to whom this Appendix G applies who has completed fewer than five (5) years of Service (as defined in Section 1.34 of this Plan and determined without regard to this Appendix G) shall be considered to be 100% vested in his or her Accrued Benefit under this Plan as of his or her Retirement Date (as defined in the 2008 Voluntary Retirement Program Summary).

A Participant to whom this Appendix G applies also shall be credited with three (3) additional years of Service under this Plan for purposes of (a) determining eligibility for an Early Retirement under Section 5.03, (b) determining entitlement to receive a monthly retirement benefit as specified in Section 7.02, and (c) computing the amount of such Participant's Accrued Benefit under Section 1.01 or Appendix A(3)(A), provided that any years of Service credited under Section 1.01 or Appendix A(3)(A) solely by reason of this clause (c) shall be treated as years of Service after December 31, 2000.

No Participant shall be treated as older than he or she actually is for any purpose under this Plan as a result of such Participant's status as an Eligible Employee (as defined in the 2008 Voluntary Retirement Program Summary).

If a Participant retires under the 2008 Voluntary Retirement Program and elects during 2009 to receive all or 50% of his or her benefit under this Plan in a single lump sum payment, the pre-2009 portion of such benefit shall be determined under the otherwise applicable terms of this Plan, except that such portion shall be calculated using assumptions that are no less favorable to such Participant than those that would have applied if the payment had been made during 2008. The pre-2009 lump sum portion of such benefit is the portion that would have been paid if such Participant had received his or her benefit on December 31, 2008.

Following a Participant's Retirement Date (as defined in the 2008 Voluntary Retirement Program Summary), such Participant shall cease to accrue any additional benefits under this Plan.

78

APPENDIX H

Special Provisions Applicable by Reason of the
2013 Voluntary Retirement Program

This Appendix H shall apply to any Participant who is an Eligible Employee (as defined in the 2013 Voluntary Retirement Program Summary) who is not a DC Choice Participant (as defined in the Plan).

A Participant to whom this Appendix H applies who has completed fewer than five (5) years of Service (as defined in Section 1.34 of this Plan and determined without regard to this Appendix H) shall be considered to be 100% vested in his or her Accrued Benefit under this Plan as of his or her Retirement Date (as defined in the 2013 Voluntary Retirement Program Summary).

A Participant to whom this Appendix H applies also shall be credited with two (2) additional years of Service under this Plan for purposes of (a) determining eligibility for an Early Retirement under Section 5.03, (b) determining entitlement to receive a monthly retirement benefit as specified in Section 7.02, and (c) computing the amount of such Participant's Accrued Benefit under Section 1.01 or Appendix A(3)(A); provided that any years of Service credited under Section 1.01 or Appendix A(3)(A) solely by reason of this clause (c) shall be treated as years of Service after December 31, 2000.

No Participant shall be treated as older than he or she actually is for any purpose under this Plan as a result of such Participant's status as an Eligible Employee (as defined in the 2013 Voluntary Retirement Program Summary).

If a Participant retires under the 2013 Voluntary Retirement Program and elects under the terms of the Plan during 2014 to receive all or 50% of his or her benefit under this Plan in a single lump sum payment, with such benefit paid in 2014, the lump sum portion of his benefit shall be determined under the otherwise applicable terms of this Plan, except that such lump sum portion shall be calculated using assumptions that are no less favorable to such Participant than those that would have applied if the payment had been made during 2013.

A Disabled Participant (as defined in the Plan) who is an Eligible Employee shall be determined to have elected, for purposes of Section 5.04, to cease to furnish proof of continued disability and to end his/her Disability Period as of his/her Retirement Date. Accordingly, such Participant shall be treated as having a Termination of Employment on his/her Retirement Date. Such Participant shall be entitled to elect to receive benefits on or after his/her Retirement Date under Sections 5.01, 5.02 or 5.03 (if otherwise eligible), or pursuant to Section 7.02, as applicable.

Following a Participant's Retirement Date (as defined in the 2013 Voluntary Retirement Program Summary), such Participant shall cease to accrue any additional benefits under this Plan.

22762252v.2

**APPENDIX I**

**Benefit Limitations Under § 436 of the Internal Revenue Code**

Limitations Applicable If the Plan's Adjusted Funding Target Attainment Percentage Is
Less Than 80 Percent or if the Plan Sponsor Is In Bankruptcy

1.      Limitations Applicable If the Plan's Adjusted Funding Target Attainment
Percentage Is Less Than 80 Percent, But Not Less Than 60 Percent. Notwithstanding any other
provisions of the Plan, if the Plan's adjusted funding target attainment percentage for a Plan Year
is less than 80 percent (or would be less than 80 percent to the extent described in Section 1(b)
below) but is not less than 60 percent, then the limitations set forth in this Section 1 apply.

(a)      50 Percent Limitation on Single Sum Payments, Other Accelerated Forms
of Distribution, and Other Prohibited Payments. A Participant or beneficiary is not
permitted to elect, and the Plan shall not pay, a single sum payment or other optional
form of benefit that includes a prohibited payment with an annuity starting date on or
after the applicable section 436 measurement date, and the Plan shall not make any
payment for the purchase of an irrevocable commitment from an insurer to pay benefits
or any other payment or transfer that is a prohibited payment, unless the present value of
the portion of the benefit that is being paid in a prohibited payment does not exceed the
lesser of:

(i)      50 percent of the present value of the benefit payable in the optional
form of benefit that includes the prohibited payment; or

(ii)      100 percent of the PBGC maximum benefit guarantee amount (as
defined in § 1.436-1(d)(3)(iii)(C) of the Treasury Regulations).

The limitation set forth in this Section 1(a) does not apply to any payment of a benefit
which under § 411(a)(11) of the Internal Revenue Code may be immediately distributed
without the consent of the Participant. If an optional form of benefit that is otherwise
available under the terms of the Plan is not available to a Participant or beneficiary as of
the annuity starting date because of the application of the requirements of this Section
1(a), the Participant or beneficiary is permitted to elect to bifurcate the benefit into
unrestricted and restricted portions (as described in § 1.436-1(d)(3)(iii)(D) of the
Treasury Regulations). The Participant or beneficiary may also elect any other optional
form of benefit otherwise available under the Plan at that annuity starting date that would
satisfy the 50 percent/PBGC maximum benefit guarantee amount limitation described in
this Section 1(a), or may elect to defer the benefit in accordance with any general right to
defer commencement of benefits under the Plan.

(b)      Plan Amendments Increasing Liability for Benefits. No amendment to the
Plan that has the effect of increasing liabilities of the Plan by reason of increases in
benefits, establishment of new benefits, changing the rate of benefit accrual, or changing
the rate at which benefits become nonforfeitable shall take effect in a Plan Year if the
adjusted funding target attainment percentage for the Plan Year is:

80

(i)     Less than 80 percent; or

(ii)    80 percent or more, but would be less than 80 percent if the benefits attributable to the amendment were taken into account in determining the adjusted funding target attainment percentage.

The limitation set forth in this Section 1(b) does not apply to any amendment to the Plan that provides a benefit increase under a Plan formula that is not based on compensation, provided that the rate of such increase does not exceed the contemporaneous rate of increase in the average wages of Participants covered by the amendment.

2.      Limitations Applicable If the Plan's Adjusted Funding Target Attainment Percentage Is Less Than 60 Percent. Notwithstanding any other provisions of the Plan, if the Plan's adjusted funding target attainment percentage for a Plan Year is less than 60 percent (or would be less than 60 percent to the extent described in Section 2(b) below), then the limitations in this Section 2 apply.

(a)     Single Sums, Other Accelerated Forms of Distribution, and Other Prohibited Payments Not Permitted. A Participant or beneficiary is not permitted to elect, and the Plan shall not pay, a single sum payment or other optional form of benefit that includes a prohibited payment with an annuity starting date on or after the applicable section 436 measurement date, and the Plan shall not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment. The limitation set forth in this Section 2(a) does not apply to any payment of a benefit which under § 411(a)(11) of the Internal Revenue Code may be immediately distributed without the consent of the Participant.

(b)     Shutdown Benefits and Other Unpredictable Contingent Event Benefits Not Permitted to Be Paid. An unpredictable contingent event benefit with respect to an unpredictable contingent event occurring during a Plan Year shall not be paid if the adjusted funding target attainment percentage for the Plan Year is:

(i)     Less than 60 percent; or

(ii)    60 percent or more, but would be less than 60 percent if the adjusted funding target attainment percentage were redetermined applying an actuarial assumption that the likelihood of occurrence of the unpredictable contingent event during the Plan Year is 100 percent.

(c)     Benefit Accruals Frozen. Benefit accruals under the Plan shall cease as of the applicable section 436 measurement date. In addition, if the Plan is required to cease benefit accruals under this Section 2(c), then the Plan is not permitted to be amended in a manner that would increase the liabilities of the Plan by reason of an increase in benefits or establishment of new benefits.

22762252v.2

3. <u>Limitations Applicable If the Plan Sponsor Is In Bankruptcy.</u> Notwithstanding any other provisions of the Plan, a Participant or beneficiary is not permitted to elect, and the Plan shall not pay, a single sum payment or other optional form of benefit that includes a prohibited payment with an annuity starting date that occurs during any period in which the Plan sponsor is a debtor in a case under title 11, United States Code, or similar Federal or State law, except for payments made within a Plan Year with an annuity starting date that occurs on or after the date on which the Plan's enrolled actuary certifies that the Plan's adjusted funding target attainment percentage for that Plan Year (determined, effective January 1, 2015, by not taking into account any adjustment of segment rates under Code Section 430(h)(2)(C)(iv)) is not less than 100 percent. In addition, during such period in which the Plan sponsor is a debtor, the Plan shall not make any payment for the purchase of an irrevocable commitment from an insurer to pay benefits or any other payment or transfer that is a prohibited payment, except for payments that occur on a date within a Plan Year that is on or after the date on which the Plan's enrolled actuary certifies that the Plan's adjusted funding target attainment percentage for that Plan Year is not less than 100 percent. The limitation set forth in this Section 3 does not apply to any payment of a benefit which under § 411(a)(11) of the Internal Revenue Code may be immediately distributed without the consent of the Participant.

4. <u>Provisions Applicable After Limitations Cease to Apply.</u>

(a) <u>Resumption of Prohibited Payments.</u> If a limitation on prohibited payments under Section 1(a), Section 2(a), or Section 3 applied to the Plan as of a section 436 measurement date, but that limit no longer applies to the Plan as of a later section 436 measurement date, then that limitation does not apply to benefits with annuity starting dates that are on or after that later section 436 measurement date.

(b) <u>Resumption of Benefit Accruals.</u> If a limitation on benefit accruals under Section 2(c) applied to the Plan as of a section 436 measurement date, but that limitation no longer applies to the Plan as of a later section 436 measurement date, then benefit accruals shall resume prospectively and that limitation does not apply to benefit accruals that are based on service on or after that later section 436 measurement date, except as otherwise provided under the Plan. The Plan shall comply with the rules relating to partial years of participation and the prohibition on double proration under Department of Labor regulation 29 CFR § 2530.204-2(c) and (d).

(c) <u>Shutdown and Other Unpredictable Contingent Event Benefits.</u> If an unpredictable contingent event benefit with respect to an unpredictable contingent event that occurs during the Plan Year is not permitted to be paid after the occurrence of the event because of the limitation of Section 2(b), but is permitted to be paid later in the same Plan Year (as a result of additional contributions or pursuant to the enrolled actuary's certification of the adjusted funding target attainment percentage for the Plan Year that meets the requirements of § 1.436-1(g)(5)(ii)(B) of the Treasury Regulations), then that unpredictable contingent event benefit shall be paid, retroactive to the period that benefit would have been payable under the terms of the Plan (determined without regard to Section 2(b)). If the unpredictable contingent event benefit does not become payable during the Plan Year in accordance with the preceding sentence, then the Plan is treated as if it does not provide for that benefit.

22762252v.2

(d)     Treatment of Plan Amendments That Do Not Take Effect. If a Plan amendment does not take effect as of the effective date of the amendment because of the limitation of Section 1(b) or Section 2(c), but is permitted to take effect later in the same Plan Year (as a result of additional contributions or pursuant to the enrolled actuary's certification of the adjusted funding target attainment percentage for the Plan Year that meets the requirements of § 1.436-1(g)(5)(ii)(C) of the Treasury Regulations), then the Plan amendment must automatically take effect as of the first day of the Plan Year (or, if later, the original effective date of the amendment). If the Plan amendment cannot take effect during the same Plan Year, then it shall be treated as if it were never adopted, unless the Plan amendment provides otherwise.

5.     Notice Requirement. See section 101(j) of ERISA for rules requiring the Plan administrator of a single employer defined benefit pension Plan to provide a written notice to Participants and beneficiaries within 30 days after certain specified dates if the Plan has become subject to a limitation described in Section 1(a), Section 2, or Section 3.

6.     Methods to Avoid or Terminate Benefit Limitations. See § 436(b)(2), (c)(2), (e)(2), and (f) of the Internal Revenue Code and § 1.436-1(f) of the Treasury Regulations for rules relating to employer contributions and other methods to avoid or terminate the application of the limitations set forth in Sections 1 through 3 for a Plan Year. In general, the methods a Plan sponsor may use to avoid or terminate one or more of the benefit limitations under Sections 1 through 3 for a Plan Year include employer contributions and elections to increase the amount of Plan assets which are taken into account in determining the adjusted funding target attainment percentage, making an employer contribution that is specifically designated as a current year contribution that is made to avoid or terminate application of certain of the benefit limitations, or providing security to the Plan.

7.     Special Rules.

(a)     Rules of Operation for Periods Prior to and After Certification of Plan's Adjusted Funding Target Attainment Percentage.

(i)     In General. Section 436(h) of the Internal Revenue Code and § 1.4361(h) of the Treasury Regulations set forth a series of presumptions that apply (1) before the Plan's enrolled actuary issues a certification of the Plan's adjusted funding target attainment percentage for the Plan Year and (2) if the Plan's enrolled actuary does not issue a certification of the Plan's adjusted funding target attainment percentage for the Plan Year before the first day of the 10th month of the Plan Year (or if the Plan's enrolled actuary issues a range certification for the Plan Year pursuant to § 1.436-1(h)(4)(ii) of the Treasury Regulations but does not issue a certification of the specific adjusted funding target attainment percentage for the Plan by the last day of the Plan Year). For any period during which a presumption under § 436(h) of the Internal Revenue Code and § 1.436-1(h) of the Treasury Regulations applies to the Plan, the limitations under Sections 1 through 3 are applied to the Plan as if the adjusted funding target attainment percentage for the Plan Year were the presumed adjusted

83

funding target attainment percentage determined under the rules of § 436(h) of the Internal Revenue Code and § 1.436-1(h)(1), (2), or (3) of the Treasury Regulations. These presumptions are set forth in Section 7(a)(ii) though (iv).

(ii) <u>Presumption of Continued Underfunding Beginning First Day of Plan Year.</u> If a limitation under Section 1, 2, or 3 applied to the Plan on the last day of the preceding Plan Year, then, commencing on the first day of the current Plan Year and continuing until the Plan's enrolled actuary issues a certification of the adjusted funding target attainment percentage for the Plan for the current Plan Year, or, if earlier, the date Section 7(a)(iii) or Section 7(a)(iv) applies to the Plan:

(1) The adjusted funding target attainment percentage of the Plan for the current Plan Year is presumed to be the adjusted funding target attainment percentage in effect on the last day of the preceding Plan Year; and

(2) The first day of the current Plan Year is a section 436 measurement date.

(iii) <u>Presumption of Underfunding Beginning First Day of 4th Month.</u> If the Plan's enrolled actuary has not issued a certification of the adjusted funding target attainment percentage for the Plan Year before the first day of the 4th month of the Plan Year and the Plan's adjusted funding target attainment percentage for the preceding Plan Year was either at least 60 percent but less than 70 percent or at least 80 percent but less than 90 percent, or is described in § 1.436-1(h)(2)(ii) of the Treasury Regulations, then, commencing on the first day of the 4th month of the current Plan Year and continuing until the Plan's enrolled actuary issues a certification of the adjusted funding target attainment percentage for the Plan for the current Plan Year, or, if earlier, the date Section 7(a)(iv) applies to the Plan:

(1) The adjusted funding target attainment percentage of the Plan for the current Plan Year is presumed to be the Plan's adjusted funding target attainment percentage for the preceding Plan Year reduced by 10 percentage points; and

(2) The first day of the 4th month of the current Plan Year is a section 436 measurement date.

(iv) <u>Presumption of Underfunding On and After First Day of 10th Month.</u> If the Plan's enrolled actuary has not issued a certification of the adjusted funding target attainment percentage for the Plan Year before the first day of the 10th month of the Plan Year (or if the Plan's enrolled actuary has issued a range certification for the Plan Year pursuant to § 1.436-

84

1(h)(4)(ii) of the Treasury Regulations but has not issued a certification of the specific adjusted funding target attainment percentage for the Plan by the last day of the Plan Year), then, commencing on the first day of the 10th month of the current Plan Year and continuing through the end of the Plan Year:

(1)     The adjusted funding target attainment percentage of the Plan for the current Plan Year is presumed to be less than 60 percent; and

(2)     The first day of the 10th month of the current Plan Year is a section 436 measurement date.

(b)     New Plans, Plan Termination, Certain Frozen Plans, and Other Special Rules.

(i)     First 5 Plan Years. The limitations in Section 1(b), Section 2(b), and Section 2(c) do not apply to a new plan for the first 5 Plan Years of the plan, determined under the rules of § 436(i) of the Internal Revenue Code and § 1.436- 1(a)(3)(i) of the Treasury Regulations.

(ii)    Plan Termination. The limitations on prohibited payments in Section 1(a), Section 2(a), and Section 3 do not apply to prohibited payments that are made to carry out the termination of the Plan in accordance with applicable law. Any other limitations under this section of the Plan do not cease to apply as a result of termination of the Plan.

(iii)   Exception to Limitations on Prohibited Payments Under Certain Frozen Plans. The limitations on prohibited payments set forth in Sections 1(a), 2(a), and 3 do not apply for a Plan Year if the terms of the Plan, as in effect for the period beginning on September 1, 2005, and continuing through the end of the Plan Year, provide for no benefit accruals with respect to any Participants. This Section 7(b)(iii) shall cease to apply as of the date any benefits accrue under the Plan or the date on which a Plan amendment that increases benefits takes effect.

(iv)    Special Rules Relating to Unpredictable Contingent Event Benefits and Plan Amendments Increasing Benefit Liability. During any period in which none of the presumptions under Section 7(a) apply to the Plan and the Plan's enrolled actuary has not yet issued a certification of the Plan's adjusted funding target attainment percentage for the Plan Year, the limitations under Section 1(b) and Section 2(b) shall be based on the inclusive presumed adjusted funding target attainment percentage for the Plan, calculated in accordance with the rules of § 1.436-1(g)(2)(iii) of the Treasury Regulations.

    (c)    <u>Special Rules Under PRA 2010.</u>

    (i)    <u>Payments Under Social Security Leveling Options.</u> For purposes of determining whether the limitations under Section 1(a) or 2(a) apply to payments under a social security leveling option, within the meaning of § 436(j)(3)(C)(i) of the Internal Revenue Code, the adjusted funding target attainment percentage for a Plan Year shall be determined in accordance with the "Special Rule for Certain Years" under § 436(j)(3) of the Internal Revenue Code and any Treasury Regulations or other published guidance thereunder issued by the Internal Revenue Service.

    (ii)    <u>Limitation on Benefit Accruals.</u> For purposes of determining whether the accrual limitation under Section 2(c) applies to the Plan, the adjusted funding target attainment percentage for a Plan Year shall be determined in accordance with the "Special Rule for Certain Years" under § 436(j)(3) of the Internal Revenue Code (except as provided under section 203(b) of the Preservation of Access to Care for Medicare Beneficiaries and Pension Relief Act of 2010, if applicable).

(d)    <u>Interpretation of Provisions.</u> The limitations imposed by this section of the Plan shall be interpreted and administered in accordance with § 436 of the Internal Revenue Code and § 1.436-1 of the Treasury Regulations.

8.    <u>Definitions.</u> The definitions in the following Treasury Regulations apply for purposes of Sections 1 through 7: § 1.436-1(j)(1) defining "adjusted funding target attainment percentage;" § 1.436-1(j)(2) defining "annuity starting date;" § 1.436-1(j)(6) defining prohibited payment; § 1.436-1(j)(8) defining "section 436 measurement date;" and § 1.436-1(j)(9) defining an "unpredictable contingent event and an unpredictable contingent event benefit."

9.    <u>Effective Date.</u> The rules in Sections 1 through 8 are effective for Plan Years beginning after December 31, 2007.